# Exhibit  A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>     Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br>     Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>     Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>     Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY<br>LLC; AT&T CORP.,<br>     Defendants,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>     Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>     Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON<br>WIRELESS,<br>     Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>     Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**<ins>DEFENDANTS' AND INTERVENORS' CORRECTED OBJECTIONS TO
MAGISTRATE JUDGE PAYNE'S CLAIM CONSTRUCTION MEMORANDUM
OPINION AND ORDER</ins>**

## <u>TABLE OF CONTENTS</u>

I.      "[T]he channel estimation [that includes the]/[including] path parameter information" ('347 Patent, Claims 1, 8, 15)..................................................... 1

II.     "[A]daption manager" ('888 Patent, Claim 20) ...................................................... 2

III.    "[P]redetermined network load" ('888 Patent, Claim 12) ...................................... 3

IV.     "[S]hared resource pool" ('361 Patent, Claims 10, 11, 17) ................................... 4

V.      "[S]ub-optimal resource" ('361 Patent, Claims 10, 17).......................................... 4

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Advanced Ground,* 830 F.3d at 1349 ...................................................................................3

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*
    902 F.3d 1372 (Fed. Cir. 2018)...............................................................................5

*Rain Computing, Inc. v. Samsung Elecs. Am., Inc.,*
    989 F.3d 1002 (Fed. Cir. 2021)...............................................................................3

*Williamson v. Citrix Online, LLC,*
    792 F.3d 1339 (Fed. Cir. 2015)...............................................................................3

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Defendants and Intervenors (collectively, "Defendants") hereby respectfully submit the following objections to Magistrate Judge Payne's Claim Construction Order (the "Order") (Dkt. No. 131), and request that this Court adopt Defendants' proposed constructions. A district court judge must set aside all or part of a magistrate judge's claim construction order if it "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Defendants respectfully object to Judge Payne's constructions as set forth below[1]:

**I.     "[T]he channel estimation [that includes the]/[including] path parameter information" ('347 Patent, Claims 1, 8, 15)**

Defendants respectfully object to the Court's constructions regarding the "channel estimation" limitations as they run afoul to the presumption that a term should be given the same, consistent meaning throughout the claims. Here, that presumption is not overcome by the intrinsic record. To the contrary, the intrinsic record supports a consistent application of the term in accordance with these well-settled claim construction principles.

Specifically, the '347 Patent repeatedly refers to a "channel estimation" as an algorithm. *See, e.g.,* '347 Patent, 8:12 ("at the receiver 150, *a channel estimation algorithm is performed* to obtain the estimates . . ."); 8:17-67 (explicitly detailing how different "channel estimation" *algorithms* can have higher or lower accuracy, including "new algorithms for estimating path parameters"); 9:1-5 (explaining that the obtained path parameter information can be fed back to the to the transmitter 110 via the propagation path 170, 175, or 180. This feedback operation *can be performed according to the existing protocols in wireless communication systems*.").

---

[1]     For Defendants' objections, Defendants also incorporate the arguments and authorities in its Responsive Claim Construction Brief (Dkt. No. 110) and at the Claim Construction Hearing.

Further, a POSITA would understand that "the channel estimation" in the claim limitations refers to this algorithm, which the claims expressly state is different from but "*includes* the path parameter information." '347 Patent, cl. 1. Specifically, the "channel estimation that includes the path parameter information" needs to be sent to the transmitter so that the "predistorting" of the signal can be achieved "according to the channel estimation." '347 Patent, cl. 1. It is beneficial for the transmitter to receive the algorithm since a number of "channel estimation" algorithms can potentially be performed which might obtain different "*estimates*" of "the path parameter information" and the "channel estimate" would assist in determining accuracy. '347 Patent, 8:4-35. The "result" of "the channel estimation" in the Court's construction is the path parameter information. Affirmatively construing the terms to add the limitation "the result" makes the terms inconsistent with their antecedent basis in the preceding limitation. This outcome cuts against basic cannons of claim construction. Consequently, the term should not be accorded any construction.

## II.    "[A]daption manager" ('888 Patent, Claim 20)

Defendants agree with the Court's finding that "adaptation manager" is a means-plus-function term, but respectfully object to the ordered construction. The specification does not disclose an algorithm for performing the claimed functions leaving "adaption manager" insufficiently defined and indefinite.

First, Defendants respectfully object to the finding that the structure of the adaptation manager is anything other than a generic processor. The specification discloses that the "logic devices" of the "adaption manager" can include "one or more of a computer, a microprocessor, a microcontroller, a field programmable gate array (FPGA), an application specific integrated circuit (ASIC), a sequestered thread or a core of a multi-core/multi-threaded microprocessor or a combination thereof." '888 Patent, 9:23-28. Regarding this kind of language, the Federal Circuit has explained that "[f]or means-plus-function claims in which the disclosed structure is a

2

computer, or microprocessor, programmed to carry out an algorithm, we have held that the disclosed structure is not the general-purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *Rain Computing, Inc. v. Samsung Elecs. Am., Inc*., 989 F.3d 1002, 1007 (Fed. Cir. 2021); *see also Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1352 (Fed. Cir. 2015).

The structure identified by the Court (*i.e.*, adaption manager 122 (FIGS. 1A–1C, 3, 5, 5:18– 20, 6:18–7:23, 8:65–10:13, 12:23–13:28, 13:62– 15:45) and equivalents) is nothing but a general purpose processor. Part of the Court's reasoning, that "[a]t most, the 'adaption logic' must command or instruct the antenna array to adapt a beam, and that beam must cover the wireless device" (Order at 19), actually supports Defendants' position. A special purpose computer programed to achieve the "adapt" function is required. Moreover, the allegedly disclosed structure, which contains "adapt logic 310" as "includ[ing] one or more of a receive feature 12, a cost feature 314, a beam feature 316 or a handoff feature" is insufficient to turn a general processor into a computer that can achieve, for example, adaptive beamforming. '888 Patent 9:12-15.

