# Exhibit  A

Trials@uspto.gov
571-272-7822

Paper 10
Date: April 30, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

T-MOBILE USA, INC., AT&T SERVICES INC.,
AT&T MOBILITY LLC, AT&T CORPORATION, AND
CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,
Petitioner,

v.

COBBLESTONE WIRELESS LLC,
Patent Owner.

———————————

IPR2024-00135
Patent 8,554,196 B2

———————————

Before BARBARA A. PARVIS, NATHAN A. ENGELS, and
RUSSELL E. CASS, *Administrative Patent Judges.*

PARVIS, *Administrative Patent Judge.*

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2024-00135
Patent 8,554,196 B2

## I.      INTRODUCTION

T-Mobile USA, Inc., AT&T Services Inc., AT&T Mobility LLC, AT&T Corporation, and Cellco Partnership d/b/a Verizon Wireless ("Petitioner") filed a Petition (Paper 1 ("Pet.")) requesting *inter partes* review of claims 23–27 ("challenged claims") of U.S. Patent No. 8,554,196 B2 (Ex. 1001, "the '196 patent"). Cobblestone Wireless LLC ("Patent Owner") did not file a Preliminary Response.

We have authority to determine whether to institute review under 35 U.S.C. § 314 and 37 C.F.R. § 42.4. We may institute an *inter partes* review if "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

Upon consideration of the contentions and the evidence of record at this preliminary stage, we determine that Petitioner has demonstrated a reasonable likelihood of prevailing on at least one of the challenged claims of the '196 patent. Accordingly, we grant Petitioner's request and institute an *inter partes* review of all challenged claims of the '196 patent and with respect to all grounds set forth in the Petition.

## II.      BACKGROUND

### A.      *Real Parties in Interest*

Petitioner identifies T-Mobile USA, Inc., AT&T Services Inc., AT&T Mobility LLC, AT&T Corporation, and Cellco Partnership d/b/a Verizon Wireless as real parties in interest. Pet. 2–3. Petitioner also identifies Samsung Electronics Co., Ltd., because it is named as a defendant and its

IPR2024-00135
Patent 8,554,196 B2

products are accused of infringement in a related district court litigation. *Id.* at 3. Patent Owner names itself as the real party in interest. Paper 7, 1.

> B.    *Related Matters*

Both parties identify, as matters involving or related to the '196 patent, the following district court proceedings: *Cobblestone Wireless, LLC v. T-Mobile USA, Inc.*, No. 2:22-cv-00477 (E.D. Tex.) (identified as the "LEAD CASE" (Ex. 1010) and referred to herein as the "parallel district court case"); *Cobblestone Wireless, LLC v. Cellco Partnership d/b/a Verizon Wireless*, No. 2:22-cv-00478 (E.D. Tex.); *Cobblestone Wireless, LLC v. AT&T Inc.*, No. 2:22-cv-00474 (E.D. Tex.); and *Cobblestone Wireless, LLC v. Samsung Electronics Co.*, No. 2:23-cv-00285 (E.D. Tex.). Pet. 3–4; Paper 7, 2. Also, Samsung Electronics America, Inc., filed two petitions on December 18, 2023, challenging the '196 patent in IPR2024-00317 and IPR2024-00318.

> C.    *The '196 Patent*

The '196 patent is titled "Network Coverage by Cycling through Beam Shape Coverage Configurations." Ex. 1001, code (54). The '196 patent relates to wireless communication networks populated by devices that include both phone and data functionality. *Id.* at 1:11–13. The '196 patent describes providing coverage to continuous use devices that are actively involved in substantially continuous service with the network including a voice call, a download, or content streaming. *Id.* at 3:45–51. The '196 patent also describes providing coverage to interval use devices, which do not require continuous service. *Id.* at 3:51–54. Instead, service to an interval use device may be postponed and batched while the device is covered by a less capable network and then service is performed when the device is covered

3

IPR2024-00135
Patent 8,554,196 B2

by a more capable network. *Id.* at 6:44–56. Exemplary interval services include social networking applications, email, Really Simple Syndication ("RSS") feeds, map updates, game updates, and sports score updates. *Id.* at 6:59–62.

