IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S RESPONSE TO
DEFENDANTS' AND INTERVENOR'S OBJECTIONS TO
MAGISTRATE JUDGE PAYNE'S
CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER**

## TABLE OF CONTENTS

I. U.S. Patent No. 8,891,347 (the "'347 patent") .............................................................. 1

   A. "the channel estimation [that includes the]/[including] path parameter information" ................................................................................................................... 1

   B. "adaption manager" ................................................................................................ 2

II. U.S. Patent No. 9,094,888 (the "'888 patent") .............................................................. 3

   A. "predetermined network load" ................................................................................ 3

III. U.S. Patent No. 10,368,361 (the "'361 patent") ........................................................... 4

   A. "shared resource pool" ............................................................................................. 4

   B. "sub-optimal resource" ............................................................................................. 4

# TABLE OF AUTHORITIES

**Cases**

*Ball Metal Bev. Container Corp. v. Crown Packaging Tech., Inc.*,
   838 Fed. App'x 538 (Fed. Cir. 2020) .................................................................................. 5

*G+ Commc'ns LLC v. Samsung Elecs. Co.*,
   No. 2:22-cv-00078-JRG, 2023 WL 4534366 (E.D. Tex. July 13, 2023) ......................... 2

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) .......................................................................................... 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014 ............................................................................................................ 3

**Statutes**

35 U.S.C. § 112(6) ................................................................................................................. 2, 5

**Rules**

Fed. R. Civ. P. 72 ...................................................................................................................... 1

Pursuant to Fed. R. Civ. P. 72 and L.R. CV-72, Plaintiff Cobblestone Wireless, LLC submits this response to Defendants' and Intervenors' (collectively "Defendants") Objections to Magistrate Judge Payne's Claim Construction Memorandum Opinion and Order (Dkt. No. 136). The Court should overrule Defendants' objections.

**I.      U.S. PATENT NO. 8,891,347 (the "'347 patent")**

**A.      "the channel estimation [that includes the]/[including] path parameter information"**

The '347 Patent claims contain related groups of limitations regarding channel estimation, such as Claim 1's limitations "performing a channel estimation...," "sending the channel estimation...," and "predistorting... according to a channel estimation." Defendants argue that because "performing a channel estimation" refers to performing an algorithm, then "sending the channel estimation" must refer to sending the channel estimation *algorithm*, rather than having its plain meaning as sending the channel estimation itself, *i.e.* the result of the channel estimation algorithm. *See* Dkt. No. 142 at 1. Judge Payne's *Markman* order rejected this, correctly construing "sending the channel estimation" as "sending the result of the channel estimation," and similarly construing phrases beginning "send," "receive," and "according to." Dkt. No. 131 at 15.

Defendants cannot identify any intrinsic or extrinsic support for their interpretation of sending an *algorithm*. Rather, the specification shows that the *result* of the channel estimation algorithm is sent or received and used for predistortion. *See, e.g.*, '347 Patent at 9:1-12, 9:29-31. The unrebutted expert testimony also shows that a POSITA would understand the claim terms consistent with Judge Payne's construction. Dkt. No. 108-1 (Decl. of Todor Cooklev) ¶¶ 29-30.

Defendants also ignore caselaw rejecting their notion that a term used in two different ways must always be given a "uniform construction," even when the result is "nonsensical." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008).

1

### B. "adaption manager"

In his *Markman* order, Judge Payne found "adaption manager" was a § 112(6) term and the structure in the specification corresponding to the claimed functions is "the adaption manager as shown in Figures 1A-1C, 3, and 5, and described at '888 Patent at 5:18-20, 6:18-7:23, 8:65-10:13, 12:23-13:28, and 12:62-15:45, and equivalents." Dkt. No. 131 at 16-19. In particular, Judge Payne found "two of the recited functions are simply transmitting and receiving information to and from another network. Thus, to the extent corresponding structure might be required for those function, they can be found in the adaption manager's control logic [3]20 and input/output interfaces [3]40. So can the structure for [the] 'causing a beam …'" function. *Id.* at 18-19. Judge Payne also made clear the "adaption manager" does not generate or adapt the beam, but rather that is done by the antenna array; the "adaption manager" must only "command or instruct the antenna array to adapt a beam. … As such, this ['causing a beam …'] function does not require any complex algorithm, and the structure of the 'adaption manager' disclosed by the specification suffices." *Id.* at 19.

In their objections to Judge Payne's *Markman* order, Defendants claim "adaption manager" is indefinite because "[t]he specification does not disclose an algorithm for performing the claimed functions." Dkt. No. 142 at 2. But the specification need only disclose an algorithm if the adaption manager is nothing more than a generic processor. *See, e.g.*, *G+ Commc'ns LLC v. Samsung Elecs. Co.*, No. 2:22-cv-00078-JRG, 2023 WL 4534366, at *12-13 (E.D. Tex. July 13, 2023) (rejecting argument a term was indefinite for "fail[ure] to disclose any algorithm or circuit design for the function" where the corresponding structure included a processor and other physical components).

