# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S MOTION TO EXCLUDE UNDER**
***DAUBERT* AND STRIKE DECLARATION OF CRAIG BISHOP**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  LEGAL STANDARDS ............................................................................................... 2

III. THE BISHOP REPORT SHOULD BE STRUCK IN ITS ENTIRETY ................. 3

    A.  Mr. Bishop's Opinion About The Accuracy And Meaning Of The Dates Of Certain 3GPP Documents Is Nothing More Than Layperson Speculation And Should Be Struck ..................................................................................................................... 3

    B.  Mr. Bishop Is Not A Percipient Witness About Public Availability .............................. 9

    C.  Mr. Bishop's Percipient Witness Testimony About 3GPP Should Also Be Struck As Untimely .................................................................................................................... 9

IV. CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................... 2, 3, 8, 10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................... 6

*Metaswitch Networks Ltd. v. Genband US LLC*,
  No. 2:14-cv-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ................................. 3

*Mountaineers Found. v. Mountaineers*,
  No. 2:19-CV-1819-RSL-TLF, 2022 WL 1061925 (W.D. Wash. Apr. 8, 2022) ....................... 6

*Novak v. Tucows, Inc.*,
  330 F. App'x 204 (2d Cir. 2009) ............................................................................................ 7

*Novak v. Tucows, Inc.*,
  No. 06-cv-1909, 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007) ............................................ 7, 8

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*,
  76 F. Supp. 2d 773 (S.D. Tex. 1999) ..................................................................................... 7

**Rules**

Fed. R. Evid. 702 ....................................................................................................... 2, 8, 10

Plaintiff Cobblestone Wireless, LLC moves to strike the Declaration of Craig Bishop (the "Bishop Report," attached as Exhibit 1[1]) in its entirety.

## I. INTRODUCTION

Mr. Bishop is being offered by Defendants[2] for two purposes: as a supposed expert regarding the dates of when certain 3GPP documents that Defendants rely on as purported prior art were publicly available, and as a percipient fact witness about 3GPP's process for adopting technical standards. However, Mr. Bishop is no expert on 3GPP documents or the dates when they are made publicly available. He has no personal experience with the relevant 3GPP documents at issue in this case, was never timely or otherwise disclosed as a fact witness, and the 3GPP documents he attempts to date are inadmissible hearsay and not authenticated.

Critically, Mr. Bishop is not an expert on dates appearing on 3GPP documents or the 3GPP website. He is a layperson with no authority or role within 3GPP beyond what any member of the public could have. By his own admissions, he has never worked at 3GPP, has no knowledge of how 3GPP's web serves or other systems actually work, has not performed any studies about public release dates of 3GPP documents, and has never talked to any 3GPP personnel about the dates when its documents become publicly available. He has only uploaded documents himself twice to 3GPP's website, and well after the relevant time frame of the documents addressed in his report. He further admits that neither he (nor any other member of the public) could upload documents to 3GPP's website during the relevant time frame. And even where employees at his own clients in this case (intervenor Nokia) were authors of certain documents submitted to 3GPP, Mr. Bishop

---

[1] Exhibits are attached to the Declaration of Amy E. Hayden, filed concurrently herewith.

[2] References to Defendants also include the intervenors Nokia and Ericsson, who jointly submitted the Bishop Report and invalidity report from Dr. van der Weide that is also referenced in this Motion.

did not talk to them or anyone else at Nokia about when the documents were prepared or when or how they became publicly available.

Rather than specialized knowledge, Mr. Bishop's opinions are based solely on his own anecdotal, limited experience interacting as a third party with 3GPP and its public-facing website, and his self-serving claim that he has never heard of any issues related to dates that appear on 3GPP documents or its website. His personal experience and speculation is not the type of specialized knowledge necessary to qualify as an expert. Nor is such speculation sufficient to overcome the hearsay and authentication failures associated with Mr. Bishop's opinions. Defendants cannot use Mr. Bishop's opinion to overcome that their public availability arguments rely on inadmissible hearsay based on Internet information that has no independent corroboration. The purported expert opinion aspects of the Bishop Report (Ex. 1 ¶¶41-88) should be struck.

