IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>        Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>        Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>        Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>        Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY<br>LLC; AT&T CORP.<br>        Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>        Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>        Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON<br>WIRELESS.<br>        Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>        Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S MOTION TO EXCLUDE OPINIONS
OF DEFENDANTS' EXPERT JOHANNA DWYER**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................................. 2

   A.   Ms. Dwyer's "Sale of the Asserted Patents" Section. ........................................... 3

   B.   Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" Section..................... 3

   C.   Ms. Dwyer's Royalty Stacking Opinions. ............................................................. 4

III. ARGUMENT ....................................................................................................................... 5

   A.   Ms. Dwyer's "Sale of the Asserted Patents" Section is Not Expert Opinion, But Merely an Improper Summary of Evidence, Untethered to an Opinion. ................................. 5

   B.   Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" Section is Well Beyond the Scope of Her "Technical Comparability" Expertise. ................................................ 6

   C.   Ms. Dwyer's Baseless Assertions of "Royalty Stacking" Should Be Excluded................. 8

   D.   Ms. Dwyer's Opinions that Do Not Pertain to Technical Comparability Should Be Excluded Because they Are Cumulative and Duplicative of Analysis Performed By Defendants' Damages Expert, Ms. Bennis. ................................................................. 9

IV.  CONCLUSION................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015) ............................................................................................ 2, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ................................................................................................................. 6

*Ericsson Inc.*, v. *TCL Commc'n Tech. Holdings, Ltd.*,
 No. 2:15-CV-00011-RSP, 2018 WL 2149736 (E.D. Tex. May 10, 2018) ............................... 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 8

*Hearing Components, Inc. v. Shure, Inc.*,
 No. 9:07-cv-104, 2008 WL 5572824 (E.D. Tex. Dec. 1, 2008) ............................................. 10

*Immersion Corp. v. Samsung Elecs. Am., Inc.*,
 No. 2:17-CV-572-JRG, Dkt. 188 (E.D. Tex. May. 2, 2019) ................................................ 2, 9

*King v. Cardinal Servs., LLC*,
 No. 2:19-cv-00217-RSP, 2021 WL 1377261 (E.D. Tex. Apr. 11, 2021) ................................. 6

*Red Rock Analytics, LLC v. Samsung Elecs*. Co.,
 No. 217CV00101RWSRSP, Dkt. 243 (E.D. Tex. Mar. 13, 2019) ........................................... 9

*Thomas v. T.K. Stanley, Inc.*,
 No. 9:12-cv-158, 2014 WL 12814614 (E.D. Tex. Oct. 18, 2014) .......................................... 10

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
 No. 218CV00366JRGRSP, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) ............................. 5

**Rules**

FED. R. EVID. 403 ............................................................................................................... 1, 9, 10

FED. R. EVID. 702 ................................................................................................................ 1, 5, 6

FED. R. EVID. 703 ......................................................................................................................... 1

I.      **INTRODUCTION**

Plaintiff Cobblestone Wireless, LLC ("Cobblestone") moves to exclude certain expert opinions of Defendants' "Technical Comparability" expert Johanna Dwyer pursuant to FED. RS. EVID. 403, 702, and 703:

1) Ms. Dwyer's purported "opinion" regarding the "Sale of the Asserted Patents," is not an opinion at all, but rather a summary of evidence by Ms. Dwyer. It also does not pertain to technical comparability, is beyond Ms. Dwyer's expertise, and is cumulative to the same subject covered by Defendants' damages expert, Melissa A. Bennis, who does not rely upon Ms. Dwyer for that opinion.

2) Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" section goes well beyond "Technical Comparability" and Ms. Dwyer's expertise, and is also cumulative of the same subject covered by Ms. Bennis, who does not rely upon Ms. Dwyer for that opinion.

