IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S MOTION TO EXCLUDE UNDER
*DAUBERT* AND STRIKE PORTIONS OF INVALIDITY OPINIONS OF
DR. DANIEL VAN DER WEIDE**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. LEGAL STANDARDS ........................................................................................................ 1

III. ARGUMENT ........................................................................................................................ 2

    A.  The Court should exclude under *Daubert* and strike Dr. van der Weide's new and belated claim construction theories that are unsupported by the intrinsic record. .......... 2

        1.  "Sub-optimal" does not require determining "something that's optimal." ............. 3

        2.  Dr. van der Weide's new interpretation of "frequency spectrum resource" should be excluded. ............................................................................................... 4

    B.  Dr. van der Weide's attempt to introduce new validity theories according to Cobblestone's infringement contentions should be excluded. ......................................... 5

    C.  Dr. van der Weide's reliance or copying of Mr. Bishop's improper analysis should be struck. ............................................................................................................................. 9

i

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ............................................................................................................. 1, 2

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ................................................................................................................ 1

*Kaist IP US LLC v. Samsung Elecs. Co.*,
 2:16-cv-1314, 2018 WL 2411772 (E.D. Tex. May 29, 2018) ................................................. 2

*Metaswitch Networks Ltd. v. Genband US LLC*,
 No. 2:14-cv-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ................................ 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
 521 F.3d 1351 (2008) .............................................................................................................. 2

**Rules**

Fed. R. Evid. 702 ........................................................................................................................ 1, 2

**I.     INTRODUCTION**

Dr. Daniel van der Weide, Defendants'[1] expert on invalidity and non-infringement, presents opinions that are (1) rooted in belated claim construction proposals that are inconsistent with and unsupported by the intrinsic record, or reassertions of prior indefiniteness arguments that the Court rejected in its Markman order; (2) outside the scope of his expert report; and (3) based on or repeating the unreliable public availability analysis of Mr. Craig Bishop. Plaintiff Cobblestone Wireless, LLC ("Cobblestone") respectfully requests that he be precluded from offering these categories of opinions at trial for the reasons detailed below. Each of these categories of unreliable opinions would do nothing but to inject irrelevant issues into the case, confusing the jury and bringing undue prejudice to Cobblestone.

**II.    LEGAL STANDARDS**

An expert is a person who has relevant "knowledge, skill, experience, training, or education" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. It is the Court's role to act as gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993).

In addition to the proffered expert possessing adequate qualifications and experience concerning the subject matter of his testimony, the expert's opinions must also be based on "more than subjective belief of unsupported speculation." *Id.* at 592. "An absence of information is not a license to speculate"; rather, expert opinions must be "supported by sufficient facts or data."

---

[1] References to Defendants also include the intervenors Nokia and Ericsson, who jointly submitted the invalidity report from Dr. van der Weide.

*Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016) (quotation marks omitted).

### III.  ARGUMENT

**A.  The Court should exclude under *Daubert* and strike Dr. van der Weide's new and belated claim construction theories that are unsupported by the intrinsic record.**

Dr. van der Weide offers numerous opinions in his rebuttal report that are nothing more than belated claim construction theories. To be clear, the opinions addressed in this brief are not fact-based arguments about what falls within the scope of the claim language, but are rather pure construction-based, legal arguments that cannot be permitted to go to a jury under controlling Federal Circuit law. *See, e.g.*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-63 (2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

Resolving each of these issues is straightforward here. Even setting aside these construction-based theories are being asserted for the first time long after that contemplated by the Scheduling Order, each is unsupported by the intrinsic record. The Court should thus exclude each of these opinions under Rule 702 and *Daubert* as unreliable and irrelevant to any issue in the case. *See, e.g.*, *Kaist IP US LLC v. Samsung Elecs. Co.*, 2:16-cv-1314, 2018 WL 2411772, at *1-2 (E.D. Tex. May 29, 2018) (excluding belated construction raised for the first time in a rebuttal report because it was inconsistent with the specification). The corresponding portions of Dr. van der Weide's report should also be stricken, as Cobblestone would be unduly prejudiced if Amazon could present these unsupportable, legal arguments to the jury. *See, e.g.*, *Maxell*, 2020 WL 8269548, at *21-23 (striking portions of expert reports that advanced new construction theories unsupported by the intrinsic record).

