**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:22-cv-00477-JRG-RSP |
| T-MOBILE USA, INC. | § | (Lead Case) |
| *Defendant*, | § | |
| | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors*. | § | |

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:22-cv-00474-JRG-RSP |
| AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP., | § | (Member Case) |
| *Defendants*, | § | |
| | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors*. | § | |

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:22-cv-00478-JRG-RSP |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | § | (Member Case) |
| *Defendant*, | § | |
| | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors*. | § | |

**DEFENDANTS' AND INTERVENORS' MOTION TO EXCLUDE
THE EXPERT OPINIONS AND TESTIMONY OF STEPHEN E. DELL
UNDER FED. R. EVID. 702 AND *DAUBERT***

███████████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND ...................................................................................................1

    A.      Step One: Dell Derives A Per-Patent Family Device Rate For ████████
        ████ ....................................................................................................2

    B.      Step Two: Dell Applies The Device Rate He Derived To Service Revenue
        Of The Carriers, Without Apportionment.................................................3

III.    LEGAL STANDARDS ........................................................................................4

    A.      Rule 702 Standard For Admissibility Of Expert Opinions.....................4

    B.      Apportionment And Entire Market Value Rule .......................................5

IV.     ARGUMENTS AND AUTHORITIES.................................................................6

    A.      Dell Switches Royalty Bases Without Justification, Eviscerating Any
        Comparability Of The Licenses He Relied On ........................................6

    B.      Dell Uses The Entire Market Value Rule Without Any Predicate That The
        Patented Feature Are The Key Drivers Of Customer Demand................9

    C.      Dell Wholly Fails To Apportion .............................................................11

    D.      Dell's Opinion Is Completely Divorced From Arms-Length Market
        Valuations ...............................................................................................13

    E.      Dell's Use Of A 3% to 5% "Rule Of Thumb" Is Untethered To The Facts..........14

V.      CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Boyer v. City of Simi Valley,*
  No. 2:19-CV-00560-DSF, 2024 WL 993316 (C.D. Cal. Feb. 13, 2024)...................5

*Cal. Inst. of Tech. v. Broadcom Ltd.,*
  25 F.4th 976 (Fed. Cir. 2022) .........................................................7, 8, 9

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579 (1993)...............................................................................3, 4

*Ericsson, Inc. v. D-Link Sys., Inc.,*
  773 F.3d 1201 (Fed. Cir. 2014)..............................................6, 9, 11, 13

*Exafer Ltd. v. Microsoft Corp.,*
  No. 1:20-CV-131-RP, 2024 WL 1087374 (W.D. Tex. Mar. 7, 2024)....................5

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC,*
  879 F.3d 1332 (Fed. Cir. 2018) ........................................................6

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
  879 F.3d 1299 (Fed. Cir. 2018)..........................................................11

*Garretson v. Clark,*
  111 U.S. 120 (1884)..........................................................................5, 13

*Johnson v. Packaging Corp. of Am.,*
  No. CV 18-613-SDD-EWD, 2023 WL 8649814 (M.D. La. Dec. 14, 2023)...........4

*LaserDynamics, Inc. v. Quanta Comput., Inc.,*
  694 F.3d 51 (Fed. Cir. 2012)........................................................5, 8, 9, 10

*Lucent Techs., Inc. v. Gateway, Inc.,*
  580 F.3d 1301 (Fed. Cir. 2009).......................................................5, 6, 13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
  904 F.3d 965 (Fed. Cir. 2018)........................................................10, 13

*Stickle v. Heublein, Inc.,*
  716 F.2d 1550 (Fed. Cir. 1983)...........................................................6

*TWM Mfg. Co. v. Dura Corp.,*
  789 F.2d 895 (Fed. Cir. 1986).............................................................5

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011)..................................................... *passim*

███████████████████████

*Vectura Ltd. v. Glaxosmithkline LLC,*
    981 F.3d 1030 (Fed. Cir. 2020)........................................................................................11

*VirnetX, Inc. v. Cisco Sys., Inc.,*
    767 F.3d 1308 (Fed. Cir. 2014)......................................................................................5, 13

