IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF DR. WILLIAMS'S EXPERT REPORTS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ................................................................................................................... 1

   A.  Dr. Williams's opinions do not rely on any new or improper claim construction opinions. ............................................................................................................... 1

   B.  The Carrier Aggregation Theories Presented by Dr. Williams Were Timely and Fairly Disclosed in Cobblestone's Infringement Contentions. ........................................ 4

   C.  Dr. Williams's validity rebuttal does not include infringement opinions, instead rebutting Dr. van der Weide's attempt to show invalidity "under Cobblestone's apparent infringement theory." ............................................................................. 8

III. CONCLUSION ................................................................................................................ 9

**I.      INTRODUCTION**

Defendants' motion, Dkt. 153, to exclude the testimony of Plaintiff Cobblestone's technical expert Dr. Tim Williams should be denied. Dr. Williams provided thorough, reliable analyses, consistent with Cobblestone's infringement contentions showing that the accused instrumentalities, as used, meet all limitations of each of the asserted patent claims—and that Defendants fail to show invalidity of any of those claims.

**II.     ARGUMENT**

**A.      Dr. Williams's opinions do not rely on any new or improper claim construction opinions.**

Section III of Defendants' Motion does not seek to strike any portion of any of Dr. Williams's expert reports, and does not question the reliability under *Daubert* of any of the opinions stated in those reports. Defendants purportedly ask that Dr. Williams be prohibited from offering claim construction opinions at trial. Cobblestone has no intention of asking Dr. Williams to present claim construction opinions at trial. Cobblestone also has no intention of asking Dr. Williams to present any opinions outside the scope of his expert reports at trial, consistent with Court MIL No. 23 in the Court's Standing Order on Motions in Limine in patent cases: "No expert witness may testify to expert opinions outside the established parameters of her/his expert report."

When Defendants took Dr. Williams's deposition, they put the '347 patent in front of him, asked him to look at the figures, and engaged him in a general colloquies about his understanding of certain concepts within the patent specification and claims. *See generally, e.g.*, Ex. 1 (Williams Dep. Tr.) at 136:2-162:12, 184:4-191:4, 220:2-222:24. Counsel did not ask Dr. Williams about his opinions on infringement or invalidity during these discussions, except occasionally and broadly, as addressed below; rather, the questioning was expressly framed in terms of the patent and its claims themselves. *See, e.g., id.* at 222:21-23 (counsel ending colloquy with "I'm leaving the

1

claims now, Dr. Williams, just so we don't get confused. Okay?"). During these, counsel specifically asked Dr. Williams on several occasions about his understanding of portions of the '347 Patent specification. Dr. Williams answered Defendants' questions. Now Defendants characterize his answers as somehow improper—as if he should have instead refused to answer their questions.

Defendants cite good law confirming that an expert may not bring in intrinsic evidence to alter the plain and ordinary meaning of the claims. *VARTA Microbattery GmbH v. Audio P'ship LLC*, No. 2:21-CV-00400-JRG-RSP, 2023 U.S. Dist. LEXIS 140570 (E.D. Tex. Aug. 10, 2023). *VARTA* well represents the typical case of a noninfringement expert applying his own a narrowing claim construction under the guise of his "understanding" of the specification. *Id.* at *8-*9. The Court there appropriately struck paragraphs of the expert's noninfringement report where he "analyzes the specification and limits the plain meaning of the Disputed Limitation to what he sees as the teaching of the specification" in order to reach a noninfringement conclusion, but permitted him "to rely on his technical understanding" and to explain why the accused products do not meet the claim limitations under their plain and ordinary meanings as understood in the art. *Id.* at *10. Of course, the same rule would apply to a validity expert narrowing claim scope to avoid prior art.

But *VARTA* does not support Defendants' motion, instead merely illustrating what Defendants are *not* arguing here. Defendants do not suggest that any of Dr. Williams's analyses on infringement or validity are based on, or even incorporate, the supposed "claim construction testimony" that they challenge. Defendants do not challenge any portion of Dr. Williams's expert reports. Defendants show no connection between the challenged testimony and any of Dr. Williams's premises or conclusions. And perhaps most importantly, Defendants provide no

2

evidence or argument that Dr. Williams's testimony is actually inconsistent with the plain and ordinary meaning of the terms.

