███████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> T-MOBILE USA, INC. <br><br> *Defendant*, <br><br> NOKIA OF AMERICA CORPORATION, ERICSSON INC. <br><br> *Intervenors*. | § § § § § § § § § § § § § | CASE NO. 2:22-cv-00477-JRG-RSP <br> (Lead Case) <br><br> JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP., <br><br> *Defendants*, <br><br> NOKIA OF AMERICA CORPORATION, ERICSSON INC. <br><br> *Intervenors*. | § § § § § § § § § § § § § | CASE NO. 2:22-cv-00474-JRG-RSP <br> (Member Case) <br><br> JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> *Defendant*, <br><br> NOKIA OF AMERICA CORPORATION, ERICSSON INC. <br><br> *Intervenors*. | § § § § § § § § § § § § § | CASE NO. 2:22-cv-00478-JRG-RSP <br> (Member Case) <br><br> JURY TRIAL DEMANDED |

## DEFENDANTS' AND INTERVENORS' OPPOSITION TO PLAINTIFF COBBLESTONE WIRELESS, LLC'S MOTION TO EXCLUDE OPINIONS OF <u>DEFENDANTS' DAMAGES EXPERT MELISSA A. BENNIS</u>

████████████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................1

        A.      Bennis Uses Comparable Licenses to Calculate a Lump Sum Royalty...................1

        B.      Bennis Describes the Considerations that Would Impact the Hypothetical
                Negotiation.................................................................................................3

        C.      Bennis Uses Supported Non-Infringing Alternatives as Part of Her Georgia-
                Pacific Analysis ........................................................................................4

III.    LEGAL STANDARDS ........................................................................................4

IV.     ARGUMENTS AND AUTHORITIES...............................................................5

        A.      Bennis's Lump Sum Royalty Opinion is Reliable and Supported by the
                Evidence......................................................................................................5

        B.      Bennis's Does Not Provide a "Royalty Stacking" Opinion.....................................7

        C.      Bennis's Analysis of Identified Non-Infringing Alternatives is Proper .................9

V.      CONCLUSION....................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012).................................................................................... 4

*Arigna Tech. Ltd. v. Nissan Motor Co.*,
  2022 WL 14318049 (E.D. Tex. Oct. 24, 2022) ........................................................... 4

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015).................................................................................... 9

*BMC Software, Inc. v. Servicenow, Inc.*,
  2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ................................................................. 7

*DataTreasury Corp. v. Wells Fargo & Co.*,
  2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) .............................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..................................................................................................... 4

*Ericsson, Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  2018 WL 2149736 (E.D. Tex. May 10, 2018) ............................................................ 8

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988) ................................................................................... 5

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
  2020 WL 2499736 (E.D. Tex. May 14, 2020)....................................................... 5, 10

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  383 F.3d 1337 (Fed. Cir. 2004).................................................................................... 5

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  2011 WL 197869 (E.D. Tex. Jan. 20, 2011)................................................................ 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)............................................................................ 5, 7, 8

*Mobility Workx, LLC v. Cellco P'ship*,
  2019 WL 5721814 (E.D. Tex. Nov. 5, 2019) .............................................................. 6

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
  2021 WL 662237 (E.D. Tex. Feb. 20, 2021) ............................................................... 6

████████████████████████████████████████

*Smart Path Connections, LLC v. Nokia of Am. Corp.*,
   2024 WL 1096117 (E.D. Tex. Mar. 13, 2024) ....................................................... 9, 10

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015)............................................................................. 5

*Veritas Operating Corp. v. Microsoft Corp.*,
   2008 WL 7404617 (W.D. Wash. Feb. 26, 2008)......................................................... 6

██████████████████████████████████

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpts of the Deposition Transcript of Melissa Bennis, dated June 19, 2024 ("Bennis Dep. Tr.") |
| 2 | Excerpts of the Expert Report of Stephen Dell Regarding AT&T, dated May 24, 2025 ("Dell AT&T Rpt.") |
| 3 | Excerpts of the Expert Report of Stephen Dell Regarding Verizon, dated May 24, 2025 ("Dell Verizon Rpt.") |
| 4 | Excerpts of the Expert Report of Stephen Dell Regarding T-Mobile, dated May 24, 2025 ("Dell T-Mobile Rpt.") |
| 5 | Excerpts of the Opening Expert Report of Dr. Daniel van der Weide, dated May 24, 2025 ("van der Weide Op. Rpt.") |

