**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>T-MOBILE USA, INC.<br><br>*Defendant*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.,<br><br>*Defendants*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>*Defendant*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' AND INTERVENORS' OPPOSITION TO PLAINTIFF
COBBLESTONE WIRELESS, LLC'S MOTION TO EXCLUDE OPINIONS OF
<u>DEFENDANTS' EXPERT JOHANNA DWYER</u>**

███████████████████████████

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................1

    A. Ms. Dwyer's Expertise ................................................................................................1

    B. Ms. Dwyer's Report ....................................................................................................2

III. LEGAL STANDARDS ..........................................................................................................4

IV. ARGUMENTS AND AUTHORITIES ..................................................................................4

    A. Ms. Dwyer's "Sale of the Asserted Patents" Should Not Be Stricken .....................4

    B. Ms. Dwyer's Discussion of "Cobblestone's Flawed Damages Analysis" Should Not Be Stricken ..................................................................................................5

    C. Ms. Dwyer's "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost" Section Should Not Be Stricken ............................................7

    D. Ms. Dwyer's Opinions Should Not Be Stricken Because Of Alleged Overlap With The Opinions of Ms. Bennis ................................................................8

V. CONCLUSION ......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)............................................................................................4

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
   2022 WL 14318049 (E.D. Tex. Oct. 24, 2022) .....................................................................4

*Aspen Specialty Ins. Co. v. Yin Invs. United States*,
   2021 U.S. Dist. LEXIS 177478 (E.D. Tex. Aug. 9, 2021) ...................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)...............................................................................................................4

*Hearing Components, Inc. v. Shure, Inc.*,
   2008 WL 5572824 (E.D. Tex. Dec. 1, 2008).................................................................10, 11

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
   2020 WL 2499736 (E.D. Tex. May 14, 2020) ......................................................................4

*Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*,
   2022 WL 158681 (E.D. La. Jan. 18, 2022)..........................................................................11

*Mobility Workx, LLC v. Cellco Partnership d/b/a Verizon Wireless*,
   2019 WL 572181 (E.D. Tex., Nov. 5, 2019) ........................................................................5

*Thomas v. T.K. Stanley, Inc.*,
   2014 WL 12814614 (E.D. Tex. Oct. 28, 2014) ...................................................................10

**RULES**

Fed. R. Evid. 403 ....................................................................................................................10, 11

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '347 Patent | U.S. Patent No. 8,891,347 |
| '361 Patent | U.S. Patent No. 10,368,361 |
| '888 Patent | U.S. Patent No. 9,094,888 |
| Allied and Empire | Allied Inventors, LLC and Empire Technology Development, LLC |
| AT&T | AT&T Services, Inc., AT&T Corp., and AT&T Mobility LLC |
| Carrier Defendants | AT&T, T-Mobile, and Verizon |
| Intervenors | Ericsson Inc. and Nokia of America Corporation |
| Patents-in-Suit | '361, '347, and '888 Patents |
| T-Mobile | T-Mobile USA, Inc. |
| Verizon | Cellco Partnership d/b/a Verizon Wireless |

I. **INTRODUCTION**

Relying on an unreasonably narrow view of Ms. Dwyer's expertise, Cobblestone argues that the Court should strike virtually every portion of her report on the basis that it either (1) does not fit within the tiny box of "Technical Comparability" that Cobblestone has tried to put her in, or (2) is cumulative of the opinions of Ms. Bennis. Cobblestone is mistaken on both accounts. First, Ms. Dwyer is well-qualified to offer the opinions that are in her report. She has decades of experience in cellular communications and intellectual property licensing, and her opinions fall squarely within this area. Second, Cobblestone's argument regarding the alleged cumulative nature of Ms. Dwyer's testimony is premature at this stage. Even if Ms. Dwyer and Ms. Bennis have opinions in their report that touch on similar subject matter, it should be Defendants who get to decide how the testimony of their witnesses is presented to the jury in an effective and non-cumulative manner. Cobblestone should not be allowed to dictate how Defendants present their case. Cobblestone's motion should be denied.