Without an algorithm recited to achieve the claimed functions, "adaption manager" should be held indefinite. *Rain Computing*, 989 F.3d at 1008; *see also Advanced Ground,* 830 F.3d at 1349.

### III.    "[P]redetermined network load" ('888 Patent, Claim 12)

Defendants respectfully disagree that the question for this term is limited to enablement. Defendants contend that "predetermined network load" is not sufficiently disclosed in the specification and the sparse description does not inform a POSITA about its scope. *See* '888 Patent, 6:63-66, 9:50-53, 12:56-57. Thus, Defendants respectfully object to the Court's construction.

## IV.   "[S]hared resource pool" ('361 Patent, Claims 10, 11, 17)

Defendants respectfully object to the Court's construction of "shared resource pool" to the extent that it does not require that the pool contain at least one frequency spectrum resource that was assigned there because it was "sub-optimal."

The Court explains that "in what pool the resources start or their designation as 'sub-optimal' does not bear on whether the processor is configured to make the required assignment." Order at 24. Defendants disagree. The claim language requires that the assignment be made "in response to the determination that the . . . resource is . . . sub-optimal," and thus, the designation as 'sub-optimal' directly bears on the processor assigning the resource to the "shared resource pool." '361 Patent, cl. 10. For the same reason, Defendants disagree that "how th[e] contents [of the 'shared resource pool'] got there, don't speak to whether the required assignment was made." Order at 24. Thus, Defendants object to a construction that does not account for "sub-optimal" resources, since the plain claim language precisely requires assigning "the sub-optimal resource" to the shared pool.

## V.   "[S]ub-optimal resource" ('361 Patent, Claims 10, 17)

Defendants respectfully object to the Court's conclusion on the definiteness of the term "sub-optimal resource." The term is one of degree and '361 Patent specification fails to provide any objective or well-defined boundaries for determining when a resource is "sub-optimal."  The only guidance for determining whether a resource is "sub-optimal" provided by the specification emphasizes that a POSITA could use any metric or combinations of metrics. *See* '361 Patent at 4:18-34.

Thus, the '361 Patent allows for a multi-faceted determination of quality status (*i.e.*, whether a resource is "sub-optimal"). *See* Dkt. 110-1 at ¶¶97-100. As explained by Mr. Proctor, a POSITA would not consider such test to be objective. Dkt. 110-1 at ¶¶97-100 (explaining that

different engineers can prioritize different metrics or combinations of metrics); *see also* Dkt. 110-1 at ¶¶97-100 (explaining that different conclusions could be reached if a POSITA prioritizes "higher CQI" instead of "lower RIP" and vice-versa); '361 Patent at 9:9-14 (indicating that a high CQI may indicate downlink suitability while a low RIP may indicate uplink suitability). Thus, a POSITA could view a resource with low CQI and low RIP as optimal for uplink.  Thus, the determination of whether a resource is "sub-optimal" is subjective and does not provide the requisite certainty required by § 112. Def. Resp. Br. (Dkt. No. 110) at 25-26. This determination is entirely subjective.

The Federal Circuit rejected similar kinds of subjective standards in *Intellectual Ventures I LLC v. T-Mobile USA, Inc*. 902 F.3d 1372, 1374 (Fed. Cir. 2018). Just like in *Intellectual Ventures*, the '361 Patent explains that the claimed invention schedules resources from the shared resource pool to an uplink/downlink channel (*e.g.*, "sub-optimal" resources) to *"enhance user experience and system-level performance*." '361 Patent 10:18-28. Moreover, the patent describes how the "suitability" of a *currently* "sub-optimal" resource fluctuates based on subjective factors related to user behavior, traffic needs and real-time resource requests, and application. '361 Patent 3:10-32; *id*. at 4:66-3:3; *id*. at 12:41-54; *id*. at 5:49-53.

Regarding the *Ball Metal* test, depending on the nature of traffic needs, user behavior, and application that the purported invention is hypothetically applied to, it would not be possible to determine what makes a resource objectively "sub-optimal." This is particularly true here, where the '361 Patent explains that "quality status" can be determined by "*any other suitable quality metric*" and therefore fails to even provide an agreed upon quality metric for determining "suitability." '361 Patent at 4:26-34. Thus, Defendants respectfully request the term be found indefinite.

Respectfully submitted: June 24, 2024

*/s/ David S. Frist*
David S. Frist
  David.Frist@alston.com
John Daniel Haynes
  John.Haynes@alston.com
Emily Welch
  Emily.Welch@alston.com
Michael Clayton Deane
  Michael.Deane@alston.com
Sloane Sueanne Kyrazis
  Sloane.Kyrazis@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
404-881-7000
Fax: 404-881-7777

Ross Ritter Barton
  Ross.Barton@alston.com
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
704-444-1287
Fax: 704-444-1111

Theodore Stevenson, III
  Ted.Stevenson@alston.com
Adam Ahnhut
  Adam.ahnhut@alston.com
ALSTON & BIRD LLP
2200 Ross Ave
Suite 2300
Dallas, TX 75201
214-922-3507
Fax: 214-922-3899

*Attorneys for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

**Deron Dacus**

ddacus@dacusfirm.com
**The Dacus Firm**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
903-705-1117
Fax: 903-581-2543

*Attorney* for *AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

**Melissa R. Smith**
melissa@gillamsmithlaw.com
**Tom Gorham**
tom@gillamsmithlaw.com
**Gillam & Smith LLP**
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on June 24, 2024, on the counsel of record via electronic mail.

*/s/ David S. Frist*
David S. Frist