One embodiment of a method for interval use devices receiving data updates is illustrated in Figure 3. *Id.* at 10:8–9.



Fig. 3

Figure 3, above, illustrates method 300 for an interval use device to receive data updates.

At block 310, an interval use device defers data updates for intermittent use applications while covered by a less capable network. *Id.* at 10:23–26. At block 320, the interval use device detects coverage by a more capable network and transmits an update request. *Id.* at 10:65–11:1. At block

IPR2024-00135
Patent 8,554,196 B2

330, the interval use device receives a data update over the network in response to the transmitted data update request. *Id.* at 11:9–13.

### D.   Illustrative Claim

Petitioner challenges claims 23–27 of the '196 patent. Pet. 4. Claim 23 is the only independent challenged claim. Claims 24–27 depend directly from claim 23. Independent claim 23, reproduced below, is illustrative of the claimed subject matter.

23.   [23.0[1]] A method for a device to receive data updates comprising:

[23.1] cycling over time through an update sequence that includes:

[23.2] deferring, during coverage by a first network, data updates for the device;

[23.3] transmitting a data update request in response to coverage by a second network, wherein the second network is a more capable network than the first network; and

[23.4] receiving, during the second coverage configuration, a data update.

Ex. 1001, 22:21–31.

### E.   Evidence

Petitioner relies on the patent reference in the table below.

| Name | Reference | Exhibit |
|------|-----------|---------|
| Chang | US 9,830,642 B2, filed June 28, 2011, issued Nov. 28, 2017 | 1004 |

Petitioner also relies on the Declaration of Mr. James A. Proctor (Ex. 1003) to support its contentions that the challenged claims are

---

[1] Herein we use Petitioner's designations for the elements of claim 23. Pet. 16–33.

IPR2024-00135
Patent 8,554,196 B2

unpatentable. Patent Owner does not rely on declarant testimony at this early stage in the proceeding.

### F.    Asserted Grounds

Petitioner asserts that the challenged claims of the '196 patent are unpatentable based on the ground in the table below (Pet. 6):

| Claims Challenged | 35 U.S.C. §[2] | Reference/Basis |
|---|---|---|
| 23–27 | 103(a) | Chang |

## III.    ANALYSIS

### A.    Legal Standards

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person of ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) when in evidence, objective evidence of nonobviousness, i.e., secondary considerations.[3] *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

---

[2] The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), amended 35 U.S.C. § 103, effective March 16, 2013. Because the challenged claims of the '196 patent have an apparent effective filing date before March 16, 2013, the pre-AIA version of § 103 applies.
[3] Neither party presents objective evidence of nonobviousness at this stage of the proceeding.

IPR2024-00135
Patent 8,554,196 B2

### B.    Level of Ordinary Skill in the Art

Petitioner asserts that a person of ordinary skill in the art

> would have had at least a bachelor's degree in electrical engineering, computer engineering, computer science, physics, or the equivalent, and at least two years of experience working in the field. Ex. 1003, ¶41. This description is approximate and a higher level of education might make up for less experience and vice versa. *Id.* Relevant working experience would include experience with cellular telecommunications and networking, radio-access networking architectures, protocols and signal propagation in wireless networks. Ex. 1003, ¶41. More education can supplement practical experience and vice versa. Ex. 1003, ¶41.

Pet. 7 (citing Ex. 1003 ¶ 41).

Petitioner's proposal is undisputed at this early juncture. For purposes of this Decision, and based on the current record, we adopt Petitioner's assessment of the level of skill for one of ordinary skill in the art, except we decline to adopt "at least" as that language is vague and open-ended. Otherwise, we preliminarily find that Petitioner's proposed definition is consistent with the level of skill reflected in the specification of the '196 patent and the asserted prior art references.

### C.    Claim Construction

Below, we discuss construction of two terms recited in independent claim 23, specifically "data updates" and "more capable." We interpret the challenged claims

> using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b), including construing the claim in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent.

IPR2024-00135
Patent 8,554,196 B2

37 C.F.R. § 42.100(b). Under this standard, the words of a claim generally are given their "ordinary and customary meaning," which is the meaning the term would have had to a person of ordinary skill at the time of the invention, in the context of the entire patent including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312–17).