Here, although the "adapt logic 310" and "control logic 320" of "adaption manager 122" may be a general purpose processor (referred to as a "logic device" by the patent), "adaption

2

manager 122" also includes other physical components such as "memory 330" and "I/O interfaces 340." '888 patent at 9:6-28, Fig. 3. And as Judge Payne specifically recognized, the adaption manager 122 would use its I/O interfaces 340 in performing the recited functions. Dkt. No. 131 at 18-19. In other words, the corresponding structure is more than just the logic devices to which Defendants point in their objections. *See* Dkt. No. 142 at 2-3. Therefore, Judge Payne's finding that this term is not indefinite and has sufficient structure disclosed in the specification is correct.

II.     U.S. PATENT NO. 9,094,888 (the "'888 patent")

    A.     "predetermined network load"

Judge Payne correctly held that "predetermined network load" is not indefinite and accorded the term its plain and ordinary meaning. For a patent to be invalid for indefiniteness, *its claims* must fail to provide "reasonable certainty . . . about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The claims are of course read in light of the specification. *Id.* But outside the means-plus-function context, there is no level of detail required of *the specification* in order to avoid indefiniteness, as Defendants appear to suggest.

As Judge Payne correctly noted, there is no dispute here about the scope of the term. Defendants do not suggest that "network load" is indefinite and did not propose that phrase for construction in asserted claim 23, where it also appears. '888 patent at 20:25. Defendants own expert stated that a POSITA would understand the meaning of "predetermined" in the context of the claims: "A POSITA would have understood that that term 'predetermined' means the determination must be performed before the handover takes place." Dkt. 110, Ex. A, Proctor Decl. ¶ 56. The portions of the specification cited in Defendants' Objections are fully consistent with the interpretation of Defendants' expert. '888 patent at 6:63–66, 12:56–57. Because a POSITA would

understand the scope of this term with reasonable certainty, Judge Payne's finding of no indefiniteness is correct.

### III. U.S. PATENT NO. 10,368,361 (the "'361 patent")

#### A. "shared resource pool"

Judge Payne correctly construed "shared resource pool" without requiring its resources to exclusively, always, and necessarily be "sub-optimal." Indeed, none of the words "shared," "resource," or "pool" individually or collectively mean "sub-optimal." Nor does the '361 Patent does not say that the shared resource pool is always exclusively for sub-optimal resources.

Defendants correctly note that claim 10 of the '361 Patent has a processor that is configured to, at some point, "response to the determination that the first frequency spectrum resource is a sub-optimal resource, assign the first frequency spectrum resource to a shared resource pool." '361 patent at 18:64–19:6. Thus, the claim already separately requires that **one** sub-optimal resource is assigned into this shared resource pool in response to **one** specific event. There is no need to redundantly construe the definition of "shared resource pool" itself to always be for sub-optimal resources. Doing so would improperly imply that the shared resource pool exclusively contains a suboptimal resource at all times, as Judge Payne correctly reasoned. Dkt. 131 at 24.

#### B. "sub-optimal resource"

The '361 Patent claims require "a quality status module configured to determine a respective *quality status of a first frequency spectrum resource* and a second frequency spectrum resource" and a processor configured to "determine, based on *the quality status of the first frequency spectrum resource*, that the first frequency spectrum resource is a sub-optimal resource, for the uplink channel and the downlink channel, relative to other frequency spectrum resources...." '361 Patent, Cl. 10 (emphasis added). Defendants do not challenge the claimed

4

"quality status" and instead sought and obtained a construction of "quality status module" under § 112(6), confirming exactly what a "quality status" is in the context of these claims. Dkt. 131 at 21-22.

Recognizing that Defendants did not challenge "quality status," Judge Payne analyzed the "sub-optimal resource" determination under *Ball Metal Bev. Container Corp. v. Crown Packaging Tech., Inc.*, 838 Fed. App'x 538 (Fed. Cir. 2020), and asked whether "application of different [quality status] calculations might result in an infringement determination under one calculation but not another." Dkt. No. 131 at 26. Defendants presented no such evidence either to Judge Payne or in their present Objections. And as Judge Payne recognized, nothing in the specification suggests that the "sub-optimal" determination is based on "end-user experience," as Defendants aver; rather, it is undisputed that the claims require the determination be "based on the quality status," which is an objective measurement. *Id.* at 27. Defendants' Objections should be overruled.

Dated: July 9, 2024                         Respectfully submitted,

                                            */s/ Marc Fenster*
                                            Marc Fenster
                                            CA State Bar No. 181067
                                            Reza Mirzaie
                                            CA State Bar No. 246953
                                            Neil A. Rubin
                                            CA State Bar No. 250761
                                            Amy E. Hayden
                                            CA State Bar No. 287026
                                            James Pickens
                                            CA State Bar No. 307474
                                            Christian W. Conkle
                                            CA State Bar No. 306374
                                            Jonathan Ma
                                            CA State Bar No. 312773
                                            RUSS AUGUST & KABAT
                                            12424 Wilshire Blvd. 12th Floor
                                            Los Angeles, CA 90025
                                            Telephone: 310-826-7474

rak_cobblestone@raklaw.com

Qi (Peter) Tong
TX State Bar No. 24119042
RUSS AGUUST & KABAT
4925 Greenville Ave, Suite 200
Dallas, TX 75206
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,
Cobblestone Wireless, LLC***

6

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on July 9, 2024, with a copy of this document via the Court's ECF system.

*/s/ Marc Fenster*
Marc Fenster