Mr. Bishop also purports to offer certain opinions as a percipient fact witness. Mr. Bishop describes what 3GPP is and his experience working to influence 3GPP standards when he was employed at non-party Samsung. *See id.* ¶¶19-40. Defendants' invalidity expert, Dr. van der Weide, then relies on Mr. Bishop's testimony to support his invalidity opinions. But Mr. Bishop was not identified by Defendants on their initial disclosures, and his declaration was not served until after fact discovery closed. Mr. Bishop's untimely factual testimony should be struck.

## II.     LEGAL STANDARDS

An expert is a person who has relevant "knowledge, skill, experience, training, or education" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. It is the Court's role to act as gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993).

In addition to the proffered expert possessing adequate qualifications and experience

concerning the subject matter of his testimony, the expert's opinions must also be based on "more than subjective belief of unsupported speculation." *Id.* at 592. "An absence of information is not a license to speculate"; rather, expert opinions must be "supported by sufficient facts or data." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016) (quotation marks omitted).

### III. THE BISHOP REPORT SHOULD BE STRUCK IN ITS ENTIRETY

Defendants use the Bishop Report for two purposes: (1) to purportedly establish the public availability dates of certain 3GPP documents that they rely on as alleged prior art; and (2) as a factual declaration. The Bishop Report should be struck for both purposes.

#### A. Mr. Bishop's Opinion About The Accuracy And Meaning Of The Dates Of Certain 3GPP Documents Is Nothing More Than Layperson Speculation And Should Be Struck

Defendants' primary purpose for the Bishop Report is to date when certain 3GPP documents were publicly available so that their invalidity expert may rely on those documents as printed publication prior art. *See, e.g.*, Ex. 2 (van der Weide Report) ¶¶715-718; *see also* Ex. 3 (Bishop Depo.) at 20:24-22:6 ("The declaration I've provided for those two cases just relate to the public … availability of the prior art, yes.").[3] For example, Dr. van der Weide extensively cites Mr. Bishop's opinions and conclusions regarding 3GPP document TS 23.401 v10.3.0, and then states that "[a]s explained in Mr. Bishop's declaration," he concludes TS 23.401 v.10.3.0 was publicly available before the '888 patent's priority date. Ex. 2 ¶¶728-731. For other prior art, Dr. van der Weide simply adopts Mr. Bishop's opinions regarding public availability. *Id.* ¶¶715-718, 1115-1120.

In other words, rather than take the factual discovery necessary to establish the 3GPP

---

[3] Dr. van der Weide relies entirely on the Bishop Report, rather than any conversations with Mr. Bishop; Mr. Bishop has never heard of Dr. van der Weide. Ex. 3 at 9:3-7.

3

documents as prior art, such as by obtaining discovery directly from 3GPP or the actual authors of the documents submitted to 3GPP, Defendants instead present Mr. Bishop, a layperson with no connection to the actual documents, to establish the dates of the documents. But Mr. Bishop does not have any specialized knowledge in the public availability of 3GPP documents, let alone any the specialized knowledge to establish that dates reflected on 3GPP's website accurately reflect the date the documents at issue in this case were made publicly available.

Dr. van der Weide's reliance on Mr. Bishop's purported opinion is important because Defendants and Dr. van der Weide use Mr. Bishop's purported expert testimony to achieve a purported prior date of March 18, 2011 for TS 23.401, a date that is a little more than a month before the April 29, 2011 priority date for the '888 patent. *See id.* ¶¶668-669, 731; *see also id.* ¶¶1074-1075, 1115 (approximately a six-week difference between the purported prior date of TS 36.211 (purportedly June 16, 2014) and the priority date of the '361 patent (August 1, 2014)). But even at his deposition, Mr. Bishop could not provide anything other than speculative testimony on the date of public availability of TS 23.401 and TS 36.211. *See, e.g.*, Ex. 3 at 64:17-67:15 (speculating as to why the alleged public availability date of TS 23.401 was before the meeting at which it was approved); *id.* at 67:16-69:14 (confirming he did not upload TS 23.401 and also unable to explain how TS 23.401's alleged date stamp was generated); *id.* at 70:1-71:1 (confirming he did not upload TS 36.211 and also unable to explain how TS 36.211's alleged date stamp was generated). And importantly, other than Mr. Bishop's flawed opinion, neither Mr. Bishop nor Dr. van der Weide cite to any evidence that the dates they rely on reflect the date of public accessibility as opposed to some other date such as a last modified or document creation date, or even whether the dates are accurate.