3) Ms. Dwyer's "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost" is an unfounded, prejudicial and unreliable "royalty stacking" argument, echoing the same challenged[1] opinion by Ms. Bennis. Ms. Dwyer improperly counts industry-wide 5G SEPs and baselessly assumes that each needs to be licensed by the Defendants, applies Cobblestone's royalty rate in this case to each patent, and presents the scare tactic opinion that resultant stacked rates would be more than what Americans pay for their cell phone service. This Court has recognized that

---

[1] Ms. Dwyer's royalty stacking opinions are substantially the same as Ms. Bennis's, though Ms. Bennis does not cite or attribute her royalty stacking opinion to Ms. Dwyer. Therefore, Cobblestone is separately moving to exclude both experts' opinions, but for substantially the same reasons.

1

Ms. Bennis's royalty stacking opinion "would be unreliable opinion without actual evidence of royalty stacking" and has excluded unfounded royalty stacking arguments as "improper" and prejudicial. *Ericsson Inc.*, v. *TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2018 WL 2149736, at *5 (E.D. Tex. May 10, 2018) citing *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015); *Immersion Corp. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-572-JRG, Dkt. 188 (E.D. Tex. May. 2, 2019) (Ex. F, p. 10).

Accordingly, the Court should strike these opinions from Ms. Dwyer's report.

## II. FACTUAL BACKGROUND

On June 14, 2024, Ms. Dwyer served her Expert Report Regarding the Technical Comparability of [the Asserted Patents]. Ex. A ("Dwyer Rpt."). Ms. Dwyer's report includes a "Technical Comparability Analysis" section, which this Motion is not challenging. *Id.* at ToC. The report also includes myriad other sections, covering, *inter alia*, "Sale of the Asserted Patents," "Cobblestone's Flawed Damages Analysis" and "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost," which are subject to this Motion. *Id.*

On the same day Ms. Dwyer served her report, the Defendants served the Rebuttal Expert Report and Disclosure of Melissa A. Bennis. Ex. B[2] Ms. Bennis cites to a conversation with Ms. Dwyer for various technical comparability issues, but not for any other opinion, including Ms. Bennis's opinions on the sale of the Asserted Patents, economic comparability issues, or Ms. Bennis's royalty stacking opinions (subject to a concurrently-filed motion to strike). *Id. See also* Ex. C (Bennis Depo. Tr.) at 19:6-20:4. Ms. Bennis did not see or rely upon Ms. Dwyer's report in

---

[2] Ms. Bennis's Rebuttal Report on damages is, for the purposes of this Motion, substantially the same for each above-captioned case. This Motion attaches and refers to Ms. Bennis's report served in the case against the AT&T Defendant group.

forming her own opinions. *Id*. at 20:21-23.

      **A.     Ms. Dwyer's "Sale of the Asserted Patents" Section.**

Ms. Dwyer's "Sale of the Asserted Patents" section does not include any opinions on technical comparability. Ex. D (Dwyer Depo. Tr.) at 61:11-17. Instead, it recites facts and circumstances related to Cobblestone's purchase of the patents-in-suit from prior patent holder Allied Inventors, LLC and Empire Technology Development, LLC. Ex. A at ¶¶ 31-49 (containing subsections "The Establishment of Allied Inventors, LLC and Empire Technology Development, LLC from Intellectual Ventures," "Monetization of Patents by Allied Inventors, LLC," "Ms. Rudersdorf is an Expert in the Monetization of Telecommunications Patents," "Lack of Market Interest in the Cobblestone Portfolio," and "Market Value of the Cobblestone Portfolio"). Though the section titles may suggest some opinions on these matters are offered, in fact, there are no actual opinions offered by Ms. Dwyer and this overall section is merely a summary of evidence in the case.