### 1. "Sub-optimal" does not require determining "something that's optimal."

During claim construction, Defendants unsuccessfully argued that the claim term "sub-optimal resource" of the '361 Patent was indefinite as a term of degree, because of the supposed lack of objective boundaries between "sub-optimal" and "not sub-optimal" resources. *See* Dkt. No. 110 at 26-27. As Plaintiff pointed out, the claims do not require any determination that a resource is "optimal" or not, but rather a determination that one resource is sub-optimal relative to one or more other resources, based on the quality status determination. *See* Dkt. No. 112 at 9-10. In rejecting Defendants' invalidity challenge, the Court observed that "the term simply means 'less than optimal' compared to the other resources. How much less is not important to determining infringement." Dkt. No. 131 at 25.

Dr. van der Weide rehashes this same issue. For example, at his deposition, he testified as follows:

> Well, the Court has construed the term "suboptimal resource," and I repeat the Court's preliminary construction in my paragraph 1098, where suboptimal resource is accorded with its plain and ordinary meaning.
>
> So, in my opinion, at least one of skill would understand that… in order to understand suboptimal, ***there has to be a comparison to something that's optimal*** so that there can be a determination. Not everything can be suboptimal without ***understanding what's optimal***. So in that sense… at least under my understanding of Cobblestone's infringement contentions, there would be a determination made perhaps in the scheduler about the configuration of one or more flexible subframes, and that would have to be made through some comparison operation.

Ex. A (van der Weide Deposition Transcript) at 133:1-16.

Dr. van der Weide's testimony appears to contradict the Court's claim construction order, and should be excluded on that ground. Alternatively, if the Court's previous order did not already resolve this dispute, Dr. van der Weide's claim construction should be rejected for the same reasons stated in Cobblestone's prior briefing. In particular: "The references to 'optimal' belie a

3

fundamental misunderstanding of the claim context… There is no such thing as an 'optimal' resource within the '361 patent's framework, and… the patent never requires a determination of sub-optimality in the abstract." Dkt. No. 108 at 30.

Accordingly, Cobblestone respectfully requests that Dr. van der Weide be precluded from offering any opinion based on his new interpretation of "sub-optimal."

### 2. Dr. van der Weide's new interpretation of "frequency spectrum resource" should be excluded.

While he argues in his expert report for the invalidity of the '361 based upon "subframes" being the claimed "frequency spectrum resources," Dr. van der Weide testified during his deposition that a subframe is not a "frequency spectrum resource," because it includes multiple "subcarriers" and—according to him—the examples of frequency spectrum resources in the '361 patent specification are each just a single subcarrier:

> Q. … In your opinion, are the accused bandwidth parts frequency spectrum resources as the term "frequency spectrum resource" is used in the '361 Patent claims?
>
> A. Well, I've already provided my opinion about frequency spectrum resources as I understand the '361 to discuss them… and I can point to other… parts of the '361 specification that teach that **these frequency spectrum resources are subcarriers**. For example, Column 5, starting around line 17…
>
> Bandwidth parts are much larger spans of the frequency spectrum and, thus, in my opinion, do not… meet the **fine-grained description of the frequency spectrum resources** that are described in the '361 Patent.[2]
>
> Q. … As you've applied the term "frequency spectrum resource" in the claims of the '361 Patent, a frequency spectrum resource has to be one, and only one, subcarrier, not multiple subcarriers, and that's because of examples given in the '361 Patent specification; is that correct? …
>
> [A.] I'm not importing limitations from the specification into the claims. However, I am informed, as one of skill in the art is informed by reading the specification, as

---

[2] The deposition transcript erroneously encloses this statement in quotation marks, based on the witness's suggestion that he was about to read into the record from the '361 Patent. But the testimony is not actually quoted from either the '361 Patent or Dr. van der Weide's report.