**OTHER AUTHORITIES**

Prop. Ams. to the Fed. R. Evid. 344 F.R.D. 850 (2023)..................................................................4

**Note:**

All quoted emphasis is added unless otherwise noted

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | 2024-05-24 Expert Report of Stephen E. Dell (Cobblestone v AT&T) |
| B | Rebuttal Expert Report of Melissa A. Bennis with Exhibits (AT&T) |
| C | Rebuttal Expert Report of Melissa A. Bennis with Exhibits (T-Mobile) |
| D | Rebuttal Expert Report of Melissa A. Bennis with Exhibits (Verizon) |
| E | 2024-05-24 Expert Report of Stephen E. Dell (Cobblestone v. Verizon) |
| F | June 21, 2024 - Errata and Supplement to Dell Expert Report - Cobblestone v. AT&T |
| G | June 21, 2024 - Errata and Supplement to Dell Expert Report - Cobblestone v. Verizon |
| H | June 21, 2024 - Errata and Supplement to Dell Expert Report - Cobblestone v. T-Mobile |
| I | Deposition of Stephen E. Dell (June 25, 2024) |
| J | 2204-05-24 Expert Report of Stephen E. Dell - (Cobblestone v. T-Mobile) |
| K | Deposition of Jay Chung (May 9, 2024) |
| L | Deposition of Elizabeth Rudersdorf (May 29, 2024) |
| M | Exhibit 10 to Deposition of Stephen E. Dell (June 25, 2024) |
| N | 2024-06-14 Technical Comparability Expert Report of Johanna Dwyer |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '347 Patent | U.S. Patent No. 8,891,347 |
| '361 Patent | U.S. Patent No. 10,368,361 |
| '888 Patent | U.S. Patent No. 9,094,888 |
| Accused Functionalities | Beamforming, Handover, and Bandwidth Parts |
| ARPU | Average Revenue Per User |
| AT&T | AT&T Services, Inc., AT&T Corp., and AT&T Mobility LLC |
| Carrier Defendants | AT&T, T-Mobile, and Verizon |
| EMVR | Entire Market Value Rule |
| Intervenors | Ericsson Inc. and Nokia of America Corporation |
| Patents-in-Suit | '361, '347, and '888 Patents |
| T-Mobile | T-Mobile USA, Inc. |
| Verizon | Cellco Partnership d/b/a Verizon Wireless |

███████████████████████████████

## I.      INTRODUCTION

Defendants move to exclude the testimony of Cobblestone's damages expert, Dr. Stephen E. Dell because it violates controlling Federal Circuit precedent and exponentially inflates damages. Dell's methodological violations result in Cobblestone seeking over ██████████ for infringement of just three patents.

In patent licensing, the royalty rate and the royalty base go hand-in-hand. In this case, Dell derives a royalty rate based on the ████████████████████████████████ ████████. Dell violates Federal Circuit precedent when, after deriving ████████████████ ████████, Dell arbitrarily applies that rate to the *overall subscriber revenue* of AT&T, Verizon, and T-Mobile.

This switch in base, which increases damages more than 100-fold, violates multiple Federal Circuit requirements for damages, including the entire market value rule, the requirement to apportion, and proper application of comparable licenses. Neither Dell not any other witness ever asserts that the patented features are key drivers of customer demand or makes any effort to apportion either the royalty base or rate to account for the incremental value of the Patents-in-Suit. As a result, Dell's resulting damages figure overinflates Cobblestone's claimed damages.

Recent revisions to clarify Rule 702 require the Court, as gatekeeper, to exclude opinions when they reflect an unreliable application of economic principles. Defendants and Intervenors respectfully request that the Court do precisely that and exclude Dell's damages testimony.

## II.     BACKGROUND

Cobblestone asserts three radio access patents against the Carrier Defendants. Cobblestone alleges that the Patents-in-Suit relate to purported minor improvements of certain features of 5G communication related to beamforming, handover, and bandwidth parts. Cobblestone's damages

███████████████████████████████████

expert opined as to damages for alleged infringement of the Patents-in-Suit. His methodology is

summarized below.