For example, Defendants concede that Dr. Williams "admit[ted]"—in Defendants' words—that the phrase "propagation path" is "the path that the electromagnetic radiation takes from the transmitter to the receiver"; Defendants apparently agree with him that this definition falls within the term's plain and ordinary meaning. Dkt. 153 at 2 (quoting Ex. 1 at 149:8-150:2). But on the very next page of the transcript, Dr. Williams testified that he applied exactly that same plain and ordinary understanding in his interpretation of the claim language. Ex. 1 at 150:11-18. This confirms that he was *not* limiting "propagation path" to a "user-focused" transmission, as Defendants incorrectly assert. *See also id.* at 186:10-13 ("THE WITNESS: The transmitting element of Claim 15, does the first propagation path have to be intentionally user-focused? No."). Defendants do not and cannot assert that Dr. Williams's understanding of "propagation path," even in response to Defendants' leading questions, contradicts or is inconsistent with the term's plain meaning. Likewise, Defendants give no explanation or evidence why Dr. Williams's saying "yes" to various leading questions from counsel regarding "predistorting" somehow contradicts the plain and ordinary meaning of "predistortion."

Dr. Williams does not present any validity (or infringement) analysis founded on an inappropriately narrow claim scope. Defendants do not and cannot cite any portion of his deposition transcript or validity expert report where he explains, for example, that prior art fails to disclose a "propagation path" or "predistortion" under anything but the plain and ordinary meaning. Indeed, Defendants made no attempt, either during the deposition or in their motion, to link their abstract questioning about "propagation path" and "predistortion" to any of Dr.

3

Williams's actual opinions, for example to allow him to explain whether or not his validity analysis was based on the plain and ordinary meaning of the claim terms.

> **B.   The Carrier Aggregation Theories Presented by Dr. Williams Were Timely and Fairly Disclosed in Cobblestone's Infringement Contentions**

Defendants mischaracterize both Dr. William's opinions and Cobblestone's infringement contentions. Dr. Williams does not present "use of an SCell in carrier aggregation alone as a basis for infringement," as Defendants suggest. Dkt. 153 at 6. Rather, as Defendants acknowledge, Dr. Williams explained at his deposition that his carrier aggregation-related opinions are "within the context of using bandwidth part adaptation in conjunction with carrier aggregation." Dkt. 153 at 8 (quoting Ex. B at 87:16–88:21). To the extent that the motion seeks to strike a "stand-alone" SCell infringement read "untethered to" or "unconnected to" infringement based on bandwidth parts, Dkt. 153 at 7–8, there is no such infringement read to strike.

Defendants assert that Cobblestone's contentions contain ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 153 at 7. But the very excerpts of those contentions they attach to their motion show otherwise. For example, limitation [10d] requires:

> in response to the determination that the first frequency spectrum resource is the sub-optimal resource, assign the first frequency spectrum resource to a shared resource pool.

Ex. D at 11. As part of its infringement contentions for this limitation, Cobblestone stated:



Ex. D at 11. In the context of the claim language in question, the natural interpretation of this statement is that the "UE measurements are used to decide on the best serving cell, or carrier" relates to the claimed "determination that the first frequency spectrum resource is the sub-optimal resource" and that the "handover mechanism referred to previously is used to add/remove second

4

component carrier (SCells)" relates to the claimed "assign the first frequency spectrum resource to a shared resource pool." The contentions for limitation [10d] provide further detail on carrier aggregation, excerpting a portion of a 3GPP standards document and specifically underlining a description of adding and removing SCells:

> 7.7 Carrier Aggregation
>
> When CA is configured, the UE only has one RRC connection with the network. At RRC connection establishment/re-establishment/handover, one serving cell provides the NAS mobility information, and at RRC connection re-establishment/handover, one serving cell provides the security input. This cell is referred to as the Primary Cell (PCell). Depending on UE capabilities, Secondary Cells (SCells) can be configured to form together with the PCell a set of serving cells. The configured set of serving cells for a UE therefore always consists of one PCell and one or more SCells.
>
> The reconfiguration, addition and removal of SCells can be performed by RRC. At intra-NR handover, RRC can also add, remove, or reconfigure SCells for usage with the target PCell. When adding a new SCell, dedicated RRC signalling is used for sending all required system information of the SCell i.e. while in connected mode, UEs need not acquire broadcast system information directly from the SCells.

Ex. D at 12. In other words, SCells are identified as at least one example that satisfied the claimed "first frequency spectrum resource" that is assigned to the "shared resource pool."

Defendants ask the Court to conclude that these infringement contentions have "no reference to carrier aggregation" and do not identify the use of an SCell within carrier aggregation as a "possible infringement read." Dkt. 153 at 7. This is not a credible position. Cobblestone excerpted a description of carrier aggregation, specifically underlining sentences about adding and removing SCells, as evidence in its claim chart for a limitation that requires "assign[ing] the first frequency spectrum resource to a shared resource pool." The natural interpretation of this is that Cobblestone was contending that SCells in carrier aggregation are (at least an example of) frequency spectrum resources that are assigned to a shared resource pool.