████████████████████████████

## TABLE OF ABBREVIATIONS

| '347 Patent | U.S. Patent No. 8,891,347 |
|---|---|
| '361 Patent | U.S. Patent No. 10,368,361 |
| '888 Patent | U.S. Patent No. 9,094,888 |
| Allied and Empire | Allied Inventors, LLC and Empire Technology Development, LLC |
| AT&T | AT&T Services, Inc., AT&T Corp., and AT&T Mobility LLC |
| Carrier Defendants | AT&T, T-Mobile, and Verizon |
| Intervenors | Ericsson Inc. and Nokia of America Corporation |
| Patents-in-Suit | '361, '347, and '888 Patents |
| T-Mobile | T-Mobile USA, Inc. |
| Verizon | Cellco Partnership d/b/a Verizon Wireless |

█████████████████████████████████████

## I.   INTRODUCTION

Plaintiff Cobblestone Wireless seeks to exclude three aspects of the expert opinions of Ms. Melissa Bennis: (1) "Ms. Bennis' Selection of Reasonable Royalties for the Patents-in-Suit" (Mot. at 5); (2) "Assertions of 'Royalty Stacking'" (Mot. at 7); and (3) "Opinions on Noninfringing Alternatives" (Mot. at 9). None of these challenges has merit.

First, Cobblestone's demand for mathematical precision in Bennis's lump sum calculation has been repeatedly rejected by both the Federal Circuit and this Court. Bennis applies a legally sound methodology for calculating lump sum damages by relying on comparable licenses. Second, Cobblestone objects to Bennis's alleged "royalty stacking" opinions. But Bennis does not opine on a specific royalty stack amount, instead she provides relevant information regarding what facts and circumstances the Carrier Defendants would have considered during the hypothetical negotiation. Finally, Cobblestone's objections to Bennis's non-infringing alternatives are factually unsound because Bennis relied on timely disclosed opinions in the opening report of Defendants and Intervenors' technical expert and then applied those alternatives as contemplated by case law. For the reasons explained below, Defendants and Intervenors respectfully request that the Court deny the Motion.

## II.   BACKGROUND

### A.   Bennis Uses Comparable Licenses to Calculate a Lump Sum Royalty

To calculate her affirmative royalty opinion, Bennis uses several comparable license agreements which she analyzes under the *Georgia-Pacific* factors. As part of this analysis, Bennis considers agreements between Cobblestone and Allied and Empire,[1] agreements involving the Carrier Defendants, and agreements which involve Ericsson and Nokia. *See generally*, Dkt. 151-3

---

[1] Allied and Empire owned the patents as of the date of the hypothetical negotiation and thus would have been the licensor at the hypothetical negotiation. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 128-29.

[redacted]

(Bennis AT&T Rpt.) at ¶¶ 140-238.[2] Ericsson and Nokia's licenses are relevant because the Carrier Defendants "would have looked to Ericsson and Nokia for additional information and support during the hypothetical negotiation," and Ericsson and Nokia "would have an interest in participating in the negotiation regarding the rights to patents that [their] products purportedly infringe."[3] Dkt. 151-3 (Bennis AT&T Rpt.) at ¶ 129.

After narrowing to a collection of five sets of agreements, all of which she determines are economically and technically comparable,[4] Bennis then adjusts the value of those agreements to account for difference between those agreements and the hypothetical negotiation. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 279-80.

A summary of the agreements Bennis reviewed is below:

[redacted]

[2] Because Bennis's opinions, with the exception of the '888 patent, remain the same across each Carrier Defendant, this response primarily cites to her AT&T report, although the analysis is the same for each.

[3] Indeed, Cobblestone does not contest this since its own expert relied ***exclusively*** on Ericsson's licenses to calculate his royalty. *See generally* Dkt. 151-3 (Dell AT&T Rpt.).

[4] Bennis's technical comparability analysis relies on the unchallenged opinions of Johanna Dwyer. Dkt. 144 at 2 ("Ms. Dwyer's report includes a 'Technical Comparability Analysis' section, which this Motion is not challenging); Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 151-236 (relying on Ms. Dwyer for technical comparability).