II. **BACKGROUND**

A. **Ms. Dwyer's Expertise**

Ms. Dwyer has over 25 years of experience in the telecommunications industry. Dkt. 144-2 (Dwyer Rpt.) at ¶ 7. She has held numerous positions with responsibility for intellectual property management and licensing within the industry. *Id.* at ¶¶ 10-11. She is an expert in standardization and has decades of experience in standards development and standardization strategy. *Id.* at CV, ¶¶ 10-11, 13, 306, 326. Ms. Dwyer has even conducted studies and authored reports on essentiality rates (i.e., the exact type of studies cited by Cobblestone's expert, Mr. Dell, in his analysis). *Id.* at ¶ 14. In 2016, Ms. Dwyer founded an IP consultancy firm, QipWorks, which provides services relating to strategy, due diligence, and IP management consulting, among other things. *Id.* at ¶ 12. As a result of her substantial experience, Ms. Dwyer has been recognized as an industry-

leading intellectual property strategist, including being recognized on a list of the top 300 IP strategists in the world by Intellectual Asset Management since 2017. *Id.* at ¶ 14.

### B. Ms. Dwyer's Report

Ms. Dwyer's report is thorough. Through the ten numbered sections (I through X) of her report, she details her background and specialized knowledge, she details the facts and data she relied upon, and then applies her specialized knowledge and experience to the facts of this case. The content of Ms. Dwyer's report is perfectly in line with Fed. R. Evid. 702.

Cobblestone moved to strike certain portions of Sections V, VIII, and X of Ms. Dwyer's report. Cobblestone does not challenge Sections I-IV, VI, VII, or IX. A brief summary of each challenged section is below.

**Section V: "The Sale of The Asserted Patents."** In Section V, Ms. Dwyer discloses the facts that she relied upon, discussing the history of the asserted patents, their ownership by Allied Inventors, the background of Ms. Rudersdorf, and the sale of the Asserted Patents to Cobblestone. *See generally* Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 31-49. Based on the facts discussed in this section, Ms. Dwyer ultimately concludes that "[i]t is reasonable therefore to expect that Ms. Rudersdorf would have been able to roughly determine whether an offer to purchase a patent portfolio was reasonable, or unreasonable and therefore unacceptable." Dkt. 144-2 (Dwyer Rpt.) at ¶ 36. Ms. Dwyer similarly concluded that "[g]iven the depth of her expertise, Ms. Rudersdorf should have been able to obtain the best price in the market when monetizing the Allied Inventors patents ultimately sold to Cobblestone, and yet Ms. Rudersdorf could not recall any party other than Cobblestone making an offer to purchase the patents that Cobblestone ended up purchasing." Dkt. 144-2 (Dwyer Rpt.) at ¶ 44.

**Section VIII: "Dell's Flawed Analysis of Comparable Licenses."** In Section VIII, Ms. Dwyer again discloses the facts that she relied upon, restating and citing to portions of the Expert

Report of Mr. Dell, Cobblestone's damages expert. Ms. Dwyer makes a number of observations throughout this section, including critiques of the technical comparability analysis (or lack thereof) conducted by Dr. Williams and Mr. Dell. For example, Ms. Dwyer observes that:



Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 276-278.

Ms. Dwyer continues within Section VIII, in subsection 2, titled "Essentiality Rates versus Consideration of Value," to discuss and point out flaws in Mr. Dell's analysis where he, for example, failed to account for the difference between patents and patent families. *See e.g.,* Dkt. 144-2 (Dwyer Rpt.) at ¶ 280. Ms. Dwyer then continues to discuss various statements by Mr. Dell and the studies he relied on regarding essentiality rates – an issue for which Ms. Dwyer has "extensive expertise." Dkt. 144-2 (Dwyer Rpt.) at ¶ 290.

**Section X: "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost."** In Section X, Ms. Dwyer provides a direct rebuttal to Mr. Dell's royalty calculation based not upon economic considerations, but from the perspective of an expert on intellectual property in the cellular communications space. Indeed, Ms. Dwyer recreates Mr. Dell's royalty analyses, but does so using the correct number of U.S. SEPs that are essential to 5G

3

based on a respected study, rather than the incorrect figures used by Mr. Dell. Dkt. 144-2 (Dwyer Rpt. at ¶¶ 331-346).