### 1.   *"data update" and "data updates"*

Petitioner argues that "data updates" are "data that needs to be sent to the mobile device." Pet. 19 (citing, e.g., Ex. 1001, 11:4–7; Ex. 1003 ¶ 64); *see also id.* at 18 (stating that a person of ordinary skill in the art would have understood "the data updates disclosed in the '196 Patent to describe any data that needs to be pushed to the device to ensure that the mobile device is up to date") (citing Ex. 1001, 6:59–64, 11:4–7; Ex. 1003 ¶ 62). Mr. Proctor testifies a person of ordinary skill in the art would have understood "that any data required to be sent or pushed to the mobile device would be considered a 'data update' within the context of the '196 Patent." Ex. 1003 ¶ 62 (citing Ex. 1001, 4:15–22, 6:59–64). Mr. Proctor testifies further that a person of ordinary skill in the art would have understood that "data updates" could include "purchased music, apps, and books." *Id.* (citing Ex. 1001, 6:59–64, 10:23–35, 11:9–25). At this early juncture, Patent Owner does not dispute Petitioner's proposed construction.

IPR2024-00135
Patent 8,554,196 B2

We consider the intrinsic evidence of record, examining the claim language itself and the written description. *DePuy*, 469 F.3d at 1014. Neither party relies on the prosecution history at this stage of the proceeding. The term "data updates" is recited in the preamble and in element 23.2. Specifically, the preamble recites "[a] method for a device to receive *data updates* comprising" and element 23.2 recites "deferring, during coverage by a first network, *data updates* for the device" (emphases added). The term "data update" is recited in element 23.4. Element 23.4 recites "receiving, during the second coverage configuration, a *data update*" (emphasis added).

We preliminarily find that Petitioner's proposed construction that "data updates" are "data that needs to be sent to the mobile device" (Pet. 19) is consistent with the recitation in the preamble and element 23.4 of receiving "data updates" and "a data update," respectively. Claim 23 recites a "device," rather than "the mobile device." Claim 23, however, also recites "*coverage* by a first network" and "*coverage* by a second network" (emphasis added), which is consistent with Petitioner's proposed construction that the "device" is a "mobile device."

We also preliminarily find that Petitioner's proposed construction is consistent with the '196 patent Specification. In particular, the '196 patent Specification describes an interval use device receiving "a data update over the network," which "may be for a single application" or "may be for multiple applications." Ex. 1001, 11:9–25. The '196 patent Specification describes exemplary applications as including "social networking applications, email, Really Simple Syndication (RSS) feeds, map updates, game update[s], sports score update[s], or the like." *Id.* at 6:59–64; *see also id.* at 10:23–35 (providing the same list of exemplary applications).

IPR2024-00135
Patent 8,554,196 B2

Regarding the recitation in claim 23 of a "device," rather than "the mobile device," the '196 patent Specification is consistent with Petitioner's proposed construction. The '196 patent describes that computing device 700 "may be configured as a[n] interval use device" (*id.* at 15:23–25) and that computing device 700 "may be implemented as a portion of a small-form factor *portable (or mobile) electronic device*." *Id.* at 16:59–65 (emphasis added). Also, regarding "coverage" recited in claim 23, the '196 patent describes "providing network coverage by cycling through *beam shape coverage* configurations" (*id.* at code (57)) and that "coverage" is provided by "*wireless* communication networks." *See, e.g.*, *id.* at 1:14–16.

On the record before us, we preliminarily find that Petitioner's argument that "data updates" are "data that needs to be sent to the mobile device" (Pet. 19) is consistent with the intrinsic evidence of record. *See DePuy*, 469 F.3d at 1014. We, therefore, adopt Petitioner's proposal for purposes of this Decision.

### 2. "more capable"

Relying on the testimony of Mr. Proctor, Petitioner argues that a "more capable" network includes, for example, a network that provides "greater uplink and/or downlink rates," is "more stable," or is "of a more advanced standard." Pet. 13 (citing, e.g., Ex. 1001, 9:10–13; Ex. 1003 ¶ 53). At this early juncture, Patent Owner does not dispute Petitioner's proposal.

We consider the intrinsic evidence of record, examining the claim language itself and the written description. *DePuy*, 469 F.3d at 1014. Neither party relies on the prosecution history at this stage of the proceeding.