3GPP documents are uploaded and maintained by the Mobile Competence Centre at 3GPP.

4

*See, e.g.*, https://www.3gpp.org/about-us/mobile-competence-centre; Ex. 1 ¶27; Ex. 3 at 41:9-13, 42:5-14, 49:5-7 (a document would be provided to employees of the Mobile Competence Centre, who would upload the document). Mr. Bishop, however, has never worked at 3GPP's Mobile Competence Centre. Ex. 3 at 41:14-16. He is not an employee of 3GPP, never has been, and is not a custodian of records for the organization. *Id.* at 15:2-6, 36:18-23. He does not know any details regarding how 3GPP (or one of its component organizations, ETSI) maintains its documents, including but not limited to the software used, who maintains the servers, or any specifics as to the systems used by 3GPP. *Id.* at 53:17-55:3 ("I don't know anything about how the servers -- all I know is the servers are located with ETSI and ETSI has responsibility for those servers"). He does not know how dates, reflected as what he terms "timestamps," for 3GPP documents are assigned or even what they represent beyond his speculation. *Id.* at 62:3-18 ("Q. How does the file server automatically generate the time stamp? … A. I haven't looked into that, so I don't know the details, so I don't know."). Nor does he know if the timestamps displayed on the 3GPP website could be altered or whether there have been any issues with them that might lead to them being inaccurate. *Id.* at 57:18-58:11. Mr. Bishop also has no experience using the relevant systems. Indeed, prior to 2016 (well after the relevant dates for the 3GPP documents addressed in the Bishop Report), 3GPP prevented non-employees from uploading materials themselves. *Id.* at 38:1-11. And even since 2016, Mr. Bishop has only uploaded documents twice. *Id.* at 38:15-21.

Mr. Bishop does not claim to have any particular expertise about the public availability of 3GPP documents outside of his own anecdotal experience well after the relevant timeframe. He has not investigated the actual processes used by 3GPP. *See, e.g.*, *id.* at 53:17-55:3, 62:3-18. He has not performed any studies that correlate the dates on 3GPP's website to the actual public availability of the underlying documents. He has not surveyed 3GPP contributors to determine the

correlation between the dates shown on 3GPP's website and the actual public availability of documents. Nor has he interviewed employees of 3GPP's Mobile Competence Centre to understand the public availability issue at 3GPP or how they assign dates to documents or website materials.

Mr. Bishop's purported expert opinion is based on nothing more than his subjective, speculative belief that the information displayed on 3GPP's website is accurate and indicates when the documents are first made publicly available. But whatever familiarity he has with navigating the 3GPP website, as any member of the public could, is insufficient to vouch for the dates of any information on the website or documents obtained from the website. Defendants compound the problem by not only having Dr. van der Weide rely exclusively on Mr. Bishop's opinions on the public availability points, but also by having Dr. van der Weide opine that he can expand Mr. Bishop's "principles" to generate public availability opinions of his own. *See* Ex. 2 ¶¶715-718.

Mr. Bishop's public availability "opinions" are no more than layperson testimony being presented as expert testimony. Moreover, they are speculative assumptions designed to filter attorney argument through a supposed expert witness. The Bishop Report should be struck. *See, e.g.*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) ("The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge."); *Mountaineers Found. v. Mountaineers*, No. 2:19-cv-1819-RSL-TLF, 2022 WL 1061925, at *5-6 (W.D. Wash. Apr. 8, 2022) (excluding evidence regarding donor intent or donor confusion because expert was not qualified to give such expert testimony).