      **B.     Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" Section.**

Except for Section VIII(B)(1), "Dell and Williams Provide No Evidence that the Asserted Patents are Technically Comparable," Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" section also does not offer opinions on technical comparability.[3] Ex. A at ¶¶ 216-271, 298-301. Instead, the section is largely a rehash of Cobblestone's economic damages expert Stephen E. Dell's opinions and a criticism of his <u>economic</u> analysis of license agreements in this case. *See, e.g.*, Ex. A at ¶ 247 ("Mr. Dell has adopted a repetitive, formulaic approach which lacks rigor…");

---

[3] Though the subsection may not directly deal with technical comparability, this Motion is not seeking to exclude Section VIII(B)(2) of Ms. Dwyer's report, titled "Essentiality Rates versus Consideration of Value" (¶¶ 279-297) because of lack of expertise, but because, as explained below, this section is cumulative to Ms. Bennis's opinions on the matter and not relied upon by Ms. Bennis.

3

¶ 251 (criticizing Mr. Dell's "economic[] comparable" analysis); ¶¶ 252-254 (generally critiquing Mr. Dell's consideration of litigation settlements and "discounts"); ¶¶ 262-263 (same); ¶ 265 ("Mr. Dell has not taken a consistent approach when considering whether an agreement is relevant to the consideration of damages in this case"); ¶ 270 ▮

Section VIII(B)(3) "Changing the Royalty Base," including ¶ 301 ("Mr. Dell offers no evidence, nor explanation, as to why the parties to the hypothetical negotiation would sit down around the hypothetical table with a benchmark royalty rate based upon the net selling price of infrastructure equipment and assume it was in any way valid or credible to use the same rates to negotiate an agreement based on monthly ARPU of a carrier's subscriber.")

None of Ms. Dwyer's professed "Qualifications" involve economic aspects of patent licensing, and Ms. Dwyer admitted at deposition she has no expertise in the area. Ex. A at ¶¶ 5-19; Ex. D at 33:2-23.

C. **Ms. Dwyer's Royalty Stacking Opinions.**

Section X of Ms. Dwyer's report is titled "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost." Ex. A at ¶¶ 331-346. In this section, Ms. Dwyer offers various royalty stacking opinions in which she assembles total industry counts of 5G SEPs and assumes that the cell phone carrier Defendants would be required to pay a royalty on each of the patents. *Id*. Ms. Dwyer applies Mr. Dell's per-unit royalty opinions to each of the industry-wide counts and presents a total purported royalty burden amounting ▮

4

*Id.*[4]

At deposition, Ms. Dwyer testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ Ex. D at 83:20-24.

## III. ARGUMENT

### A. Ms. Dwyer's "Sale of the Asserted Patents" Section is Not Expert Opinion, But Merely an Improper Summary of Evidence, Untethered to an Opinion.

It is hornbook law that an expert opinion must "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Accordingly, this Court has excluded purported opinions from experts that, in actuality, were mere summaries of facts. *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 218CV00366JRGRSP, 2019 WL 6896674, at *3 (E.D. Tex. Dec. 18, 2019) (striking expert report paragraphs under Rule 702 because they "contains no expert analysis" and is merely a "summation of various documents and testimony"). Ms. Dwyer's paragraphs concerning the "Sale of the Asserted Patents" are a mere recitation of facts. They do not lead to any opinion or conclusion regarding technical comparability or other salient matter. Therefore, they should be excluded.

Ms. Dwyer's recitation of facts about the purchase of the asserted patents is not tied to any overall conclusion on the matter. The last subsection in the section, titled "Market Value of the Cobblestone Portfolio" consists of nothing but a recitation of facts and testimony about the 2022 Patent Purchase Agreement. The section that follows changes gears entirely and is a "Technical Comparability Analysis" of entirely different license agreements. Ex. A at pp. 25-88. Ms. Dwyer, who is not an economic expert, admits that the "Sale of the Asserted Patents" section does not

---

[4] Ms. Bennis includes similar, if not the same, royalty stacking calculations in her reports, which do not rely upon Ms. Dwyer, and are subject to a similar, concurrently filed motion to strike. Ex. B at ¶¶ 111-113.

5

pertain to technical comparability.[5] Ex. D (Dwyer Depo. Tr.) at 61:11-17.