4

> to how it describes frequency spectrum resources, and it describes them at a very granular level….
>
> [Q] Are you going to appear at the trial in this case and… offer testimony that the bandwidth parts in the Accused Products are not frequency spectrum resources because they contain multiple subcarriers?
>
> A. I believe I provided that opinion in response to instant questions in this deposition. …

Ex. A at 165:19-167:23 (emphasis added); *see also id.* at 167:24-168:5.

No non-infringement opinion based upon such a narrow construction of the term "frequency spectrum resource" was presented in Dr. van der Weide's expert report. Ex. B (van der Weide rebuttal report regarding '361 Patent) ¶¶ 109-191. Under Court MIL No. 23 in the Court's Standing Order on Motions *in Limine* in patent cases, "[n]o expert witness may testify to expert opinions outside the established parameters of her/his expert report," and testimony on this new claim construction and non-infringement opinion should be excluded.

Moreover, a construction limiting a "frequency spectrum resource" to having just a single subcarrier is foreclosed by the asserted claims of the '361 patent itself. Claim 15 reads:

> 15.   The wireless base station of claim 10, wherein the first frequency spectrum resource includes multiple subcarriers and multiple resource elements associated with each of the multiple subcarriers.

Ex. C ('361 Patent). This claim expressly requires a frequency spectrum resource that "includes multiple subcarriers." To limit each frequency spectrum resource to having just a single subcarrier would make it impossible to satisfy claim 15. This is not a plausible interpretation of the claims.

**B.    Dr. van der Weide's attempt to introduce new validity theories according to Cobblestone's infringement contentions should be excluded.**

Presumably recognizing that his non-infringement report presented a new construction of the phrase term "frequency spectrum resource" that was entirely inconsistent with the opinion stated in his opening report on infringement, Dr. van der Weide attempted to introduce new and

5

undisclosed invalidity opinions during his deposition. In particular, he attempted to insert a new caveat that he does not actually agree with the conclusions in his own expert report, but rather only agrees with those conclusions *if Cobblestone prevails on infringement*. Even if Defendants are permitted to employ this tactic of bending the claims one way for invalidity and a different way for noninfringement, it is inarguable that an expert's opening report must actually disclose the expert's opinions. Dr. van der Weide's opening report clearly disclosed an opinion that the prior art actually meets the claim limitation, and he should not be permitted to present a different opinion at trial.

In Dr. van der Weide's invalidity report, he specifically distinguished between certain limitations that he believed were disclosed by the prior art under the correct interpretation of the claim terms, and other limitations that he believed were disclosed only according to Cobblestone's infringement contentions. For example, in the case of the '888 Patent, Dr. van der Weide clearly explained that although he did not believe that certain 3GPP standards met the limitations of the asserted claims, but that "to the extent Cobblestone can show infringement" using those same standards, in his opinion certain combinations of prior art also rendered the claims obvious. Ex. D (van der Weide Invalidity Report) ¶¶ 826, 892, 953. But in other places he did not include that same caveat, indicating that he actually believed the opinions stated in his report—consistent with his declaration under penalty of perjury that his opinions were true and correct. *Id.* at unnumbered signature page.

None of Dr. van der Weide's opinions regarding invalidity of the '361 Patent mentioned any reliance on Cobblestone's infringement contentions, or in any way implied that Dr. van der Weide did not truly believe that the prior art rendered the claims obvious under the correct claim interpretation. *See generally* Ex. D ¶¶ 1125-1372. As a result, Cobblestone and its rebuttal validity

6

expert reasonably understood that Dr. van der Weide would apply the same understanding of the claim terms on both non-infringement and validity.