    **A.    Step One: Dell Derives A Per-Patent Family Device Rate For** ███████

███████

████████████████████████████████████ So, for purposes of

damages in this case, Dell relied on ████████████████████████████████████

a proxy for comparable licenses to the Cobblestone Patents-in-Suit.[1] *See* generally Ex. A (Dell

AT&T Rpt.); Ex. F (Dell AT&T Errata and Supplement).

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████

██████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

[1] ████████████████████████████████████

[2] While this motion cites primarily to Dell's AT&T Report for convenience, his methodological errors appear in his report for each Carrier Defendant.

███████████████████████

███████████████████████████████████████████

*E.g.*, Ex. B (Bennis AT&T Rpt.) at ¶ 77.

After calculating a portfolio-wide rate covering hundreds of patent families, Dell derived a per-patent-family rate so he could apply the findings to the three patents families in suit for which damages are claimed. █████████████████████

████████████████████████ *Id.* at ¶ 380. Without performing any technical analysis, he assumed that only "3% to 5%" of ████████████████ were "actually essential" to the 5G Standard. *Id.* Relying on these assumed rates, Dell calculates ████████

███████████████ *Id.* at ¶381.

Although Dell uses a number of incorrect inputs and makes skewed assumptions in this part of his analysis, those mistakes are not the subject of this *Daubert* motion. Defendants will reserve most of those points for cross examination at trial. This motion primarily focuses on a larger flaw which is discussed next: applying the derived rate to a completely different, and drastically higher, royalty base.

**B.    Step Two: Dell Applies The Device Rate He Derived To Service Revenue Of The Carriers, Without Apportionment**

Had Dell merely applied his derived ██████████████████████████

██████████████████████████████████████ it would have resulted in damages substantially less than his actual calculations. *See, e.g.*, Ex. B (Bennis AT&T Rpt.) at ¶82 (███████████████████████████████████

███████████████); Ex. C (Bennis T-Mobile Rpt.) at ¶86; Ex. D (Bennis Verizon Rpt.) at ¶83. These numbers, in the range of ███████████ per carrier, are still many times more than the █████ Cobblestone paid on the open market to buy the Patents-in-Suit. But they are orders of magnitude less than Dell's final damages opinions.

███████████████████████████████

To increase claimed damages, after calculating ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████. *E.g.,* Ex. A (Dell AT&T

Rpt.) at ¶ 68. As a result, Dell calculates damages of ████████ across the three carriers for 2-3

patents[3] that were purchased for less than ████████ and whose market value, as reflected by

comparable licenses, is at most ████████████████:

| Carrier | Dell's Damages Calculation |
|---------|----------------------------|
| AT&T    | ████████ |
| Verizon | ████████ |
| T-Mobile | ████████ |
| **Total** | ████████ |

*See* Ex. F (Dell AT&T Errata and Supplement) at Fig. 1; Ex. G (Dell T-Mobile Errata and

Supplement) at Figs. 1, 2; Ex. H (Dell Verizon Errata and Supplement) at Fig. 1.

## III.   LEGAL STANDARDS

### A.   Rule 702 Standard For Admissibility Of Expert Opinions

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the

Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In 2023,

Rule 702 was amended to clarify and fix an "an incorrect application of Rules 702 and 104(a)"

where courts would hold that "the application of the expert's methodology[] are questions of

weight and not admissibility." Prop. Ams. To the Fed. R. Evid, 344 F.R.D. 850, 857 (2023). That

amendment was made effective on December 1, 2023 and "shall govern … insofar as just and

practicable, all proceedings then pending." *Id.* at 851.