There are further references to carrier aggregation and to SCells in carrier aggregation (or in "CA") throughout Cobblestone's infringement contentions for claim 10. Ex. 3 at 7, 15, 21 (referring to "[a]ddition, modification and release of carrier aggregation"), *id.* at 8, 18, 22 (referring to steps to "enable BA on SCells in the case of CA"). Again, the natural interpretation is that

5

Cobblestone was contending that SCells in carrier aggregation are (at least examples of) the frequency spectrum resources required by the claims.

Defendants quote from Williams paragraph 872 as an example of an allegedly improper opinion. But this paragraph 872 is providing opinions that exactly align with the contentions provided on pages 11 and 12 of Cobblestone's infringement claim chart discussed above. Both pages 11 and 12 of the infringement contentions and paragraph 872 of Williams's report concern the same claim element [10d]. Ex. D at 12; Ex. 4, ¶¶ 862–872. In the context of a claim element that requires "assign[ing] the first frequency spectrum resource to a shared resource pool," the contentions state that "[f]or example, the handover mechanism referred to previously is used to add/remove second component carrier (SCells)." Ex. D at 11. In other words, SCells are an example of a "frequency spectrum resource." This is the same theory presented in the quoted portion of Williams paragraph 872, namely that SCells are frequency spectrum resources and are assigned to a shared resource pool using the SCell activation/deactivation procedure. Dkt. 153 at 7–8 (quoting Ex. A, ¶ 872).

Defendants also quote from Williams paragraph 824. This paragraph concerns claim element [10a]. Ex. 4, ¶¶ 806–824. For this claim element, as well, the infringement contentions expressly refer to "carrier aggregation," to "PCell," and to "SCells in case of CA." Ex. D at 7–8. It is not credible to argue that paragraph 824, presenting a theory that SCells are frequency spectrum resources and that calculations are used to decide to "deactivate or modify SCell assigned to a UE" presents an impermissible new theory of infringement. Cobblestone's infringement contentions expressly identified addition and removal of SCells as assigning a frequency spectrum resource to a shared resource pool and pointed to SCells in carrier aggregation in its contentions for multiple claim limitations. Cobblestone should be permitted to present expert testimony

explaining SCells and how they are added and removed "within the context of using bandwidth part adaptation in conjunction with carrier aggregation." (Ex. B at 87:16–88:21.)

Defendants' argument that Dr. Williams's opinion should be excluded because of some conflict with representations Cobblestone has made to the Court should be rejected. Defendants assert that "Cobblestone initially, expressly, and adamantly represented to this court that carrier aggregation is *not* in this case." Dkt. 153. Having made such a claim, the reader might expect that Defendants would support it with a quote or citation to a statement by Cobblestone that carrier aggregation is not in the case. They neither quote nor cite to any. The closest statement that Defendants can point to is a statement broadly describing the functionalities at issue for the four patents asserted in the "Carrier 1" cases and the for the one patent asserted in the "Carrier 2" cases. Dkt. 147 at 3 (first bullet point). This is far from an "express" or "adamant" statement that carrier aggregation had no role in the present cases. The other statements by Cobblestone that Defendants point to assert that there are differences in "accused functionality," accused products, or the discovery required. None of these statements is inconsistent with Cobblestone identifying SCells in carrier aggregation as one among alternative theories for satisfying elements of the '361 patent claims. In particular, as Cobblestone explained in its opposition to the motion for a protective order, the carrier aggregation-related functionality at issue for the '361 patent in the present cases and for the '802 patent in the "Carrier 2" cases is different. As discussed in detail above, the aspects of carrier aggregation at issue for the '361 patent involve SCells and their addition and removal by base stations. In the '802 patent, the aspects of carrier aggregation at issue are center frequencies and the implementation of carrier aggregation in the transmitters of base stations and user equipment. *See* Dkt. 170 at 4–6. There is no conflict between Cobblestone's representations to the

7

Court and the challenged opinions of Dr. Williams that would justify excluding opinions that are consistent with the infringement contentions Cobblestone served in this case.

Since Dr. Williams's carrier aggregation theory was fairly disclosed in Cobblestone's infringement contentions, there is no need for Cobblestone to address Defendants' arguments that are premised on a failure to disclose the theory or on Defendants being prejudiced by such a failure. Dkt. 153 at 9–11.)