[5] Given the Carrier Defendants already had paid value for the Asserted Patents, Bennis explains that this value could be considered additives and would be used to increase the lump-sum royalty. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶ 280.

[6] This includes agreements with Adaptix, CCE, and Signal Trust. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶ 280.

██████████████████████████████████████████████

Based on her review of the comparable agreements, along with her analysis of the *Georgia-Pacific* factors, Bennis concludes that the Carrier Defendants would have paid ████████

████████████████████████. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶ 281.

For the '888 patent, Cobblestone recognized that Cobblestone only alleges a *de minimus* use of the '888 patent technology by AT&T and Verizon and thus did not seek a lump sum for those defendants. Mot at 3 n.2. As a result, Cobblestone only seeks damages on this patent from T-Mobile. *Id.* As Bennis explains, because the accused features of the '888 patent are only implemented in one of T-Mobile's infrastructure vendor's equipment, she adjusted her per-patent rate to account for extent of use. Dkt. 151-2 (Bennis T-Mobile Rpt.) at ¶ 283. That reduction to her per-patent amount results in a proposed lump sum royalty of ████████ for the '888 patent. *Id.*; Ex. 1 (Bennis Dep. Tr.) at 168:13-169:8.

**B.     Bennis Describes the Considerations that Would Impact the Hypothetical Negotiation**

As part of her critique of Dell's analysis, Bennis explains why the Carrier Defendants would never have agreed to pay a percentage royalty on their revenue at the rates suggested by Dell. In Dell's analysis, he relies on Ericsson's SEP licenses to calculate a per SEP rate of ████

████████████████████████ *See generally* Ex. 2 (Dell AT&T Rpt.). In her critique, Bennis explains why, in the context of a hypothetical negotiation, the Carrier Defendants would not accept a per-patent royalty based on carrier revenue. *E.g.*, Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 111-49. As Bennis articulates, "any parties entering into a license have to be mindful of their overall exposure … and so agreeing to rights to patents at rates as suggested by Dell is just something that is unlikely, given the overall depth of patent rights that circulate in this industry." Ex. 1 (Bennis Tr.) at 82:16-83:3; *see also id.* at 83:4-11; 84:9-15. Bennis does not articulate a royalty stacking

theory. Indeed, Bennis acknowledges that she is "not aware that all 21,000 patents, for instance, are out there demanding royalties be paid." *Id.* at 82:19-21.

> **C.** **Bennis Uses Supported Non-Infringing Alternatives as Part of Her *Georgia-Pacific* Analysis**

As part of her analysis of *Georgia-Pacific* factors 7, 9, and 10, Bennis considers the availability of non-infringing alternatives. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 249, 251, 265. Her analysis comes from two sources. First, interrogatory responses prepared by the Carrier Defendants and Intervenors, and second, expert opinions given by a technical expert, Dr. van der Weide. Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 260-64. Bennis then uses the availability of these non-infringing alternatives to conclude that the term of the license would not impact the rate given the easy availability of non-infringing alternatives, and that a lower royalty is appropriate given the minimal value of the Patents-in-Suit which can be easily avoided through "simple and inexpensive noninfringing alternatives." Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 249, 251, 265.

## III.    LEGAL STANDARDS

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In exercising its gatekeeping role, while the Court must ensure that the ultimate conclusion is based on a reliable application of a reliable method, "disagreements [] with … the factual assumptions and considerations underlying those conclusions, … go to the weight to be afforded the testimony and not its admissibility." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Arigna Tech. Ltd. v. Nissan Motor Co.*, No. 2:22-CV-00126-JRG-RSP, 2022 WL 14318049, at *2 (E.D. Tex. Oct. 24, 2022) ("the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role"). Complaints that an expert "uses different underlying facts" than the challenger would "are not criticisms of

████████████████████████████████

methodology" and are not a basis for exclusion. *E.g.*, *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-CV-00050-JRG-RSP, 2020 WL 2499736, at \*5 (E.D. Tex. May 14, 2020).

## IV. ARGUMENTS AND AUTHORITIES

### A. Bennis's Lump Sum Royalty Opinion is Reliable and Supported by the Evidence

Cobblestone argues that Bennis's affirmative lump sum opinion is not based on any reliable methodology and should be excluded. Mot. at 5.