### III. LEGAL STANDARDS

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In exercising its gatekeeping role, while the Court must ensure that the ultimate conclusion is based on a reliable application of a reliable method, "disagreements [] with … the factual assumptions and considerations underlying those conclusions, … go to the weight to be afforded the testimony and not its admissibility." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-CV-00126-JRG-RSP, 2022 WL 14318049, at *2 (E.D. Tex. Oct. 24, 2022) ("the Court's role under Daubert is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role"). Complaints that an expert "uses different underlying facts" than the challenger would "are not criticisms of methodology" and are not a basis for exclusion. *E.g., Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-CV-00050-JRG-RSP, 2020 WL 2499736, at *5 (E.D. Tex. May 14, 2020).

### IV. ARGUMENTS AND AUTHORITIES

#### A. Ms. Dwyer's "Sale of the Asserted Patents" Should Not Be Stricken

Cobblestone argues that the section of Ms. Dwyer's report titled "Sale of the Asserted Patents should be stricken because it is does not recite any opinions or conclusions. Cobblestone is incorrect. While Ms. Dwyer does discuss the facts of the case, the facts she discusses were used to support her ultimate conclusions on Ms. Rudersdorf and the level of her experience in patent licensing. As noted above, the opinions provided by Ms. Dwyer include, for example, that "[i]t is reasonable therefore to expect that Ms. Rudersdorf would have been able to roughly determine whether an offer to purchase a patent portfolio was reasonable, or unreasonable and therefore

4

unacceptable." (Dwyer Rpt. at Para. 36). Ms. Dwyer similarly concluded that "[g]iven the depth of her expertise, Ms. Rudersdorf should have been able to obtain the best price in the market when monetizing the Allied Inventors patents ultimately sold to Cobblestone, and yet Ms. Rudersdorf could not recall any party other than Cobblestone making an offer to purchase the patents that Cobblestone ended up purchasing." Dkt. 144-2 (Dwyer Rpt.) at ¶ 44.

These are opinions are based upon Ms. Dwyer's substantial knowledge and experience in the licensing of intellectual property and are not merely a recitation of facts, as Cobblestone suggests. Cobblestone recognizes this, which is why, in footnote 5, it claims that Ms. Dwyer cannot give these opinions because she is "not an expert in patent licensing or economic matters." But Ms. Dwyer's opinions in this section have nothing to do with "economic matters."[1] Further, Ms. Dwyer is an expert in patent licensing. Ms. Dwyer has extensive experience in the field, she has been involved in IP licensing for decades, and is recognized in the industry as an expert in such matters. Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 10-15. Ms. Dwyer's opinions are thus within the scope of her expertise.

### B. Ms. Dwyer's Discussion of "Cobblestone's Flawed Damages Analysis" Should Not Be Stricken

Cobblestone next argues that the majority[2] of Ms. Dwyer's Cobblestone's Flawed Damages Analysis" section should be stricken because Ms. Dwyer is not an economist. Cobblestone's entire analysis of this section is premised upon the mischaracterization of Ms.

---

[1] Even if Ms. Dwyer's opinions involve "economic matters," Ms. Dwyer is not required to have a degree in economics, and her experience qualifies her to give the opinions expressed in her report. *See Mobility Workx, LLC v. Cellco Partnership d/b/a Verizon Wireless*, No. 4:17-cv-00872, 2019 WL 572181 (E.D. Tex., Nov. 5, 2019) (finding expert with degrees in computer, electrical, and electronics engineering qualified to provide testimony on the value of the asserted patent, despite the expert's "less-than-sterling" credentials.").

[2] Cobblestone does not challenge the subsection titled "Dell and Williams Provide No Evidence that the Asserted Patents are Technically Comparable."

Dwyer's opinions as "economic." They are not. Throughout this section of her report, Ms. Dwyer recounts the relevant paragraphs from the reports of Mr. Dell and Dr. Williams and provides critiques that are well within the area of "technical comparability," which Cobblestone admits is her bailiwick.

Indeed, in the very paragraphs cited by Cobblestone, Ms. Dwyer comments on and provides observations relating to technical comparability. *See e.g.*, Dkt. 144-2 (Dwyer Rpt.) at ¶ 247 ("Mr. Dell has adopted a repetitive, formulaic approach which lacks rigor and specifically any consideration of the patents in each agreement he has asserted is a comparable license."). Ms. Dwyer makes similar observations in Paragraphs 242, 244, and 249.