We preliminarily find that Petitioner's proposal that a "more capable" network includes, for example, a network that provides "*greater* uplink

IPR2024-00135
Patent 8,554,196 B2

and/or downlink rates," is "*more* stable," or is "of a *more advanced* standard" (Pet. 13 (emphasis added)) is consistent with the recitation "wherein the second network is a *more* capable network than the first network" (emphasis added). We also preliminarily find that Petitioner's proposed construction is consistent with the '196 patent Specification. In particular, the '196 patent Specification describes that "[i]n general, a more capable network may provide greater uplink and/or downlink rates, may be more stable, may be of a more advanced standard, or the like." Ex. 1001, 9:10–13.

On the record before us, we find preliminarily find that Petitioner's argument that a "more capable" network includes, for example, a network that provides "greater uplink and/or downlink rates," is "more stable," or is "of a more advanced standard" (Pet. 13) is consistent with the intrinsic evidence of record. *See DePuy*, 469 F.3d at 1014. We, therefore, adopt Petitioner's proposal for purposes of this Decision.

### D.    Asserted Obviousness over Chang

Petitioner argues that claims 23–27 are unpatentable as obvious over Chang. Pet. 6. At this early juncture, Patent Owner does not dispute Petitioner's arguments. We begin with an overview of Chang and then turn to Petitioner's arguments.

#### 1.    Chang

Chang is titled "Intelligent Delivery and Acquisition of Digital Assets." Ex. 1004, code (54). Chang describes "[i]mproved techniques and systems for delivery and acquisition of digital assets." *Id.* at 1:54–55.

One embodiment for facilitating automatic downloading of a digital asset is depicted in Figure 6, below. *Id.* at 10:45–47.

IPR2024-00135
Patent 8,554,196 B2



**FIG. 6**

Figure 6 depicts method 600 for facilitating automatic downloading of a digital asset. *Id.*

IPR2024-00135
Patent 8,554,196 B2

As shown in Figure 6, steps 602 through 608 are performed in response to a purchase of a digital asset from an online store and result in determining whether to arrange content for delivery. *Id.* at 10:51–11:5. If content is to be arranged for delivery, steps 610 through 614 are performed to determine if configuration data is needed and if so, obtain automatic download configuration data. *Id.* at 11:12–23. Next, steps 616 and 618 are performed to determine whether to arrange the digital asset for delivery and if so, the digital asset is arranged for automatic download. *Id.* at 11:24–35. Chang describes that

> [a]rranging (618) the digital asset for delivery can, for example, include determining an appropriate type, version and/or format to be delivered to a particular electronic device, sending a push notification to an electronic device, storing the appropriate digital asset in a delivery queue for delivery at an appropriate time (e.g., when one or more network conditions are met), and/or recording automatic download data for a particular user and/or device.

*Id.* at 11:35–43.

Subsequently, in step 620, a determination is made as to whether download is to be initiated and if so, in step 626, automatic download of the digital asset is facilitated. *Id.* at 11:46–53. "An automatic download can, for example, be initiated when an electronic device initiates it and/or one or more delivery conditions are met (e.g., network type or bandwidth is appropriate for download)." *Id.* at 11:53–57. In step 630, a determination is made as to whether to end method 600. *Id.* at 11:58–60. "Method 600 can, for example, end after the arranged automatic downloads have been completed or canceled, or after a determined amount of time has lapsed." *Id.* at 11:60–62.

13

IPR2024-00135
Patent 8,554,196 B2

Chang describes creating and providing automatic download configuration data in a customized manner, for example, using menus, dialogs, or windows. *Id.* at 12:53–55. One embodiment of an automatic configuration user interface is depicted in Figure 9, below. *Id.* at 13:27–29.



**FIG. 9**

Figure 9 depicts exemplary automatic configuration user interface in the form of window 900 suitable for display on various electronic devices. *Id.*

14

IPR2024-00135
Patent 8,554,196 B2

As shown in Figure 9, a network automatic download selectable option, depicted as "Cellular," is provided, which allows a user to select whether automatic downloads should take place via a cellular network. *Id.* at 13:42–46. "If the selectable option is set to 'off', [sic] then automatic download will only occur when the electronic device is connected to a Wi-Fi connection." *Id.* at 13:46–48.