Defendants should have gathered the necessary facts during fact discovery from knowledgeable and reliable sources. They could have taken discovery directly from 3GPP about

6

its systems, processes, and public availability of the relevant documents, or even sought a declaration from 3GPP about the public availability of the relevant documents. And, for some of the documents, Defendants could have taken discovery from the actual authors of the documents themselves. For example, the R1-132296 reference was submitted to 3GPP by Nokia, an intervenor in this case. *See* Ex. 3 at 71:19-72:6. But Defendants failed to seek this discovery directly from 3GPP or Intervenor Nokia. *Id.* Defendants and Dr. van der Weide should not be able to use Mr. Bishop's layperson, speculative opinions about public availability to make up for Defendants' failure to obtain discovery from reliable and knowledgeable sources.

The issue here is similar to the issue faced in *Novak v. Tucows, Inc.*, No. 06-cv-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009). In *Novak*, the plaintiff attempted to rely on printouts from the Internet by using a declaration from a third party to authenticate the evidence. *Id.* The *Novak* court excluded the evidence for two reasons. First, citing cases from the Seventh Circuit and Southern District of Texas, the court found that relying on information in Internet printouts, without more, was hearsay. *Id.* (citing, for example, *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999)) ("[A]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules."). And second, the court rejected the printouts as unauthenticated. "As Novak proffers neither testimony nor sworn statements attesting to the authenticity of the contested web page exhibits *by any employee of the companies hosting the sites from which plaintiff printed the pages*, such exhibits cannot be authenticated as required under the Rules of Evidence." *Novak*, 2007 WL 922306, at *5 (emphasis added). The declarant had no firsthand knowledge about the printouts other than their internet source, and thus could not overcome the hearsay and authentication bars.

7

Defendants' arguments here are no different than in *Novak*. Mr. Bishop lacks the foundation to authenticate any of the relevant 3GPP documents or website materials, and no hearsay exception is applicable. Defendants failed to obtain discovery properly authenticating the 3GPP materials or that would confirm the accuracy of any dates on the 3GPP materials. At base, Mr. Bishop's purported expert opinion simply assumes the truth of the dates on the 3GPP documents and website based solely on his after-the-fact, anecdotal experience with unrelated 3GPP activities.

Defendants seem to believe that Mr. Bishop has the requisite expertise because of his work in various standards-making capacities while employed at non-party Samsung. But Defendants and Dr. van der Weide do not rely on Mr. Bishop as an expert regarding 3GPP standards-making.[4] Instead, they rely on him as a purported expert on the public availability of certain 3GPP documents they wish to rely on as prior art, and the accuracy of certain dates on 3GPP's website. But Mr. Bishop lacks any relevant expertise, or even experience, in these topics.

Defendants also seem to believe that Mr. Bishop's past experience asking the Mobile Competence Centre to upload documents, and his private consulting business where he provides similar declarations, is a sufficient basis for him to provide expert opinions in this case. But Mr. Bishop's personal experience does not meet the standards for expert evidence set by Rule 702 and *Daubert*. That Mr. Bishop has never personally noticed (or heard of) issues with 3GPP's systems is completely irrelevant. He has never worked for 3GPP, performed any reliability studies, or even performed any research to determine the reliability of date information stored on the 3GPP website. He simply opines, as a purported "expert," that he has no reason to believe the 3GPP website is wrong for the documents relevant here. Mr. Bishop is passing off his limited anecdotal experience

---

[4] Defendants do purport rely on Mr. Bishop as a fact witness for these issues, as discussed below.

as expert opinion, which is insufficient. And, even worse, Dr. van der Weide expands on this anecdotal experience to form opinions of his own that he is not qualified to make.

Mr. Bishop's expert opinions (Ex. 1 ¶¶41-88) should be struck.