The entire section is merely a recitation of facts that leads to nowhere. Defendants' economic damages expert, Ms. Bennis, does not cite or rely on Ms. Dwyer for her own discussion of the Patent Purchase Agreement. Ex. B at ¶¶ 16-20, 141-147; Ex. C at 19:6-20:23. Ms. Dwyer's "Sale of the Asserted Patents" section of her report is not opinion at all, and is a mere impermissible recitation of facts by an expert witness. It should be excluded.

### B. Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" Section is Well Beyond the Scope of Her "Technical Comparability" Expertise.

Ms. Dwyer is not an economic damages expert. Defendants' damages expert, Ms. Bennis, relies on her only for opinions on technical comparability. *Id.* at 19:6-20:22. Nevertheless, Ms. Dwyer includes opinions on economic aspects of damages and Cobblestone's expert, Stephen Dell's, *Georgia Pacific* hypothetical negotiation analysis. Ex. A at ¶¶ 216-271, 298-301. Federal Rule of Evidence 702, however, requires that a witness proffered as an expert be "qualified as an expert by knowledge, skill, experience, training, or education" such that the proffered "expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a) (emphasis added); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also King v. Cardinal Servs., LLC*, No. 2:19-cv-00217-RSP, 2021 WL 1377261, at *1-2 (E.D. Tex. Apr. 11, 2021) (excluding expert testimony from an engineer, rather than a medical doctor, concerning "medical causation of [plaintiff]'s injuries" because the testimony "exceed[ed] [the engineer's] scientific knowledge"). Ms. Dwyer is simply not qualified to offer opinions on the economic aspects of Stephen Dell's *Georgia Pacific*

---

[5] To the extent Defendants may argue that Ms. Dwyer's "Ms. Rudersdorf is an Expert in the Monetization of Telecommunications Patents," subsection is an expert opinion, it is not. Explained below, Ms. Dwyer is not an expert in patent licensing or economic matters, and, in any event, such a personal opinion vouching for purported expertise of a nonparty fact witness is not salient or admissible expert opinion that would help the jury.

hypothetical negotiation analysis.

The Motion is not seeking exclude Ms. Dwyer's subsection titled "Dell and Williams Provide No Evidence that the Asserted Patents are Technically Comparable" because that section lies within Ms. Dwyer's professed expertise. But Section VIII(A) of her report, titled "Dell's Flawed Analysis of Comparable Licenses," and section VIII(B)(3) titled "Changing the Royalty Base" go well beyond Ms. Dwyer's expertise, into economic and licensing matters. *See, e.g.*, Ex. A at ¶ 247 ("Mr. Dell has adopted a repetitive, formulaic approach which lacks rigor…"); ¶ 251 (criticizing Mr. Dell's "economic[] comparable" opinion); ¶¶ 252-254 (generally critiquing Mr. Dell's consideration of litigation settlements and "discounts"); ¶¶ 262-263 (same); ¶ 265 ("Mr. Dell has not taken a consistent approach when considering whether an agreement is relevant to the consideration of damages in this case"); ¶ 270 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ¶ 301 ("Mr. Dell offers no evidence, nor explanation, as to why the parties to the hypothetical negotiation would sit down around the hypothetical table with a benchmark royalty rate based upon the net selling price of infrastructure equipment and assume it was in any way valid or credible to use the same rates to negotiate an agreement based on monthly ARPU of a carrier's subscriber.")

Ms. Dwyer's report includes a description of her relevant qualifications and experience, and there is no mention of experience in patent licensing, let alone economic aspects of licensing or damages. Ex. A at ¶¶ 5-19. Ms. Dwyer admitted at deposition she has no expertise in the area. Ex. D at 33:2-23. Ms. Dwyer is not qualified to offer these economic damages opinions, and they should be excluded.