However, for the first time at his deposition, Dr. van der Weide appeared to disavow the theories stated in his opening report, and instead state new opinions in which the prior art does *not* disclose the actual claim limitations. Furthermore, Dr. van der Weide appeared to rely on his own rebuttal non-infringement report as support for his validity theories. For example, both the '361 patent accused products and the prior art asserted against the '361 patent make use of "subframes" that each include multiple "subcarriers." Ex. D ¶ 1225 ("It was well known in the art at the time of the 361 Patent that multiple subcarriers are included in LTE subframes"). Although the van der Weide Report unambiguously states that "because Gaal discloses subframes including a plurality of resource blocks Gaal discloses the claimed first and second frequency resources," Ex. D ¶ 1137, at his deposition Dr. van der Weide testified for the first time that he did *not* believe Gaal's disclosure of subframes met this limitation, because only "subcarriers," not "subframes," can be frequency resources:

> Q. So is it your opinion, then, that under the correct understanding of the term "frequency spectrum resource" in the '361 Patent claims that the subframes in Gaal are not frequency spectrum resources?
>
> A. I think to clarify that, I want to refer to my noninfringement report.
>
> Q. I'm sorry, sir, does your noninfringement report talk about Gaal?
>
> A. No, but it does speak to my opinion on the proper understanding of frequency spectrum resources…. I'm setting forth my invalidity opinions, at least in part, based on my understanding of Cobblestone's infringement contentions. So *if Cobblestone is accusing subframes of being… the frequency spectrum resources of the '361 Patent, then I point to Gaal, saying Gaal has this already. But that does not mean that that is, in my opinion, how one of skill would understand the '361 frequency spectrum resources*….
>
> Q. So would it also be your opinion that *a subframe is not a frequency spectrum resource*?

7

> A. Singular?
>
> Q. Yes, sir.
>
> A. Well, in -- in view of what I just read into the record from Column 8 of the '361, where it refers to resources as subcarriers, then in my opinion, ***one of skill would understand that the singular resource would be a subcarrier***.

Ex. A at 136:13-139:16 (emphasis added); *see also id.* at 139:17-140:3.

And Dr. van der Weide further confirmed that he rejects his own signed, unqualified opinion that Gaal's subframes are frequency spectrum resources:

> [T]o the extent that Cobblestone's infringement contentions encompass the prior art such as Gaal, then I'm going to opine that Gaal has these frequency spectrum resources, such as this flexible subframe, that can be understood by one of skill in the art as being suboptimal relative to a flex[] subframe. But that doesn't mean that I agree that that's the proper understanding of what the scope of that claim term is. It's under Cobblestone's infringement theory.

*Id.* at 148:19-149:2; *see also id.* at 147:11-148:18.

If Dr. van der Weide had wanted to present only a contingent theory of invalidity predicated on Cobblestone's infringement contentions, he could and should have disclosed that theory in his opening report on invalidity. Instead, he gave Cobblestone and its rebuttal validity expert an entirely misleading impression of his opinions.

Consistent with Judge Gilstrap's Standard Court MIL No. 23, Cobblestone respectfully requests that the Court preclude Dr. van der Weide from presenting any opinion that prior art renders obvious any patent "under Cobblestone's infringement contentions," or otherwise according to a claim construction that Dr. van der Weide does not actually support, except as expressly disclosed in Dr. van der Weide's opening report on invalidity.

8

### C. Dr. van der Weide's reliance or copying of Mr. Bishop's improper analysis should be struck.

Cobblestone moves under separate cover to strike the Declaration of Craig Bishop in its entirety. If the Bishop motion is granted in full or in part, the corresponding parts of Dr. van der Weide's report should also be struck because he relies on unreliable and struck evidence.