---

[3] ████████████████████████████████████████████
████████████████████████████████████

"The intent of the rule change is to focus and direct district courts to conduct the gate-keeping inquiry enunciated in *Daubert* and refrain from bypassing the admissibility determination in favor of a question of weight to be decided by a fact finder." *Johnson v. Packaging Corp. of Am.*, No. CV 18-613-SDD-EWD, 2023 WL 8649814, at *2 (M.D. La. Dec. 14, 2023). Under the amended rule, "The Court is required to analyze the expert's data and methodology at the admissibility stage more critically than in the past." *Boyer v. City of Simi Valley*, No. 2:19-CV-00560-DSF (JPRx), 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024). As a result, this Court is obligated to ensure not only that Dell followed the methodology required by the Federal Circuit, such as *Georgia-Pacific* and apportionment requirements, but also that Dell's ultimate opinions are the result of a reliable application of that analysis. *Exafer Ltd. v. Microsoft Corp.*, No. 1:20-CV-131-RP, 2024 WL 1087374, at *1 (W.D. Tex. Mar. 7, 2024) (explaining that under the amendment an "expert opinion must reflect a reliable application of the expert's methodology").

### B.   Apportionment And Entire Market Value Rule

The Supreme Court and Federal Circuit also require apportionment: "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Stated differently, a plaintiff must "carefully tie proof of damages to the claimed invention's footprint in the market place." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)); *see also VirnetX*, 767 F.3d at 1326 ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features.").

Although "[t]he entire market value rule is a narrow exception to this general rule" of apportionment, *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012), it

███████████████████████████████████

only applies when the feature patented constitutes the basis for customer demand." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (quoting *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986)).

## IV.    ARGUMENTS AND AUTHORITIES

Dell has numerous fundamental flaws in his damages model. *First,* despite the fact that in any license, the rate and base are negotiated in tandem to reflect the value of patents, Dell discards the actual royalty bases ████████████████████████ and applies the percentage to a royalty base ████████████████████████████████[4] *Second,* he applies a rate to the entire market value of carrier services without even trying to assert that the patented features are the key drivers of customer demand, violating the EMVR. *Third,* he fails to apportion the features in the Patents-in-Suit from the many other features in the carrier networks. *Fourth,* he calculates damages at ████████████ what Cobblestone paid on the open market to buy the patents. *Fifth,* he uses an unreliable "rule of thumb" to derive a per-patent rate. These errors dramatically inflate Cobblestone's claimed damages by several orders of magnitude and violates the "essential requirement" of patent damages law "that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).

### A.    Dell Switches Royalty Bases Without Justification, Eviscerating Any Comparability Of The Licenses He Relied On

In any license agreement, royalty rate and royalty base go hand-in-hand to define the value of the patents being licensed. *Lucent Techs., Inc.*, 580 F.3d at 1339 ("all running royalties have at

---

[4] ████████████████████████████████████████████
████████████████████████████████████

■

least two variables: the royalty base and the royalty rate"). The amount of the royalty (rate times base) cannot depend on whether the defendant is the manufacturer of the accused device or the defendant is the end user of that device. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) (holding that where a patent holder chose to sue a user of taco-shell frying equipment, the appropriate royalty could not be calculated per taco shell produced because the licensing evidence showed the royalty would have been calculated as a percentage of the cost of the taco-shell frying equipment); *Cal. Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 994 (Fed. Cir. 2022) ("in the absence of a compelling showing otherwise, a higher royalty is not available for the same device at a different point in the supply chain"). Rather, it depends on "what royalty reasonably would have resulted from negotiations where a willing licensor was aware that [the manufacturer] would make and [the user] would use the [infringing product]." *Id*. This was true even where, like here, the plaintiff sued only the user of the accused equipment and not the manufacturer. *Id*.

To generate a large damages ask, Dell analyzed █████████████████████████

████████████████████████████████████████████████████████████████████████

████████████ then migrated that percentage rate to carrier user revenue that is orders of magnitude greater. When Dell switched royalty bases, he changed the entire context of the license in such a way that it broke the linkage between rate and base. When he swapped to a different royalty base, the licenses Dell relied on, to the extent they were ever comparable, ceased to be comparable. *See generally*, Ex. B (Bennis AT&T Rpt.); Ex. N (Dwyer Rpt.). It was nothing more than an arbitrary switch.