### C. Dr. Williams's validity rebuttal does not include infringement opinions, instead rebutting Dr. van der Weide's attempt to show invalidity "under Cobblestone's apparent infringement theory."

Defendants' characterization of paragraph 78 of the Williams rebuttal as infringement analysis is incorrect. It is rebuttal validity analysis, not infringement analysis. As explained below, it rebuts a particular validity argument raised in Dr. van der Weide's opening report. To be clear, Cobblestone is not going to rely on Dr. Williams's *validity* report as Rule 26 support for any *infringement* testimony at trial.

But Defendants are wrong to suggest that Dr. Williams must be prohibited from presenting the validity analysis in paragraph 78 as part of his rebuttal to Dr. van der Weide's invalidity analysis. Dr. van der Weide opines that prior art renders the '347 Patent obvious under "Cobblestone's apparent infringement theory," and Dr. Williams should be permitted to rebut that, pointing out that the prior art and accused instrumentalities are different. Ex. 5 (van der Weide Invalidity Report) ¶ 161.

For example, Dr. van der Weide asserts that Sesia's disclosure of "channel estimation on a reference signal" rendered obvious the '347 Patent's "path parameter information" under Cobblestone's contention that the same limitation is met by "channel state information measured from the CSI-RS." *Id.* ¶ 161 & n.5. Dr. van der Weide further opined that "Sesia discloses that CSI-RSs were introduced in Release 10 [of the 3GPP LTE standard] for estimating the downlink

8

channel state." *Id.* ¶¶ 56, 65, 83, 143. Dr. van der Weide provided similar opinions about Holma. *See, e.g.*, *id.* ¶ 337. In short, Dr. van der Weide asserted that Cobblestone's infringement contentions accused the same CSI-RS functionality that existed in the prior art.

Dr. Williams, having been put on notice of this assertion, was able to and properly did rebut it. As he explains: "Dr. van der Weide's theory of Sesia is much different than how the 5G NR Accused Instrumentalities operate." Ex. 6 ¶ 75. Indeed, the Sesia and Release 10 LTE systems "are very different from the ***propagation path-specific*** invention claimed in the '347 patent claims and used in massive MIMO antenna systems today." *Id.* ¶ 77 (emphasis added). In particular, the Release 10 channel estimation and feedback mechanisms did not include the later accused propagation path-specific functionalities, which were introduced in Release 15 in approximately 2016. *Id.* ¶ 78 ("Sesia's design and focus with respect to LTE and 3GPP release 10 can also be understood in contrast to 5G NR and 3GPP release 15 onward. The [accused] 5G NR Massive MIMO antenna systems... obtain[] channel estimation feedback from the UE that is specific to a particular propagation path."). The challenged paragraph focuses on the differences between Release 10 and Release 15. This is directly probative that the disclosure in the alleged Release 10 prior art was *not* the same as the post-Release 15 CSI-RS functionality accused of infringement, because the channel estimation, CSI-RS, and related functionality changed in fundamental and relevant ways during the Release 15 process. And proving that proposition is plainly proper rebuttal to Dr. van der Weide's invalidity opinion regarding "Cobblestone's apparent infringement theory," because it shows that Dr. van der Weide's assumption is incorrect: Cobblestone is not accusing the same functionality that was in the prior art.

### III. CONCLUSION

Defendants' Motion should be denied in its entirety.

9

| | |
|---|---|
| Dated: July 17, 2024 | Respectfully submitted,<br><br>*/s/ Reza Mirzaie*<br>Marc Fenster<br>CA State Bar No. 181067<br>Reza Mirzaie<br>CA State Bar No. 246953<br>Neil A. Rubin<br>CA State Bar No. 250761<br>Amy E. Hayden<br>CA State Bar No. 287026<br>James Pickens<br>CA State Bar No. 307474<br>Christian W. Conkle<br>CA State Bar No. 306374<br>Jonathan Ma<br>CA State Bar No. 312773<br>RUSS AUGUST & KABAT<br>12424 Wilshire Blvd. 12th Floor<br>Los Angeles, CA 90025<br>Telephone: 310-826-7474<br>rak_cobblestone@raklaw.com<br><br>Andrea Fair<br>Ward Smith & Hill, PLLC<br>1507 Bill Owens Parkway<br>Longview, Texas 75604<br>(903) 757-6400<br>andrea@wsfirm.com<br><br>***Attorneys for Plaintiff,***<br>***Cobblestone Wireless, LLC*** |



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served on all counsel of record via the Court's CM/ECF system on July 17, 2024.

/s/ Reza Mirzaie
Reza Mirzaie