Cobblestone's challenge to Bennis's affirmative lump sum opinion boils down to its contention that she needed to show a "mathematical calculation" to support her opinion. Mot. at 5. But "estimating a reasonable royalty is not an exact science." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). As the Federal Circuit explained, "[d]etermining a fair and reasonable royalty is often … a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge." *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). When relying on the hypothetical negotiation approach, it is accepted that "that any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (cleaned up).

Cobblestone does not contend that relying on comparable licenses is not a reliable or accepted damages methodology, nor does it contest that the chosen licenses were technically or economically comparable. Instead, Cobblestone's primary argument against Bennis is that after identifying the comparable licenses, she did not perform a "mathematical calculation" to reach her damages number and therefore her damages number "is improper and not testable for reliability or on cross-examination." Mot. at 5. But such "mathematical precision" is not required. As this Court

has explained: "the law remains clear; 'mathematical precision' in royalty calculations is not required." *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *17 (E.D. Tex. Nov. 5, 2019). Moreover, this Court previously rejected a similar argument. In *PMC v. Apple*, the plaintiff similarly argued that the experts "methodology to arrive at his $1 million total lump sum damages estimate is so opaque and indiscernible that PMC is prevented from fully cross-examining Mr. Thomas on the actual bases and assumptions underlying his opinion." *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG-RSP, 2021 WL 662237, at *5 (E.D. Tex. Feb. 20, 2021) (internal quotation marks omitted). The Court described the expert's methodology as follows:

> Mr. Thomas reviews a few factors to support his lump sum estimate. His analysis includes review of both Apple and PMC licensing history, review of relevant licenses, discussion of non-infringing alternatives, and how each consideration shaped his calculations and analysis. Mr. Thomas discusses the *Georgia-Pacific* factors and the upward, neutral, or downward impact the facts of the case have on those factors. Mr. Thomas makes several considerations each of which appear to point him towards his $1 million figure such as his analysis of non-infringing alternatives and review of the PMC licenses. Both considerations point to the estimated $1 million figure

*Id.* at *6. As a result, this Court concluded: "His opinion is not so opaque as to be immune from rigorous cross-examination." *Id.*; *see also Veritas Operating Corp. v. Microsoft Corp.*, No. C06-0703-JCC, 2008 WL 7404617, at *5 (W.D. Wash. Feb. 26, 2008) (rejecting argument that opinion was "merely *ipse dixit* or otherwise analytically insufficient" where expert "has taken into account the relevant factors"). Bennis applies nearly an identical methodology to arrive at her opinion, and thus, her lump sum opinions should not be excluded.

Nor is the fact that Bennis's opinion is the same across all three Carriers grounds for exclusion. *See* Mot. at 5-6. Like Cobblestone's expert, Bennis looked to the same set of licenses across all three Carriers, which naturally resulted in a common number. *See* Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 140-238, 275-283; Dkt. 151-2 (Bennis T-Mobile Rpt.) at ¶¶ 142-240, 277-285;

6

███████████████████████████████████████████

Dkt. 151-4 (Bennis Verizon Rpt.) at ¶¶ 137-236, 273-281. Dell similarly arrived at the same per-patent royalty as part of his calculation, the distinction is he improperly applied that number to a royalty base of carrier revenue.[7] *See* Ex. 2 (Dell AT&T Rpt.) at Fig. 11; Ex. 3 (Dell Verizon Rpt.) at Fig. 8; Ex. 4 (Dell T-Mobile Rpt.) at Fig. 7. There is no basis to exclude Bennis's opinions on the grounds they are the same for each Carrier Defendant.

Cobblestone's cited cases are easily distinguished. For example, in *BMC* this Court barred an expert from testifying where the expert's methodology was "based on his own personal experience" and thus was less the product of an articulated methodology but more "his own subjective evaluation." *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-CV-903-JRG, 2016 WL 379620, at *2 (E.D. Tex. Feb. 1, 2016). Similarly, in *Lucent Technologies*, the court rejected the lump-sum damages opinion not due to the selection of the rate, but instead because *Lucent* "provide[d] no analysis of those license agreements, other than, for example, noting the agreement was a cross-license of a large patent portfolio and the amount paid." *Lucent Techs.*, 580 F.3d at 1329. Bennis's methodology is a far cry from merely a subjective analysis of her own personal experience, nor did she simply state the amounts of licenses without analyzing them. Bennis's lump sum opinion is based on a robust analysis using an accepted methodology and should not be excluded.