Another example can be found in Paragraph 251 of Ms. Dwyer's report, to which Cobblestone also cites. But here, too, while Ms. Dwyer reviewed and summarized Mr. Dell's opinions, those opinions ultimately conclude with Mr. Dell relying on statements from Dr. Williams regarding technical comparability. Again, as Cobblestone has repeatedly acknowledged, this is well within the scope of opinions that Ms. Dwyer is indisputably qualified to provide. The same is true in Paragraph 260 and 261 of Ms. Dwyer's report. Yet, Cobblestone seeks to strike these too.

Further, while Cobblestone asks the Court to entirely strike large swaths of Mr. Dwyer's report, Cobblestone never discusses many of them in its motion. For example, Cobblestone never discusses a subsection entitled "Summary of Mr. Dell's Selection of Allegedly Comparable Licenses," in which Ms. Dwyer provides a summary of how Mr. Dell arrived at his royalty calculation. Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 264-271. This section sets up and is directly relevant to the next section in her report, "Dell and Williams Provide No Evidence that the Asserted Patents are Technically Comparable," which Cobblestone has not challenged. It is illogical and

inconsistent with Rule 702 for Cobblestone to argue that Ms. Dwyer is allowed to have opinions on technical comparability, but somehow not allowed to explain how she arrived at them.

Cobblestone also never discusses the sub-section titled "Essentiality Rates versus Consideration of Value," yet, through its over-inclusive generalizations, nevertheless asks the Court to strike that too. This section of Ms. Dwyer's report directly addresses and rebuts Mr. Dell's use of an essentiality rate that he allegedly derived from several studies. Dkt. 144-2 (Dwyer Rpt. at ¶¶ 279-297. This analysis is well within Ms. Dwyer's expertise. As she explained in her report, she has "extensive expertise in this area," and even co-authored a study published in the Journal of Licensing Executives Society regarding essentiality rates. Dkt. 144-2 (Dwyer Rpt.) at ¶ 290.

Finally, Cobblestone points to a single paragraph (301) from a section titled "Changing the Royalty Base" from Ms. Dwyer's report, while again asking the Court to strike the entire section. Once again, opinions in this subsection are directly within Ms. Dwyer's expertise. For example, Ms. Dwyer points out that Mr. Dell derived a per-patent royalty rate from licenses listing patent families, but never accounted for the difference between a patent and a patent family. This is perfectly within Ms. Dwyer's expertise, and is further explained in her report in Section X.C, titled "Licensing Cost of Infrastructure Equipment According to Cobblestone's Damages Analysis," which Cobblestone does not challenge. The remainder of the section relates to the technological difference between infrastructure equipment and the services provided by carriers. Again, this is within Ms. Dwyer's expertise.

    **C.    Ms. Dwyer's "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost" Section Should Not Be Stricken**

Cobblestone argues that Ms. Dywer's opinions regarding the implications of Mr. Dell's damages model should be excluded, calling them a "royalty stacking" opinion. Cobblestone is

7

wrong. Ms. Dwyer's opinions are a direct rebuttal to the methodology employed by Mr. Dell, who chose to calculate a rate for what he claimed were essential Ericsson patents, and then apply that to the patents in this case. Ms. Dwyer's opinions are a direct rebuttal, pointing out that Mr. Dell's analysis failed to account for the true number of essential patents, and explaining the logical consequences of Mr. Dell's mistake.

Ms. Dwyer never opines that the carriers could not pay the royalty because of a royalty stack, and, contrary to what Cobblestone suggests in its motion, never says anything about the implications on what a juror would have to pay on their monthly cell phone bill (see Mtn. at 9 stating that Ms. Dwyer "introduces the additional scare tactic of telling the jury . . . What the Americans pay on average for their monthly cell phone bill."). Ms. Dwyer will also not do so at trial. Accordingly, both the caselaw cited by Cobblestone regarding royalty stacking and the Court's MIL 19 are inapplicable here.

Cobblestone's expert chose to come up with a royalty rate based on a value he ascribed to all Ericsson patents he deemed "actually essential" to 5G. Defendants should be entitled to present the flaws and logical weaknesses in that approach to the jury. The fact that Mr. Dell's royalty rate may erode some or all of the profit that the carriers currently make simply goes to the "weight of the evidence," but is proper for the jury to consider. *TCL Commc'n Tech. Holdings, Ltd.*, 2018 WL 2149736, at *6; *see also id.* at *4 ("Indeed, any juror can understand that if one infringing feature on a device demands" a significant royalty, "it may become impossible to sell a profitable device").