    2.    *Independent Claim 23*

        *a)    Preamble: "[a] method for a device to receive data updates comprising"*

Relying on the testimony of Mr. Proctor, Petitioner argues that Chang's method for delivery of digital assets teaches the preamble. *See, e.g.*, Pet. 16–17 (citing Ex. 1004, code (57), 4:32–38, 4:53–58, 13:41–56, Fig. 9; Ex. 1003 ¶¶ 60–67). Petitioner argues that "data updates" are "data that needs to be sent to the mobile device." *Id.* at 19 (citing, e.g., Ex. 1003 ¶¶ 62–64). Petitioner first argues that the preamble is taught by Chang's description of downloading books and other types of "digital assets," "including 'various types of media related items (e.g., musical albums, songs, movies, audio, video, textual content, books) as well as various *application programs* ("*applications*") that can be provided for electronic devices (e.g., productivity products, games, computer applications for computing devices).'" *Id.* at 16–19 (citing, e.g., Ex. 1004, code (57), 1:23–24, 4:53–58, 15:12–22). Petitioner also argues that Chang teaches downloading "the most up-to-date digital asset." *See, e.g.*, *id.* at 20 (citing Ex. 1004, 14:52–55; Ex. 1003 ¶¶ 65–67).

Additionally, Petitioner argues that it discerns from Patent Owner's infringement contentions that "in the [parallel] district court case Patent Owner . . . asserts that application updates and software updates meet the

IPR2024-00135
Patent 8,554,196 B2

'data updates' limitation." *Id.* at 19 (citing Ex. 1008, 3–7; Ex. 1003 ¶ 63). Petitioner argues, taking Patent Owner's view, "[i]t would also have been obvious to a POSITA[4] that checking the current version of a digital asset and sending the newest version to a new electronic device would be equally applicable to electronic devices that have received previous versions of the digital asset." *Id.* at 19–21 (citing Ex. 1004, 8:57–64, 11:35–44, 13:3–8, 14:52–60; Ex. 1003 ¶¶ 65–67). Petitioner argues a "POSITA would be motivated to deliver and install the most up-to-date version of a digital asset in order to improve user experience, such as providing improvements, new features, or bug fixes to the older digital asset." *Id.* at 21 (citing Ex. 1003 ¶ 67).

As discussed with respect to claim construction, for purposes of this Decision, we adopt Petitioner's proposal (*id.* at 19) that "data updates" are "data that needs to be sent to the mobile device." *See* § III.C.1. We preliminarily find Petitioner's first argument (Pet. 16–19) that Chang teaches the preamble is supported by Chang's description of downloading books and other types of "digital assets." Ex. 1004, code (57) (describing "delivering digital assets (e.g., media assets) that are available for acquisition and electronic delivery from online stores to electronic devices"), 1:23–24 (describing that "digital assets" include, for example, "musical songs, movies, computer application programs"), 4:53–58 (describing that "[d]igital assets can, for example, include various types of media related items (e.g., musical albums, songs, movies, audio, video, textual content, books)" and "various application programs ('applications') that can be provided for electronic devices (e.g., productivity products, games, computer applications

---

[4] POSITA is person of ordinary skill in the art.

IPR2024-00135
Patent 8,554,196 B2

for computing devices")), 15:12–22 (describing "books" as an exemplary digital asset). Petitioner's first argument (Pet. 16–19) also is supported by Chang's teaching of downloading a new or revised version of a digital asset. Ex. 1004, 14:52–55 (describing that "a new or revised version of an asset can be effectively automatically downloaded if available at the time the download takes place" by replacing "an older version of [the] asset in a delivery queue" so "a new or revised version can be downloaded").