### B.  Mr. Bishop Is Not A Percipient Witness About Public Availability

Defendants also appear to believe that, even if Mr. Bishop is not an expert, his opinions should be admitted as fact testimony. Setting aside the fact that Mr. Bishop is unquestionably being offered as an expert witness (*see, e.g.*, *id.* ¶1; Ex. 3 at 7:12-17), this argument fails. Mr. Bishop was never identified in any initial disclosures, and any fact testimony should be struck for this reason alone.

Moreover, as addressed in detail above, Mr. Bishop has no personal knowledge about the specific documents he addresses, and therefore lacks the appropriate foundation to offer such testimony. He has no firsthand knowledge about the public availability of the specific documents addressed in his report. Ex. 3 at 42:22-43:19. He admitted he did not author or upload any of the documents addressed in his declaration, did not know who did, and engaged in no investigation to discover such information. *Id.*; *see also*, *e.g.*, *id.* at 70:16-71:1. As a fact witness, Mr. Bishop would only be testifying that he went to 3GPP's website and read the dates as listed on it. This end-run on hearsay and authentication is impermissible. As discussed above, Defendants could have gathered the information addressed by Mr. Bishop from appropriate and reliable sources, such as 3GPP or the documents' authors themselves, but they chose not to.

Accordingly, Defendants should not be permitted to offer Mr. Bishop as a percipient witness about public availability.

### C.  Mr. Bishop's Percipient Witness Testimony About 3GPP Should Also Be Struck As Untimely

The Bishop Report was served on May 24, 2024, after fact discovery closed on May 17,

9

2024. *See* Dkt. No. 124 at 3. The Bishop Report, however, sets forth substantial factual testimony about 3GPP's "prominence and purpose," as well as Mr. Bishop's past experience developing standards while at non-party Samsung, with 3GPP policies, and with the types of documents 3GPP uses. Ex. 1 ¶¶19-40. Dr. van der Weide relies on Mr. Bishop's factual testimony to provide factual summaries regarding 3GPP and its standardization process. Ex. 2 ¶¶43-47.

This factual testimony from Mr. Bishop should be struck because it is untimely. Defendants did not disclose Mr. Bishop in their initial disclosures and still have not disclosed him in any updated initial disclosures. Cobblestone did not have the opportunity to depose him as a fact witness, or gather fact discovery relevant to the topics on which Defendants now rely on Mr. Bishop. Because he was not timely disclosed as a fact witness, the factual testimony aspects of his report (Ex. 1 ¶¶19-40) should be struck.

## IV.   CONCLUSION

The Bishop Report should be struck in its entirety because it is improper expert and fact testimony. Mr. Bishop is not a qualified expert testimony under Rule 702 or *Daubert*, and his factual testimony lacks foundation and is untimely.

Dated: July 3, 2024

Respectfully submitted,

*/s/ Amy E. Hayden*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Jonathan Ma
CA State Bar No. 312773
Christian W. Conkle

███████████████████████████████

CA State Bar No. 306374
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Qi (Peter) Tong
TX State Bar No. 24119042
RUSS AGUUST & KABAT
4925 Greenville Ave, Suite 200
Dallas, TX 75206
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

*Attorneys for Plaintiff,*
***Cobblestone Wireless, LLC***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Plaintiff hereby files its Certificate of Authorization to File its Motion to Strike Under Seal per Local Rule CV-5(a)(7)(A)-(B). The undersigned counsel for Plaintiff hereby certifies that the Court has already granted authorization to seal the document as set forth in Paragraph 19 of the Protective Order entered in this action at Dkt. No. 77.

*/s/ Amy E. Hayden*
Amy E. Hayden

## CERTIFICATE OF CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(h), I certify that counsel for Cobblestone met and conferred telephonically on June 28, 2024 in a good faith effort to resolve all the issues addressed in this Motion but were unable to reach agreement.

*/s/ Amy E. Hayden*
Amy E. Hayden

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served on all counsel of record via email on July 3, 2024.

*/s/ Amy E. Hayden*
Amy E. Hayden