7

### C. Ms. Dwyer's Baseless Assertions of "Royalty Stacking" Should Be Excluded.

The Federal Circuit has explained that "[t]he mere fact that thousands of patents are declared to be essential to a standard does not mean that a standard-compliant company will necessarily have to pay a royalty to each SEP holder." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1234 (Fed. Cir. 2014). This Court has recognized that "Federal Circuit precedent suggests that [a] theory about features covered by other unidentified patents would be unreliable opinion ***without actual evidence of royalty stacking***." *Ericsson Inc.*, 2018 WL 2149736, at *5, citing *CSIRO*, 809 F.3d at 1302 (Fed. Cir. 2015) ("[A]bstract recitations of royalty stacking theory ... are insufficiently reliable."). Ms. Dwyer's report includes royalty stacking opinions whereby she provides calculations, with no factual basis, ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Ex. A at ¶¶ 331-346. This is exactly the baseless, prejudicial "royalty stacking" evidence that the Federal Circuit and this Court has explained is unreliable. Therefore, these opinions should be excluded.

Ms. Dwyer admitted in deposition that ████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████ Ex. D at 83:20-24. Despite this, Ms. Dwyer offers opinions stacking and counting the royalty for every SEP for 5G:

8

████████████████████████████████████

Ex. A at ¶ 338 (emphasis added)[6]

Ms. Dwyer is careful to not utter the phrase "royalty stacking" in her report, but that is exactly what this opinion is- she assumes all relevant 5G SEP patents must be licensed at a given rate, and totals the stack. Ms. Dwyer also introduces the additional scare tactic of telling the jury that Mr. Dell's opined royalty stacked for all 5G SEPs ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[7]

Accordingly, in view of the Federal Circuit precedent, above, as well as FRE 403, this Court has precluded such evidence of royalty stacking. *Red Rock Analytics, LLC v. Samsung Elecs. Co.*, No. 217CV00101RWSRSP, Dkt. 243 (E.D. Tex. Mar. 13, 2019) (Ex. E, pp. 1-2); *Immersion Corp. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-572-JRG, Dkt. 188 (E.D. Tex. May. 2, 2019) (Ex. F, p. 10). The Court should do the same here.

### D. **Ms. Dwyer's Opinions that Do Not Pertain to Technical Comparability Should Be Excluded Because they Are Cumulative and Duplicative of Analysis Performed By Defendants' Damages Expert, Ms. Bennis.**

Ms. Dwyer's expert report is titled to pertain to the "Technical Comparability" of the Asserted Patents, and Defendants' damages expert, Ms. Bennis, relies on Ms. Dwyer only for technical comparability issues. Ex. A, Ex. C at 19:6-20:22. Ms. Dwyer's opinions on other matters such as the "Sale of the Asserted Patents," economic aspects of "Cobblestone's Flawed Damages

---

[6] Ms. Dwyer includes substantially the same opinions pertaining to different total industry counts of 5G SEPs. Ex. A at ¶¶ 338-346. This Motion seeks exclusion of all of these opinions.

[7] Ms. Dwyer's royalty stacking opinions also run afoul of, if not the letter, the spirit of Court MIL 19: "The parties shall be precluded from introducing evidence, testimony, or argument suggesting that a verdict in one party's favor would impact the cost of goods or services or would have other commercial impacts."
https://www.txed.uscourts.gov/sites/default/files/judgeFiles/12.14.22%20Standing%20Order%20on%20Motions%20in%20Limine.pdf

Analysis," "Ericsson's and Nokia's Leadership in Cellular Technology" and "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost," in addition to the faults described above, are improper and prejudicially cumulative to the damages opinions of Ms. Bennis. *Thomas v. T.K. Stanley, Inc.*, No. 9:12-cv-158, 2014 WL 12814614, at *2 (E.D. Tex. Oct. 18, 2014) ("[m]ultiple experts testifying on the same subject is unhelpful and needlessly cumulative," rendering any "probative value … substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time" under Federal Rule of Evidence 403; *see also Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-cv-104, 2008 WL 5572824, at *3-4 (E.D. Tex. Dec. 1, 2008) (excluding testimony of one expert concerning "background knowledge of one of ordinary skill in the art" as "cumulative and of marginal probative value" in view of a second expert's testimony concerning patent validity).