Dr. van der Weide relies exclusively on Mr. Bishop's opinions, methodology, and conclusions as the basis for his own opinions about public availability of certain prior art. *E.g.*, Ex. D (van der Weide invalidity report) ¶¶ 715-718, 729-731, 1115-20. In paragraphs 729-731 and 1115-20, Dr. van der Weide relies extensively on (and effectively copies) Mr. Bishop's opinion about the public availability of two 3GPP documents. Paragraphs 715-718 similarly extensively rely on and parrot Mr. Bishop's declaration, but Dr. van der Weide also uses "the same principles described in Mr. Bishop's declaration" to determine the purported public availability of a reference not addressed by Mr. Bishop. Because Mr. Bishop's opinions are unqualified expert opinions that should be struck, Dr. van der Weide's repetition of and reliance on those opinions should also be struck. Dr. van der Weide does not claim to have any expertise in determining the public availability of 3GPP documents and instead relies exclusively on Mr. Bishop's opinions in his report. Ex. D at ¶¶ 715 ("The public availability of TS 36.300 v10.3.0 3GPP TS 36.300 v10.3.0 ("TS 36.300 v10.3.0")[3] (JD-COBB_00043079) is described in the Declaration of Craig Bishop, dated May 17, 2024."), 729 ("As explained in Mr. Bishop's declaration, I understand that TS 23.401 was publicly available as of March 28, 2021."), 1115 ("As supported by the Declaration of Craig Bishop, TS 36.211 was publicly available by June 16, 2014."). Accordingly, if Mr. Bishop's

---

[3] It is Cobblestone's understanding that Defendants and Intervenors are no longer pursuing any invalidity ground based on this specific document due to an *inter partes* review-related stipulation, but for sake of completeness, include it here.

9

expert opinions are struck, so should the opinions of Mr. van der Weide regarding public availability.

Defendants and Intervenors may argue that Dr. van der Weide does not rely exclusively on Mr. Bishop and can give his own independent testimony regarding his own use of the 3GPP website. But Dr. van der Weide does not have any expertise in determining the public availability of 3GPP's documents. All his testimony would show is that 3GPP's website currently reflects certain dates. He does not have sufficient expertise or personal knowledge to determine whether the dates are accurate or reflect when the references were purportedly publicly available. Dr. van der Weide relies on Mr. Bishop to make this conclusion. Dr. van der Weide could potentially have engaged in a different investigation, such as by speaking with knowledgeable people at 3GPP, but he did not do so. Having chosen to rely exclusively on Mr. Bishop for the public availability of certain 3GPPP documents, if his declaration is struck, so should Dr. van der Weide's opinions on these points be struck.

With respect to Mr. Bishop's factual testimony regarding 3GPP and 3GPP standardization procedures, Dr. van der Weide again relies exclusively on Mr. Bishop for these aspects of his report. Ex. D) at ¶¶ 43-47. Dr. van der Weide's only disclosed experience with 3GPP or its standards is previous written testimony in an international arbitration. *Id.* at ¶ 12. Because Dr. van der Weide lacks expertise and personal knowledge related to 3GPP and its standardization procedures, if Dr. Bishop's declaration is struck, these paragraphs of Dr. van der Weide's report should also be struck.

Dated: July 3, 2024                                   Respectfully submitted,

                                                      */s/ Reza Mirzaie*

                                                      Marc Fenster
                                                      CA State Bar No. 181067

10

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
Qi Tong
TX State Bar No. 330347
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,
Cobblestone Wireless, LLC***

11

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Plaintiff hereby files its Certificate of Authorization to File its Motion to Strike Under Seal per Local Rule CV-5(a)(7)(A)-(B). The undersigned counsel for Plaintiff hereby certifies that the Court has already granted authorization to seal the document as set forth in Paragraph 19 of the Protective Order entered in this action at Dkt. No. 77.

*/s/ Christian W. Conkle*
Christian W. Conkle

### CERTIFICATE OF CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(h), I certify that counsel for Cobblestone met and conferred telephonically on June 28, 2024 in a good faith effort to resolve all the issues addressed in this Motion but were unable to reach agreement.

*/s/ Christian W. Conkle*
Christian W. Conkle

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served on all counsel of record via the Court's CM/ECF system on July 3, 2024.

*/s/ Christian W. Conkle*
Christian W. Conkle