Last year the Federal Circuit reversed a similar damages methodology in *California Institute of Technology v. Broadcom Ltd.*. There the plaintiff's expert opined that Broadcom would have paid one royalty rate on Broadcom chips and that Broadcom's license would have covered

███████████████████████████

Apple devices incorporating those chips. The expert then opined Apple would have paid a higher royalty for its devices incorporating non-Broadcom chips because Apple is a downstream infringer deriving more revenue from those chips. The Federal Circuit held that was improper:

> In the absence of some evidence that companies in the positions of Broadcom and Apple would engage in such separate negotiations and in the absence of additional facts that might justify separate and different treatment of the same chips at different levels of the supply chain, the mere fact that Broadcom and Apple are separate infringers alone does not support treating the same chips differently at different stages in the supply chain and does not justify submitting such a two-tier damage theory to the jury.

25 F.4th at 993–94. "It is generally recognized that in the usual case, '*a direct infringer or someone who induced infringement should pay the same reasonable royalty*[.]'" *Id.* at 994 (quoting *LaserDynamics, Inc.*, 694 F.3d at 76).

Dell makes the same mistake. He opines that the Carrier Defendants would pay a far higher royalty for using Intervenors' base station products than Intervenors would pay if they licensed Cobblestone's Patents-in-Suit. Ex. A (Dell AT&T Rpt.) at ¶380 (█████████████████████

████████████████████████████████████████████████).

Under Dell's damages model, Cobblestone's infringement claim is based on the Carrier Defendants' use of Intervenors' base station products. For each of the three Patents-in-Suit, Cobblestone asserts claims against base stations in the Carrier Defendants' networks. *E.g.*, Ex. B (Bennis AT&T Rpt.) at ¶¶ 138, 258.

In rendering this opinion, Dell runs directly afoul of *Broadcom*. The Federal Circuit explicitly prohibits different treatment of the same products at different levels of the supply chain. 25 F.4th at 993 ("[I]n the absence of additional facts that might justify separate and different treatment of the same chips at different levels of the supply chain, the mere fact that Broadcom and Apple are separate infringers alone does not support treating the same chips differently at different stages in the supply chain[.]").

████████████████████████████

Dell identifies no evidence the carriers have ever paid per-patent rates approaching

███████████████████████████████████████████████. In fact, there is no

evidence that the carriers have ever paid any patent royalties calculated as a percentage of cellular

service revenue. *E.g.*, Ex. B (Bennis AT&T Rpt.) at ¶ 77. Without this evidence, Dell violates

black-letter law prohibiting disparate royalties solely based on the level of the supply chain. *Id.*;

*LaserDynamics, Inc.*, 694 F.3d at 76; *D-Link Sys., Inc.*, 773 F.3d at 1226.

### B. Dell Uses The Entire Market Value Rule Without Any Predicate That The Patented Feature Are The Key Drivers Of Customer Demand

Dell attempts to utilize the entirety of the Carrier Defendants' subscriber revenue as his

royalty base, in violation of the entire market value rule. In *Uniloc*, the Federal Circuit forbid this

approach because it cannot help but to "skew the damages horizon for the jury." 632 F.3d at 1320

("The disclosure that a company has made $19 billion dollars in revenue from an infringing

product cannot help but *skew the damages horizon* for the jury, regardless of the contribution of

the patented component to this revenue."); *see also LaserDynamics, Inc.*, 694 F.3d at 67

("Admission of such overall revenues … only serve to make a patentee's proffered damages

amount appear modest by comparison, and to *artificially inflate* the jury's damages calculation").

Here, Dell proposes going much further than the Federal Circuit forbade in *Uniloc* and *Laser*

*Dynamics* — between the three Carrier Defendants, he intends to tell the jury that the royalty base

totals nearly ██████. *See* Ex. F (Dell AT&T Errata and Supplement) at Corrected Attachment

8.5; Ex. J (Dell T-Mobile Rpt.) at Attachment 5.1; Ex. E (Dell Verizon Rpt.) at Attachment 6.4.