**B.      Bennis's Does Not Provide a "Royalty Stacking" Opinion**

Cobblestone's request to exclude Bennis's "royalty stacking" opinion starts with a faulty premise; Bennis does not offer such an opinion. Instead, Bennis's opinion is that the Carrier Defendants would consider *potential* additional exposure resulting from agreement to Dell's royalty rate, which is permissible as part of the *Georgia-Pacific* analysis. Dkt. 151-3 (Bennis

---

[7] Dell's decision to use carrier revenue as a damages base is the subject of Defendants and Intervenor's motion to strike his opinions. *See* Dkt. 156.

█████████████████████████████████████████████

AT&T Rpt.) at ¶¶ 111-49. "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Lucent Techs.*, 580 F.3d at 1325. Concerns that a plaintiff's theory "would erode all of [an accused infringer's] profit" are part of "the weight of the evidence" which may be considered by a jury. *Ericsson, Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *6 (E.D. Tex. May 10, 2018); *see also id.* at *4 ("Indeed, any juror can understand that if one infringing feature on a device demands" a significant royalty, "it may become impossible to sell a profitable device").

As part of her analysis, Bennis opines that the Carrier Defendants would have considered potential future exposure resulting from agreeing "to rights to patents at rates as suggested by Dell." Ex. 1 (Bennis Dep. Tr.) at 82:25-83:1. Bennis does not opine that the Carrier Defendants necessarily must take a license to each and every SEP. Instead, she explains that the Carrier Defendants would consider what would occur in the event they needed numerous licensing rights and how that possibility would impact their negotiation. Ex. 1 (Bennis Dep. Tr.) at 82:16-83:3, 83:9-11, 84:9-15. This is entirely permissible in the context of the hypothetical negotiation analysis, and is obviously true in the real world. Bennis does not intend to tell the jury that the damages award in this case should be lower due to royalty stacking, nor, as Cobblestone implies, will she tell the jury that phone bills will go up as a result of Dell's royalty (if for no other reason than it would run afoul of the Court's Standing MIL 19). Ex. 1 (Bennis Dep. Tr.) at 82:19-21. Bennis's opinion will instead be used to explain to the jury the considerations the Carrier Defendants would have looked to at the hypothetical negotiation, such as the possibility of significant portions of their revenue per user being captured in the future should they agree to Dell's royalty. The Court should refuse to strike this opinion.

██████████████████████████████████████████

### C.       Bennis's Analysis of Identified Non-Infringing Alternatives is Proper

Cobblestone's arguments with respect to Bennis's use of non-infringing alternatives rest on misunderstandings of her opinions. Cobblestone seeks to strike Bennis's opinion on non-infringing alternatives for two reasons: (1) her reliance on allegedly undisclosed alternatives, and (2) insufficient analysis of the alternative. Mot. at 9-11. Both of these arguments should be rejected.

"When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015); *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011), *objections overruled*, 2011 WL 13196509 (E.D. Tex. Jan. 28, 2011) ("Whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology."). Accordingly, the "[a]vailability of acceptable non-infringing alternatives should be considered as part of a *Georgia–Pacific* analysis, such as with regard to factor 9." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2011 WL 8810604, at *9 (E.D. Tex. Aug. 2, 2011). Bennis's use of timely identified and supported non-infringing alternatives as part of her *Georgia-Pacific* analysis is proper.

First, contrary to Cobblestone's suggestion, the "software" based alternatives were described in Dr. van der Weide's opening expert report. *See, e.g.*, Ex. 5 (van der Weide Op. Rpt.) at ¶¶ 633-635, 1034-1037, and 1383. As to the purported "extra-territorial" alternative, this statement is no more than part of the basic proposition that 5G networks will not be needed in the future as new technology replaces 5G. Thus, Bennis's use of alternatives that were identified and analyzed by a technical expert is not like *Smart Path* where the alternatives were not raised until a

█████████████████████████████████████████

rebuttal report. *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024 WL 1096138, at *4 (E.D. Tex. Mar. 13, 2024) ("[T]he technical showing that an alternative is non-infringing … should have been presented in an opening technical report."). Cobblestone's motion should be denied on this ground.