### D. Ms. Dwyer's Opinions Should Not Be Stricken Because Of Alleged Overlap With The Opinions of Ms. Bennis

The Court should also reject Cobblestone's argument that the opinions of Ms. Dwyer are allegedly "cumulative" of those provided by Ms. Bennis. As an initial matter, Cobblestone has

8

not established that any of the opinions expressed by Ms. Dwyer are actually cumulative of those held by Ms. Bennis and, indeed, they are not. For example, Cobblestone argues that Ms. Dwyer's "Implications of Cobblestone's Flawed Damages Analysis to Total Network Cost" section is cumulative of opinions provided by Ms. Bennis. But Ms. Dwyer undertook the substantial work of recreating the analysis included in the IPlytics report that Mr. Dell relies upon in order to calculate the number of U.S. SEPs that are essential to 5G and have a base station claim. *See* Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 335, 345. Ms. Dwyer then performs her calculations using the figures that she derived. *See* Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 338, 346. Ms. Bennis, on the other hand, used the information contained within Mr. Dell's report, as well as certain other publicly available information to perform her calculations. *See* Dkt. 144-3 (Bennis Rpt.) at ¶¶ 114-115.

Similarly, Cobblestone argues that the section of Ms. Dwyer's report titled "Ericsson's and Nokia's Leadership in Cellular Technology" is duplicative of opinions expressed by Ms. Bennis. But here, too, Ms. Dwyer performed substantial work that is not reflected in Ms. Bennis's report, including an analysis of Ericsson's and Nokia's technical contributions to 3GPP and an analysis of the distribution of basis patent IPR disclosures with respect to 3GPP Technical Specifications. *See* Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 312-313; 316-324. Ms. Dwyer also discussed the 3GPP Technical Specifications that Cobblestone specifically identified in their infringement contentions and discussed the number of basis patent IPR disclosures within those specifications. *See* Dkt. 144-2 (Dwyer Rpt.) at ¶¶ 325-327. None of these opinions are in Ms. Bennis's report.

Cobblestone also points to the section of Ms. Dwyer's report titled "Cobblestone's Flawed Damages Analysis." But within this section, Ms. Dwyer discusses essentiality rates – an area in which she has "extensive experience" – before relying on her experience to critique the opinions

9

of Mr. Dell. *See* Dkt. 144-2 (Dwyer Rpt.) at ¶ 290 ("I have extensive expertise in this area. . ."); *see also id.* at ¶ 279-297. No such opinions are found in the report of Ms. Bennis.

Further, the authority cited by Cobblestone is distinguishable. Cobblestone cites *Thomas v. T.K. Stanley, Inc.*, No. 9-12-cv-158, 2014 WL 12814614, at *2 (E.D. Tex. Oct. 28, 2014), a car accident case, where the court excluded the testimony of one of two different damages experts who were each offering differing "alternative forecasts of the future" for some of the exact same sets of damages ("medical damages and household services"). The court excluded the second cumulative expert because "the methods that Stevens applied are inaccurate and unreliable," in addition to finding his testimony unnecessarily cumulative and confusing under Fed. R. Evid. 403. *Id.* at *2. Here, Ms. Dwyer and Ms. Bennis do not suffer from methodological problems and their opinions do not contradict one another, thus there is no risk of presenting unreliable expert opinion and no risk of confusion as was present in *Thomas*.

Cobblestone also cites to *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-cv-104, 2008 WL 5572824, at *3-4 (E.D. Tex. Dec. 1, 2008). In *Hearing Components*, the defendant sought to offer testimony from two different experts on the issue of obviousness. One of the experts, however, provided little more than conclusions, and addressed only a single prior art reference, despite offering conclusions on the ultimate legal issue. *See id.* at *3. The defendant attempted to justify the bare conclusions of its expert, claiming that they would be used for the sole purpose of demonstrating the background knowledge of one of skill in the art. *Id.* at *3. The Court, however, expressed concern that defendant was "disingenuously claiming this is the reason for the testimony while actually planning to evoke testimony on the ultimate validity of the [asserted patents]." *Id.* at *3. Even if the testimony were limited in the manner proposed by the defendant, the Court noted that it would be of "marginal probative value" because the expert's opinions were "divorced

10

entirely form any analysis of the elements found in the prior art." *Id.* at *4. It was on that basis, that the Court excluded the expert's testimony, not simply that the opinions dealt with the same issue of obviousness. Similar concerns of gamesmanship are not present here, and Ms. Dwyer's opinions are far more than bare conclusions on the ultimate issue.