Because we adopt Petitioner's claim construction proposal, we need not address Petitioner's additional argument based on a claim construction apparently discerned from infringement contentions filed in the parallel district court case. For the reasons given, we determine that Petitioner has shown sufficiently that Chang teaches the preamble for purposes of institution.[5]

> b) Element 23.1: "cycling over time through an update sequence that includes"

Relying on the testimony of Mr. Proctor, Petitioner argues that element 23.1 is taught by Chang's method 600 shown in Figure 6, which Petitioner argues is "cycled over time to provide automatic download of digital assets to an electronic device." *See, e.g.*, Pet. 22 (citing Ex. 1004, Fig. 6; Ex. 1003 ¶¶ 68–73). First, Petitioner argues "[m]ethod 600 will continue to cycle through the first step 602 to check whether a digital asset has been purchased." *Id.* at 23 (citing, e.g., Ex. 1004, Fig. 6). Petitioner also

---

[5] We need not resolve the issue of whether the preamble is limiting at this stage because, regardless of whether the preamble is limiting, Petitioner shows sufficiently for purposes of institution that the prior art satisfies the recitation in the preamble.

IPR2024-00135
Patent 8,554,196 B2

argues Chang "discloses that method 600 can be cycled for a given period of time." *Id.* at 24 (citing Ex. 1004, 11:60–62; Ex. 1003 ¶ 69).

Second, Petitioner argues "Chang discloses that the automatic updates can be sent in only certain scenarios, such as when particular criteria are met." *Id.* (citing Ex. 1004, 11:53–57, 13:12–16, 13:41–56; Ex. 1003 ¶ 70). Petitioner argues this is shown in steps 618 and 620 of method 600. *Id.* at 24–26 (citing Ex. 1004, 11:35–43, 11:46–57, Fig. 6; Ex. 1003 ¶¶ 70–71). Petitioner argues "[b]ecause the automatic update cannot be sent until the particular criteria are met, this particular portion of method 600 must be repeatedly cycled over time to evaluate the identified criteria until either the download is completed or canceled." *Id.* at 26 (citing Ex. 1004, 11:46–57, 13:41–56, Figs. 6, 9; Ex. 1003 ¶¶ 71–72).

We preliminarily find that Petitioner's contentions are supported by the cited portions of Chang. We, therefore, determine that Petitioner has shown sufficiently that Chang teaches element 23.1 for purposes of institution.

c)    Element 23.2: "deferring, during coverage by a first network, data updates for the device"

Relying on the testimony of Mr. Proctor, Petitioner argues that element 23.2 is taught because

> Chang further discloses that the automatic download feature can limit when automatic downloads are sent, "to effectively allow the user to select whether the automatic downloads should take place via a cellular network (which may have a data transfer fee). If the selectable option is set to 'off', then automatic download will only occur when the electronic device is connected to a Wi-Fi connection."

Pet. 27 (citing Ex. 1004, 13:41–56, Fig. 9; Ex. 1003 ¶ 74).

18

IPR2024-00135
Patent 8,554,196 B2

We preliminarily find that Petitioner's contentions are supported by the cited portions of Chang. We, therefore, determine that Petitioner has shown sufficiently that the asserted art teaches element 23.2 for purposes of institution.

> d)     Element 23.3: "transmitting a data update request in response to coverage by a second network, wherein the second network is a more capable network than the first network; and"

Relying on the testimony of Mr. Proctor, Petitioner argues that element 23.3 is taught by Chang's "functionality that allows an electronic device to 'automatically download a digital asset when it receives a notification (e.g., a push notification) directly or indirectly via an online store server.'" Pet. 28 (citing Ex. 1004, 4:32–38; Ex. 1003 ¶¶ 76–77). Petitioner argues that Chang "discloses that the push notification 'can instruct a recipient electronic device to transparently check its delivery queue' and then download the digital assets." *Id.* (citing Ex. 1004, 13:66–14:10; Ex. 1003 ¶ 77).

Petitioner refers to Chang's Figure 9 and argues Chang discloses "[w]hen the cellular option is turned 'off' . . . the push-notification indicating that an automatic download should take place will not be sent until the device has coverage from a Wi-Fi network." *Id.* at 29–30 (citing Ex. 1004, 4:32–38, 13:66–14:10; Ex. 1003 ¶ 77). Petitioner argues that Chang "discloses evaluating network type and network strength in determining appropriate network configurations." *Id.* at 31 (citing Ex. 1003 ¶ 79; Ex. 1004, 11:53–57). Relying on the testimony of Mr. Proctor, Petitioner argues that "at the time of the '196 patent, under particular network conditions Wi-Fi networks could have higher uplink or downlink

IPR2024-00135
Patent 8,554,196 B2

data transmission rates than alternative cellular networks (e.g., 3G networks)" and, therefore, a Wi-Fi network would have been understood to have been "better or 'more capable' than the alternative cellular network." *Id.* (citing Ex. 1003 ¶ 80; Ex. 1004, 13:41–56; Ex. 1009, 166).