Essentially all sections of Ms. Dwyer's report, except her Section VII "Technical Comparability Analysis" and Section VIII(B)(1) "Dell and Williams Provide No Evidence that the Asserted Patents are Technically Comparable," are cumulative and duplicative of Ms. Bennis's opinions. Ms. Dwyer's "Sale of the Asserted Patents" section is duplicative of Ms. Bennis's own discussion of the Patent Purchase Agreement, which does not cite to Ms. Dwyer. Compare Ex. A at ¶¶ 31-49 with Ex. B at ¶¶ 16-20, 141-147. Except for the subsection about technical comparability noted above, Ms. Dwyer's "Cobblestone's Flawed Damages Analysis" section is cumulative and duplicative of Ms. Bennis's own criticisms of Cobblestone's damages expert, Mr. Dell, which does not cite to Ms. Dwyer. Compare Ex A at ¶¶ 216-271, 279-301 with Ex. B. at ¶¶ 62-125. Ms. Dwyer's "Ericsson's and Nokia's Leadership in Cellular Technology" is cumulative and duplicative of Ms. Bennis's own description of Ericsson's and Nokia's alleged leadership in cellular technology and SEP patents, which does not cite to Ms. Dwyer. Compare Ex. A at ¶¶ 302-

330 with Ex. B at ¶¶ 37-41, 109, 110, and 259.  As described above, Ms. Dwyer's "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost," is cumulative, duplicative of, and except for slight differences in royalty stack calculations, largely the same as, Ms. Bennis's opinions on royalty stacking, which do not cite to Ms. Dwyer.  Compare Ex. A at ¶¶ 331-346 with Ex. B at ¶¶ 113-115.

Defendants should not be permitted at trial to introduce two experts to provide the same testimony.  This would constitute prejudicial and needlessly cumulative testimony and would also amount to improper vouching of one expert for another.

### IV.    CONCLUSION

For the reasons above, Ms. Dwyer's opinions should be excluded as follows:

Improper Summary of Facts with No Attendant Opinion: Ex. A at ¶¶ 31-49 ("Sale of the Asserted Patents");

Economic Damages Opinions Outside of Expertise: Ex. A at ¶¶ 216-271, 279-301 (portions of "Cobblestone's Flawed Damages Analysis");

Baseless and Prejudicial Assertion of Royalty Stacking: Ex. A at ¶¶ 331-346 ("Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost");

Cumulative and Duplicative Opinions: Ex. A at ¶¶ 31-49 ("Sale of the Asserted Patents"), ¶¶ 216-271, 279-301 (portions of "Cobblestone's Flawed Damages Analysis"), ¶¶ 302-330 and associated Exhibits ("Ericsson's and Nokia's Leadership in Cellular Technology"), ¶¶ 331-346 ("Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost").


Dated: July 3, 2024                        Respectfully submitted,

                                           */s/ Reza Mirzaie*
                                           Marc Fenster

CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Jonathan Ma
CA State Bar No. 312773
Christian W. Conkle
CA State Bar No. 306374
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Qi (Peter) Tong
TX State Bar No. 24119042
RUSS AGUUST & KABAT
4925 Greenville Ave, Suite 200
Dallas, TX 75206
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,***
***Cobblestone Wireless, LLC***

12



### CERTIFICATE OF CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(h), I certify that counsel met and conferred telephonically on June 28, 2024 in a good faith effort to resolve all the issues addressed in this Motion to Strike but were unable to reach agreement.

/s/ Reza Mirzaie
Reza Mirzaie

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served through CM/ECF on July 3, 2024.

/s/ Reza Mirzaie
Reza Mirzaie