While Dell then applies a royalty rate that Cobblestone will try to portray as small, that

does not save his methodology. *LaserDynamics, Inc.*, 694 F.3d at 67 ("Importantly, the

requirement to prove that the patented feature drives demand for the entire product may not be

avoided by the use of a very small royalty rate"); *Uniloc*, 632 F.3d at 1320 ("The Supreme Court

and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate"). Cobblestone clearly wants to bandy large carrier revenue numbers before the jury in the hopes the requested damages will seem more reasonable, which is impermissible. In *Uniloc*, the Federal Circuit reversed a damages award based on a similar tactic:

> Q. Under your theory, Microsoft brings in billions in revenue and sales from the sales of the infringing product, to wit, approximately 20, correct?
>
> A. The entire market value of those products, that's correct.
>
> Q. And at the end of the day, the infringer, Microsoft, who violated the patent law, they get to keep 99.9999% of the box and the inventor, whose patent they infringed, he gets the privilege of keeping .00003%?
>
> A. When expressed as the entire market value of the products, that's correct.
>
> Q. And that's reasonable to you?
>
> A. Yes

*Uniloc*, 632 F.3d at 1320–21. The Federal Circuit held that this argument was improper: "This is in clear derogation of the entire market value rule, because the entire market value of the accused products has not been shown to be derived from the patented contribution." *Id.* at 1321. Yet this tactic is at the heart of Dell's damages model.

Dell presents no evidence to support the use of the EMVR. *E.g.*, Ex. B (Bennis AT&T Rpt.) at ¶¶ 73, 137. As the Federal Circuit has repeatedly explained, "the entire market value rule is appropriate only when the patented feature is the ***sole driver*** of customer demand or substantially creates the value of the component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018). Evidence that the "patented feature is viewed as essential, that a product would not be commercially viable without the patented feature, or that consumers would not purchase the product without the patented feature" is not sufficient to support

invoking the EMVR. *Id.*; *LaserDynamics, Inc.*, 694 F.3d at 68 (same). Dell does not even get close to presenting the type of evidence held ***insufficient*** in *LaserDynamics* and *Power Integrations*. Undeterred by his failure to present *any evidence* supporting applying the entire market value rule, Dell looks to the entire subscriber revenue from the Carrier Defendants. Dell's opinions referencing these revenue numbers should be excluded.

### C.   Dell Wholly Fails To Apportion

The Federal Circuit has made clear that "the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. [The patentee] must separate its results distinctly from those of the other parts . . . In other words, the patent holder should only be compensated for the approximate incremental benefit derived from his invention." *D-Link, Sys., Inc.,* 773 F.3d at 1233. The Federal Circuit held that "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1309 (Fed. Cir. 2018).

In this case, Dell has made no effort to apportion.[5] Dell was required to apportion in two regards: (1) the portion of the value of the carrier networks that is attributable to wireless access, and then, (2) the portion of wireless access that is attributable to the features covered by the claims of the Patents-in-Suit. Dell did neither.

*Value of carrier networks attributable to wireless access.* The carriers in these cases have spent decades building out their current networks. *E.g.,* Ex. B (Bennis AT&T Rept.) at ¶¶ 24–25; Ex. C (Bennis Verizon Rpt.) at ¶¶24–26; Ex. D (Bennis T-Mobile Rpt.) at ¶¶ 24–26. The vast majority of those networks are core equipment – the optical routers, switches, gateways, fibers,

---

[5] Dell's failure to apportion cannot be saved through any alleged "built-in" apportionment because Dell changed the royalty base from the purportedly comparable licenses. *See Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1041 (Fed. Cir. 2020) (explaining that "built-in" apportionment requires adopting both "the comparable license's royalty rate *and* royalty base").

etc. – that move voice and data traffic from one side of the country to the other. The Patents-in-Suit have no applicability to the core network. Ex. B (Bennis AT&T Rpt.) at ¶258. What is accused is wireless access – the radio connection between a phone and the base station – which is the last connection at the endpoint where a phone connects to the base station.



https://www.youtube.com/watch?app=desktop&v=Nf5I6U_mhAI.