Second, after describing the alternatives identified in Dr. van der Weide's opening report, Bennis reliably uses them as part of her *Georgia-Pacific* analysis.[8] For example, Bennis applies the availability of non-infringing alternatives when considering factors 7, 9, and 10. With respect to factor 7, Bennis concludes that "[t]he availability of these noninfringing alternatives would neutralize the effect of a longer hypothetical license term" and "the effort and expense of implementing a non-infringing alternative may be more likely to be considered the longer the term of the license, neutralizing the effect of the patent life if such alternative options exist, which as described above, do in this case." Dkt. 151-3 (Bennis AT&T Rpt.) at ¶¶ 249, 251. Similarly, with respect to factors 9 and 10, Bennis explains that:

> Ordinarily, all other things being equal, a license to patented technology that does not provide significant benefits and does not represent a substantial improvement over the prior art would command a lower royalty than a license for one that does, particularly when there are simple and inexpensive noninfringing alternatives available.

*Id.* at ¶ 265. Thus, Bennis's use of Dr. van der Weide's non-infringing alternatives does not fall afoul of *Smart Path* because Bennis *does* offer "opinions regarding how the non-infringing alternatives should factor into the hypothetical negotiation." *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024 WL 1096117, at *4 (E.D. Tex. Mar. 13,

---

[8] To the extent Cobblestone is contending that Bennis should have relied upon "better" or more detailed non-infringing alternatives, those are the type of factual questions that are reserved for the jury. *E.g., Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-CV-00050-JRG-RSP, 2020 WL 2499736, at *5 (E.D. Tex. May 14, 2020).

████████████████████████████████████████████

2024). Bennis's opinions regarding non-infringing alternatives are proper, and Cobblestone's

Motion should be denied.

## V.        CONCLUSION

For the foregoing reasons, Defendants and Intervenors respectfully request that the Court

deny Plaintiff's motion in its entirety.

11

███████████████████████████████

Dated: July 17, 2024                              Respectfully submitted,


*/s/ David S. Frist*
David S. Frist (GA Bar No. 205611)
John D. Haynes (GA Bar No. 340599)
Emily C. Welch (GA Bar No. 606071)
Michael C. Deane (GA Bar No. 497195)
Sloane S. Kyrazis (GA Bar No. 878240)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Phone: (404) 881-7000
Fax:    (404) 881-7777
Email:  david.frist@alston.com
john.haynes@alston.com
emily.welch@alston.com
michael.deane@alston.com
sloane.kyrazis@alston.com

Ross R. Barton (NC Bar No. 37179)
ALSTON & BIRD LLP
101 South Tryon Street
Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: ross.barton@alston.com

Theodore Stevenson, III (TX Bar No.
19196650)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Fax:    (214) 922-3899
Email: ted.stevenson@alston.com

Katherine G. Rubschlager (CA Bar. No.
328100)
ALSTON & BIRD LLP
560 Mission St., Suite 2100
San Francisco, CA 94105
Phone: (415) 243-1000
Fax:    (415) 243-1001
Email: katherine.rubschlager@alston.com

12

Deron R. Dacus
THE DACUS FIRM
821 E SE Loop 323 Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903) 581-2543

*Attorneys for Defendants AT&T Services, Inc., AT&T Mobility LLC, and AT&T Corp.; Defendant T-Mobile USA, Inc.; Defendant Cellco Partnership d/b/a Verizon; Intervenor Ericsson Inc.; and Intervenor Nokia of America Corporation*

Deron Dacus
ddacus@dacusfirm.com
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903)581-2543
Email: ddacus@dacusfirm.com

*Attorney for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

Melissa R. Smith
melissa@gillamsmithlaw.com
Tom Gorham
tom@gillamsmithlaw.com
Gillam & Smith Llp
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*

13



**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served electronically on July 17, 2024 on all counsel who have consented to electronic service.

*/s/ David S. Frist*
David S. Frist