Moreover, "the Fifth Circuit instructs that '[t]he exclusion of evidence under Rule 403 should occur only sparingly' [and] a decision to reject 'expert testimony is the exception rather than the rule.'" *Marquette Transportation Co. Gulf-Inland, LLC v. Navigation Mar. Bulgarea*, No. CV 19-10927, 2022 WL 158681, at *4 (E.D. La. Jan. 18, 2022) (declining to exclude "overlapping" experts as cumulative, holding any concerns about cumulative evidence "can be addressed at trial"); *Aspen Specialty Ins. Co. v. Yin Invs. United States*, No. 6:20-cv-00153, 2021 U.S. Dist. LEXIS 177478, at *2 (E.D. Tex. Aug. 9, 2021) ("Arguments concerning the redundancy of testimony are better suited for resolution in the context of a pretrial motion *in limine*.")

Finally, Defendants do not intend to waste the jury's or the Court's time by presenting cumulative testimony. But to the extent that there is any overlap in the opinions of Ms. Dwyer and Ms. Bennis, it should be Defendants who decide how those issues are presented to the jury, not Cobblestone.

### V.     CONCLUSION

For the foregoing reasons, Defendants and Intervenors respectfully request that the Court deny Plaintiff's motion in its entirety.

|  |  |
|---|---|
| Dated: July 17, 2024 | Respectfully submitted,<br><br>*/s/ David S. Frist*<br>David S. Frist (GA Bar No. 205611)<br>John D. Haynes (GA Bar No. 340599)<br>Emily C. Welch (GA Bar No. 606071)<br>Michael C. Deane (GA Bar No. 497195)<br>Sloane S. Kyrazis (GA Bar No. 878240)<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street, Suite 4900<br>Atlanta, GA 30309<br>Phone: (404) 881-7000<br>Fax:    (404) 881-7777<br>Email: david.frist@alston.com<br>john.haynes@alston.com<br>emily.welch@alston.com<br>michael.deane@alston.com<br>sloane.kyrazis@alston.com<br><br>Ross R. Barton (NC Bar No. 37179)<br>ALSTON & BIRD LLP<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000<br>Telephone: (704) 444-1000<br>Facsimile: (704) 444-1111<br>Email: ross.barton@alston.com<br><br>Theodore Stevenson, III (TX Bar No. 19196650)<br>ALSTON & BIRD LLP<br>2200 Ross Avenue, Suite 2300<br>Dallas TX 75201<br>Phone: (214) 922-3400<br>Fax:    (214) 922-3899<br>Email: ted.stevenson@alston.com<br><br>Katherine G. Rubschlager (CA Bar. No. 328100)<br>ALSTON & BIRD LLP<br>560 Mission St., Suite 2100<br>San Francisco, CA 94105<br>Phone: (415) 243-1000<br>Fax:    (415) 243-1001<br>Email: katherine.rubschlager@alston.com |

Deron R. Dacus
THE DACUS FIRM
821 E SE Loop 323 Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903) 581-2543

*Attorneys for Defendants AT&T Services, Inc., AT&T Mobility LLC, and AT&T Corp.; Defendant T-Mobile USA, Inc.; Defendant Cellco Partnership d/b/a Verizon; Intervenor Ericsson Inc.; and Intervenor Nokia of America Corporation*

Deron Dacus
ddacus@dacusfirm.com
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903)581-2543
Email: ddacus@dacusfirm.com

*Attorney for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

Melissa R. Smith
melissa@gillamsmithlaw.com
Tom Gorham
tom@gillamsmithlaw.com
Gillam & Smith Llp
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*

13



## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on July 17, 2024 on all counsel who have consented to electronic service.

*/s/ David S. Frist*
David S. Frist