As discussed with respect to claim construction, for purposes of this Decision, we adopt Petitioner's proposal (*id.* at 13) that a "more capable" network includes, for example, a network that provides "greater uplink and/or downlink rates," is "more stable," or is "of a more advanced standard." *See* § III.C.2. Chang describes "[i]f the selectable option [of Figure 9] is set to 'off', then automatic download will only occur when the electronic device is connected to a Wi-Fi connection." Ex. 1004, 13:46–48. Chang also describes "[a]n automatic download can, for example, be initiated when an electronic device initiates it and/or one or more delivery conditions are met (e.g., network type or bandwidth is appropriate for download)." *Id.* at 11:53–57.

Petitioner provides evidence in support of its argument and Mr. Proctor's testimony that Wi-Fi networks would have been understood to have been "more capable" than cellular networks under particular conditions. Pet. 31 (citing, e.g., Ex. 1009, 166). Based on the record at this early stage, we preliminarily find that Petitioner's evidence supports that Wi-Fi networks had higher data rates and speed as compared to 2.5G and 3G cellular networks. Ex. 1009, 166.

We preliminarily find that Petitioner's contentions are supported by the cited portions of Chang and Petitioner's other evidence of the knowledge of a person of ordinary skill in the art. We, therefore, determine that

IPR2024-00135
Patent 8,554,196 B2

Petitioner has shown sufficiently that Chang teaches element 23.3 for purposes of institution.

> e)  *Element 23.4: "receiving, during the second coverage configuration, a data update."*

Relying on the testimony of Mr. Proctor, Petitioner argues that element 23.4 is taught by Chang's disclosure of "setting the automatic download feature to 'only occur when the electronic device is connected to a Wi-Fi connection,' i.e. when the device has coverage by the Wi-Fi network." Pet. 33 (citing Ex. 1004, 13:41–56; Ex. 1003 ¶ 83). Petitioner argues "coverage by the Wi-Fi network" meets "the claimed 'second coverage configuration.'" *Id.* (citing Ex. 1003 ¶ 83; Ex. 1004, 13:41–56, Fig. 9). Petitioner also argues "[o]nce the digital asset is received by the electronic device, Chang further discloses that it can then be post processed 'once it is determined (724) that the download has been completed.'" *Id.* at 33–34 (citing Ex. 1004, 12:43–45, Fig. 7; Ex. 1003 ¶ 83).

We preliminarily find that Petitioner's contentions are supported by the cited portions of Chang. We, therefore, determine that Petitioner has shown sufficiently that Chang teaches element 23.4 for purposes of institution.

> f)  *Conclusion—Claim 23*

For the foregoing reasons, we determine that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing that claim 23 is unpatentable under 35 U.S.C. § 103 as obvious over Chang.

> 3.  *Dependent Claims 24–26*

Petitioner asserts that claims 24–26 are unpatentable as obvious over Chang. Pet. 6, 35–39. Claims 24–26 depend directly from claim 23.

IPR2024-00135
Patent 8,554,196 B2

Petitioner provides a detailed analysis in support of its position that Chang teaches the limitations in these dependent claims. *See id.* Patent Owner does not challenge Petitioner's analysis for these dependent claims. Having reviewed Petitioner's arguments and evidence for these claims, we are persuaded that Petitioner's showing for claims 24–26 is sufficient for purposes of institution.

Accordingly, we determine that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing that claims 24–26 are unpatentable as obvious over Chang.