In applying his derived royalty to revenues from sale of the carrier networks, Dell never apportioned core versus wireless access. *E.g.*, Ex. B (Bennis AT&T Rpt.) at ¶138. He implicitly assumed that the entire value of the carrier networks was due to wireless access. That assumption is wrong. When a cell phone user on the East Coast makes a call to a location on the West Coast, the cellular connection spans the first mile of that distance. After the phone connects to the base station, the call is then carried across the remaining United States over the switched telephone network (the core network), which Cobblestone's Patents-in-Suit do not cover. Ex. B (Bennis AT&T Rpt.) at ¶258 ("According to Dr. van der Weide, the Asserted Patents generally relate to the physical layer of wireless communication networks, with the physical layer being how the base stations and user equipment are connected.").

In addition, Dell's royalty base also includes features beyond those associated with base wireless service such as "Hulu, Apple TV+, and Netflix™" along with other perks such as international roaming and customer service. *E.g.*, Ex. C (Bennis T-Mobile Rpt.) at ¶107. Dell also failed to apportion out this value, which has no relation to Cobblestone's patents. His opinions should be excluded due to this failure to apportion.

*Portion of wireless access attributable to the Patents-in-Suit.* After apportioning the network between core network and wireless access (which Dell failed to do), Dell was further required to apportion the features of the Patents-in-Suit within the overall wireless access network. *E.g.*, *Power Integrations, Inc.* 904 F.3d at 977 ("In accordance with *Garretson*, we have required that royalties be apportioned between the infringing and non-infringing features of the product"). The accused features within Ericsson and Nokia base stations are a few of literally thousands of discrete features. Ex. B (Bennis AT&T Rpt.) at ¶73 ("the specific features in the patents-in-suit," are simply few of "several of thousands of features in base stations and in the cellular network."). Dell has made no effort whatsoever to apportion the value the accused features have as compared to the other thousands of features. *Id*. This failure violates the apportionment requirement the Supreme Court and Federal Circuit have consistently reiterated in *Garretson, Lucent, Uniloc, D-Link*, and *VirnetX* and independently requires exclusion. *See VirnetX*, 767 F.3d at 1329 ("In calculating the royalty base, [Dell] did not even try to link demand for the accused device to the patented feature, and failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products," because Dell failed to do so "his testimony on the royalty base under this approach [is] inadmissible and should [be] excluded.").

### D.   Dell's Opinion Is Completely Divorced From Arms-Length Market Valuations

Dell completely ignores the value Cobblestone *actually paid* to acquire the Patents-in-Suit, despite being an arms-length, market agreement related to the Patents-in-Suit. Ex. B (Bennis

██████████████████████████████

AT&T Rept.) at ¶¶141-147; Ex. N (Dwyer Rept.) at ¶¶ 31-49. "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). In other words, the goal is to accurately reflect the real-world bargaining that occurs, something Dell refused to consider.

In 2022, Cobblestone acquired the Patents-in-Suit, ██████████████████████. Ex. A (Dell AT&T Rpt.) at ¶34. Both Cobblestone and ████████████████ were represented in their negotiations by sophisticated and experienced negotiators. *See* Ex. K (Chung Depo.) at 10:16-14:21 (describing Mr. Chung's extensive experience as a patent litigator); Ex. L (Rudersdorf Depo.) at 11:16-17:8 (describing Ms. Ruderdorf's extensive experience as an attorney relating to "patent monetization"); Ex. N (Dwyer Rept.) at ¶¶ 31-49.

Since acquiring the Patents-in-Suit, Cobblestone has added no value to them. *See* Ex. K (Chung Depo.) at 47:14-19 (failing to identify anything "Cobblestone Wireless contributed to the patent portfolio" to increase the Patents-in-Suit's value). However, despite adding nothing to a portfolio of patents it *acquired* for only ████████, Cobblestone now asserts that a negotiation for a *non-exclusive license* to subset of that portfolio would result in an agreement by the Carrier Defendants to pay more than ████████. While the amount paid for a patent does not necessarily represent a cap on its value, here, this disparity between purchase price and damages evidences the clear methodological flaws Dell applied to arrive at his bloated opinion. By relying on carrier revenue, Dell applies a royalty model which skyrockets the damages for infringement of the Patents-in-Suit to more than ████████ what Cobblestone paid for them for less than two years ago.