### 4.    *Dependent Claim 27*

Claim 27 depends directly from claim 23 and recites

27. The method of claim 23, wherein the first network and the second network comprise at least one of the following: the first network is a Third Generation Mobile (3G) network and the second network is an Enhanced Data Rates for Global Evolution (EDGE) network, the first network is a Fourth Generation Mobile (4G) network and the second network is an Enhanced Data Rates for Global Evolution (EDGE) network, the first network is a Long Term Evolution (LTE) network and the second network is an Enhanced Data Rates for Global Evolution (EDGE) network, the first network is an Evolution-Data Optimized (EV-DO) network and the second network is a Code Division Multiple Access (CDMA) network, the first network is a Fourth Generation Mobile (4G) network and the second network is a Third Generation Mobile (3G) network, the first network is a data network and the second network is a voice network, or the first network is a data network and the second network is a mixed voice and data network.

Ex. 1001, 22:43–60.

Regarding the intrinsic record, Petitioner argues that claim 27 "faces significant issues" in view of the recitation in independent claim 23

IPR2024-00135
Patent 8,554,196 B2

requiring "the second network to be 'more capable' than the first network." Pet. 40. Petitioner also argues the '196 patent Specification "identically lists the network pairs in dependent claim [27], with the difference being that the network pairs are flipped, such that the more capable network is listed first in the specification, rather than second as in the claim language." *Id.* Petitioner also argues that it takes "no position on § 112 issues with this claim." *Id.* at n. 3. Petitioner argues "the asserted art falls within the scope" of claim 27 (*id.*), but Petitioner's arguments regarding the intrinsic record do not provide a proposed construction or reasoning as to why we should adopt any specific proposed construction.

Petitioner argues "[f]rom Patent Owner's assertions in the district court, the data network can be a cellular network, and a Wi-Fi network is a mixed voice and data network." *Id.* at 42 (citing Ex. 1003 ¶¶ 102–103; Ex. 1008, 49). Petitioner argues "[b]ecause the infringement contentions made by Patent Owner in the [parallel] district court [case] are nearly identical to the disclosed Wi-Fi only automatic downloads of Chang," claim 27 would have been obvious over Chang. *Id.* at 43.

Petitioner relies on the testimony of Mr. Proctor in support of its position. *Id.* at 39–43 (citing, e.g., Ex. 1003 ¶¶ 99–103). Mr. Proctor testifies regarding Patent Owner's infringement contentions. *See, e.g.*, Ex. 1003 ¶¶ 102–103. We preliminarily express concern as to whether Petitioner provides sufficient argument and evidence showing that a person having ordinary skill in the art would have understood a cellular network to be a "data network" and a Wi-Fi network to be a "mixed voice and data network," as understood in the context of the '196 patent.

IPR2024-00135
Patent 8,554,196 B2

Because Petitioner demonstrates a reasonable likelihood of success in proving that at least one claim of the '196 patent is unpatentable, we institute on all grounds and all claims raised in the Petition. *See* 37 C.F.R. § 42.108(a). At this stage of the proceeding, therefore, we need not provide a conclusion for every claim and every challenge raised by Petitioner. The issue of whether Petitioner has shown that dependent claim 27 would have been obvious over Chang, in our view, is best left for trial after full development of the record.

## IV.    CONCLUSION

For the foregoing reasons, we determine that Petitioner has demonstrated that there is a reasonable likelihood that it would prevail in proving the unpatentability of at least one of the challenged claims of the '196 patent. We thus institute an *inter partes* review of all of the challenged claims of the '196 patent on all grounds asserted in the Petition. *See* 37 C.F.R. § 42.108(a).

Any findings or conclusions in this Decision are made only for the purposes of institution and are not dispositive of any issue. We have not made a final determination with respect to the patentability of any challenged claim. Our final determination will be based on the record as fully developed during trial, including any evidence or argument timely presented by the parties under our Rules.

## V.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that *inter partes* review of claims 23–27 of the '196 patent is hereby instituted on all grounds stated in the Petition; and

IPR2024-00135
Patent 8,554,196 B2

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial will commence on the entry date of this Decision.

IPR2024-00135
Patent 8,554,196 B2

For PETITIONER:

John D. Haynes
David S. Frist
Michael C. Deane
ALSTON & BIRD LLP
A&BCobblestone@alston.com


For PATENT OWNER:

Reza Mirzaie
Amy E. Hayden
Neil Rubin
Peter Tong
RUSS AUGUST & KABAT
rak_cobblestone@raklaw.com