### E.    Dell's Use Of A 3% to 5% "Rule Of Thumb" Is Untethered To The Facts

To come up with a per-patent rate, Dell relies upon a claim that only "3% to 5% of declared essential patents are *actually* essential to the cellular standard." Ex. A (Dell AT&T Rpt.) at ¶380

(emphasis original). The "3 to 5 percent number comes from … an article uploaded by an individual named Terry Ludlow." Ex. I (Dell Depo.) at 97:17-97:21. In Ludlow's article, he claims that "[a] *general rule of thumb* is that 3% - 5% of patents in a large portfolio are 'valuable.'" Ex. M (Dell Depo. Ex. 10) at 2. Not only is there no correlation between a patent's purported "value" and whether it is "actually essential," Ex. N (Dwyer Rpt.) at ¶¶ 279-97, but like the 25% rule of thumb the Federal Circuit rejected in *Uniloc*, the 3% to 5% rule of thumb is "fundamentally flawed" because it is in no way tied "to the facts of the case at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).

Worse still, unlike the 25% rule of thumb from *Uniloc*, which was "based on … observations of commercial licenses" and purportedly "confirmed by a careful examination of years of licensing and profit data," *Uniloc*, 632 F.3d at 1313, "the 'rule of thumb' set forth in Ludlow's article is not based on *any analysis or data. See* Ex. M (Dell Depo. Ex. 10); Ex. I (Dell Depo.) at 105:1-4. Nor is its author, Ludlow, "an experienced licensing individual" working at a company "involved in patent licensing" as Dell claims. *Id.* at 102:2-23. Instead, Ludlow is an engineer focused on "semiconductor reverse engineering" for Chipworks which offers "semiconductor and microelectronics system reverse engineering services." Ex. M (Dell Depo. Ex. 10) at 10. In essence, Dell took an unsupported statement from an unqualified individual and turned it into a "rule" that *dramatically* impacted his damages analysis. Dell's reliance on Ludlow's 3% to 5% "rule of thumb" is unreliable, untethered from the facts of the case, and should be excluded under *Uniloc*.

## V.    CONCLUSION

For the foregoing reasons, Defendants and Intervenors respectfully request that the Court exclude Dell's damages model.

Respectfully submitted: July 3, 2024

/s/ David S. Frist
David S. Frist
 David.Frist@alston.com
John Daniel Haynes
 John.Haynes@alston.com
Emily Welch
 Emily.Welch@alston.com
Michael Clayton Deane
 Michael.Deane@alston.com
Sloane Sueanne Kyrazis
 Sloane.Kyrazis@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
404-881-7000
Fax: 404-881-7777

Ross Ritter Barton
 Ross.Barton@alston.com
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
704-444-1287
Fax: 704-444-1111

Theodore Stevenson, III
 Ted.Stevenson@alston.com
Adam Ahnhut
 Adam.ahnhut@alston.com
ALSTON & BIRD LLP
2200 Ross Ave
Suite 2300
Dallas, TX 75201
214-922-3507
Fax: 214-922-3899

*Attorneys for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

**Deron Dacus**
ddacus@dacusfirm.com
**The Dacus Firm**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
903-705-1117
Fax: 903-581-2543

*Attorney* for *AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

**Melissa R. Smith**
melissa@gillamsmithlaw.com
**Tom Gorham**
tom@gillamsmithlaw.com
**Gillam & Smith LLP**
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*



**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served electronically on July 3, 2024 on all counsel who have consented to electronic service.

/s/ David S. Frist
David S. Frist

**CERTIFICATE OF CONFERENCE**

I hereby certify that Defendants have complied with the meet and confer requirements set forth in Local Rule CV-7(h). Counsel for Defendants met and conferred with counsel for Plaintiff on June 28, 2024. Plaintiff indicated that it is opposed to the relief sought in this motion.

/s/ David S. Frist
David S. Frist