**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00477-JRG-RSP |
| T-MOBILE USA, INC. | § | (Lead Case) |
| *Defendant,* | § | |
| | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors.* | § | |

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00474-JRG-RSP |
| AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP., | § | (Member Case) |
| *Defendants,* | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors.* | § | |

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-00478-JRG-RSP |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | § | (Member Case) |
| *Defendant,* | § | JURY TRIAL DEMANDED |
| NOKIA OF AMERICA CORPORATION, ERICSSON INC. | § | |
| *Intervenors.* | § | |

**<u>DEFENDANTS' AND INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION TO
STRIKE AND DAUBERT OF DR. VAN DER WEIDE (DKT. NO. 157)</u>**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ...................................................................................................................... 1

      A.   Dr. Van Der Weide's Opinions Regarding "Sub-Optimal" are Not Contrary to the Court's Order. ............................................................................................................ 1

      B.   Dr. Van Der Weide's Opinions Regarding "Frequency Spectrum Resource" is Neither New Nor Inconsistent With the Plain and Ordinary Meaning of That Term. ................................................................................................................................. 4

           1.   Dr. van der Weide does not offer a new construction of "frequency spectrum resource" ................................................................................................................ 4

           2.   Dr. van der Weide's does not introduce new validity theories according to Cobblestone's infringement contentions ....................................................................... 8

   C.   Dr. Van Der Weide's Reliance on Mr. Bishop Was Proper. ........................................... 9

III.   CONCLUSION ................................................................................................................ 11

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Biscotti Inc. v. Microsoft Corp.*,
 No. 2:13-cv-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 94037 (E.D. Tex. 2017).....................8

*Freeny v. Murphy Oil Corp.*,
 No. 2:13-CV-791-RSP, 2015 U.S. Dist. LEXIS 118735 (E.D. Tex. 2015).............................9

*Realtime Data, LLC v. Actian Corp.*,
 No. 6:15-CV-463 .............................................................................................................8

*Rehco LLC v. Spin Master, Ltd.*,
 759 F. App'x 944 (Fed. Cir. 2019) ............................................................................6

*Smart Path Connections, LLC v. Nokia of Am. Corp.*,
 No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219 (E.D. Tex. 2024)...............10, 11

*TiVo, Inc. v. Echostar Communs. Corp.*,
 516 F.3d 1290 (Fed. Cir. 2008).................................................................................8

**Table of Exhibits**

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpts of the Deposition Transcript of Daniel van der Weide, dated June 21, 2024 ("van der Weide Dep. Tr.") |

## I.   INTRODUCTION

Cobblestone's Motion to Strike and Daubert of Dr. van der Weide (Mot.) should be denied. Dkt. No. 157.

*First*, Dr. van der Weide's opinions regarding "sub-optimal" are not contrary to the Court's Order. Dr. van der Weide applied a comparative analysis to reach his conclusions about "sub-optimal," which is precisely what the Court ordered.

*Second*, Dr. van der Weide's opinions regarding "frequency spectrum resource" is neither new nor inconsistent with the plain meaning of that term. Dr. van der Weide does not offer a new construction of "frequency spectrum resource" but merely states that the accused bandwidth part identified by Plaintiff's expert does not meet the term under the plain and ordinary meaning of the term. In addition, Dr. van der Weide does not introduce new validity theories according to Cobblestone's infringement contentions. He carefully distinguished the questions directed to singular "frequency spectrum resources" and plural "frequency spectrum resources" but then did not read those limitations into the claims, as directed by basic cannons of claim construction.

*Third*, Dr. van der Weide's reliance on Mr. Bishop was proper. But even if Mr. Bishop's declaration is struck, Dr. van der Weide was a POSITA at the time of the Asserted Patents and it is unrebutted that a POSITA would have known about 3GPP and the public availability of its documents. Therefore, it is independently justifiable for Dr. van der Weide to rely on facts about 3GPP and its website to reach his ultimately conclusion of public availability.

## II.   ARGUMENT

### A.   Dr. Van Der Weide's Opinions Regarding "Sub-Optimal" are Not Contrary to the Court's Order.

As Cobblestone acknowledges, the claim requires determining whether a resource is a sub-optimal resource "*relative to other frequency  spectrum resources that are available for use by the*

1

*base station*." 361 Patent at cl. 1; Mot. at 3; Dkt. 131 at 25.  The Court notes this requirement in its Claim Construction Order, as it states that, "[c]onsidered with that modifying phrase, the term simply means 'less than optimal' compared to the other resources." Dkt. 131 at 25. In his expert report and his deposition, Dr. van der Weide opined that Cobblestone had not shown infringement because it could not show that the Accused Products determine a sub-optimal resource "relative to other frequency spectrum resources that are available for use by the base station," and he specifically testified that Cobblestone had not shown that there was any determination that a particular frequency spectrum resource was less optimal compared to the other resources. Cobblestone seeks to strike certain statements by Dr. van der Weide from his deposition as opinions related to a "new" construction.  But Dr. van der Weide's testimony simply confirms that he applied a comparative analysis in determining if a resource is less than optimal compared to other resources.

For example, in the challenged testimony, Dr. van der Weide explained that *there has to be a comparison* between resources:



Ex. 1 (van der Weide Dep. Tr.) at 133:1-16.

Cobblestone take issue with the reference to "optimal," but it is clear from Dr. van der Weide's testimony that he was not opining that a determination of the most "optimal" resource needed to be made.  Instead, his testimony was that, in comparing two resources, one would be



"optimal" and the other "sub-optimal" for use.  In other words, the focus of Dr. Van der Weide's opinions was on the comparison, not on defining what resource must be "optimal."

Dr. van der Weide confirmed that he applied the plain and ordinary meaning of suboptimal in his infringement and invalidity analysis. When asked to explain what that meaning was, he proceeded to answer how a POSITA would have understood that term—as laid out in his report and using the exact comparison ordered by the Court:



Ex. 1 (van der Weide Dep. Tr.) at 141:19-23.

Ex. 1 (van der Weide Dep. Tr.) at 144:9-24.

He continued to insist that a comparison of the resources is the appropriate metric to determine sub-optimality:

████████████████████████

Ex. 1 (van der Weide Dep. Tr.) at 145:15-21.

Thus, Dr. van der Weide's testimony is consistent with how a POSITA would understand the plain and ordinary meaning of the term and the Court's Claim Construction Order. In each of the above instances he applied the term as meaning "less than optimal" compared to the other resources. Not once did he articulate a theory that required determining "[h]ow much less" than optimal a suboptimal resource was for infringement. (Mot. at 3).[1]

**B.      Dr. Van Der Weide's Opinions Regarding "Frequency Spectrum Resource" is Neither New Nor Inconsistent With the Plain and Ordinary Meaning of That Term.**

**1.      _Dr. van der Weide does not offer a new construction of "frequency spectrum resource"_**

Cobblestone alleges that certain testimony by Dr. van der Weide related to "frequency spectrum resource" should be excluded because it was not included in his expert report. Cobblestone's motion is premised on the idea that Dr. van der Weide limits his interpretation of "a frequency spectrum resource" in the claim to either "subframes" or a single "subcarrier." (Mot. at 4).  This is incorrect, as Dr. van der Weide did not offer that opinion.

As background, Cobblestone alleges that all frequency and all timeslots associated with two different types of "bandwidth parts" (BWPs) constitute the "first frequency spectrum resource" and the "second frequency spectrum resource."  Defendants and Intervenors disagree, arguing that the two types of BWPs share the same frequency spectrum resource.

---

[1] In Cobblestone's Motion, a request is made to strike paragraphs of Dr. van der Weide's report but Cobblestone failed to identify any particular paragraph that includes the disputed opinions. Accordingly, Cobblestone has not shown that any paragraph of Dr. van der Weide's report should be stricken.



In the testimony quoted by Cobblestone, Dr. van der Weide is opining that the accused *entire bandwidth part across all subframes* is not the "frequency spectrum resource" because that is not consistent with the plain and ordinary meaning of that term.



Ex. 1 (van der Weide Dep. Tr.) at 164:15-165:16.

That quote shows that Dr. van der Weide is not providing a definition or limiting frequency spectrum resource but is, instead, stating that the accused bandwidth parts identified by Cobblestone cannot be the "frequency spectrum resources that are described in the '361 Patent" (*i.e.*, cannot be the first frequency spectrum resource *and* the second frequency spectrum resource).

Cobblestone mischaracterizes this testimony as indicating that Dr. van der Weide was attempting to limit "a frequency spectrum resource" in the claims to "*one, and only one, subcarrier,*" but Dr. van der Weide clearly testified that he was not importing that limitation from the specification into the claim.





Ex. 1 (van der Weide Dep. Tr.) at 165:17-166:7.

Despite Cobblestone's urging to the contrary, Dr. van der Weide did not specifically define or limit a "frequency spectrum resource" *of the claims* to a single subcarrier. In each instance of testimony cited by Cobblestone, Cobblestone asked Dr. van der Weide to make a distinction between a plural and singular frequency spectrum resource. However, no party asked this Court to construe the actual claim term "a frequency spectrum resource" as "a singular frequency spectrum resource." Therefore, whether the patent claims "a singular frequency spectrum resource" or "one or more frequency spectrum resources" is not at issue in this case. *Rehco LLC v. Spin Master, Ltd.*, 759 F. App'x 944, 949 (Fed. Cir. 2019) ("We have held that as a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'").

Likewise, no party disputes that a "subframe" is a plurality of "subcarriers." This is well known in the art. Quoting the prior art, Dr. van der Weide for example states:



Dkt. 157-5 (van der Weide Op. Rpt.) ¶ 1135; *see also* Dkt. 157-5 (van der Weide Op. Rpt.) ¶ 1137 (quoting 361 Patent, cl. 9 ("assigning *the first frequency spectrum resource* to the shared resource pool comprises *assigning a physical resource block that includes multiple subcarriers*").

As a result, Dr. van der Weide was clear when he was answering questions about frequency resources whether he was answering what the patent disclosed in the singular vs. what the claim stated.



Ex. 1 (van der Weide Dep. Tr.) at 139:8-16.

Moreover (and again), he was *very* clear when asked whether he applied a "one, and only one, subcarrier, not multiple carriers" limitation *to the claims*, that he was not importing that limitation from the specification.



Ex. 1 (van der Weide Dep. Tr.) at 165:19-166:7.

Therefore, Dr. van der Weide is not offering a new construction of a claim term.

Finally, Dr. van der Weide set forth his opinion (that a bandwidth part is not a "frequency spectrum resource") in his report and therefore it is not new:



███████████████████████████

Dkt. 157-3 (van der Weide Reb. Rpt., Appx. C) at ¶ 110. In his report, Dr. van der Weide then goes on to quote the very same sections of the specification of the 361 Patent he quoted from in his deposition. *Id.*; *see also* ¶¶ 111-13.

### 2. Dr. van der Weide's does not introduce new validity theories according to Cobblestone's infringement contentions.

Cobblestone also argues that certain opinions should be excluded due to alleged inconsistencies between Dr. van der Weide's opinions with respect to infringement and invalidity. (Mot. at 6). Defendants' disagree that any such inconsistencies exist, but, regardless, such issues are appropriately dealt with in cross examination and are not the basis for a motion to strike. *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 94037, at *9 (E.D. Tex. 2017) ("The Court perceives no fatal, irreconcilable conflicts within Dr. Orchard's [invalidity and non-infringement opinions]. To the extent Biscotti asserts that such conflicts exist, it may vigorously cross-examine Dr. Orchard at trial.").

Moreover, Dr. van der Weide did not "disavow theories stated in his opening report" or "state new opinions in which in which the prior art does *not* disclose the actual claim limitations" during his deposition as Cobblestone alleges. (Mot. at 7). Instead, he tied the fact that Cobblestone's vague infringement contentions (which only pointed to 3GPP standards), *might* encompass Gaal's idea of a "subframe," and if so, he explained that a subframe was disclosed by Gaal. Ex. 1 (van der Weide Dep. Tr.) at 148:19-20 *("[T]o the extent that* Cobblestone's infringement contentions encompass the prior art such as Gaal . . ."). This is an unremarkable position, given he is expressly permitted to do just that. *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 U.S. Dist. LEXIS 56949, at *10 (E.D. Tex. 2017) ("[Defendant's expert] was further entitled to conduct his [invalidity] analyses in reliance on [Plaintiff's] infringement contention theories. [Plaintiff's] cited cases to the contrary are unpersuasive."); *see*

also *TiVo, Inc. v. Echostar Communs. Corp.*, 516 F.3d 1290 (Fed. Cir. 2008). Likewise, Cobblestone's implication that this issue somehow affects Dr. van der Weide's "declaration under penalty of perjury" is likewise flawed, as Dr. van der Weide was permitted to do exactly what he did. Mot. at 6 (citing Dr. van der Weide's signature page).

At most, Cobblestone's critique is that Dr. van der Weide did not expressly put the words "under Plaintiff's interpretation" in certain sections of his report and then later, in his deposition, he hedged his opinion that this *might* be the case. But this does not mean he has now disavowed theories or stated new opinions subject to a *Daubert* or motion to strike. Instead, that is merely a point for cross-examination. *Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 U.S. Dist. LEXIS 118735, at *6 (E.D. Tex. 2015) ("Regarding any perceived inconsistencies between Dr. Kappelman's report and testimony, such concerns implicate the credibility of this witness and not the reliability of his methodology.").

### C.    Dr. Van Der Weide's Reliance on Mr. Bishop Was Proper.

As Cobblestone admits, if the Court denies Cobblestone's separate motion against Mr. Bishop (which it should), then this portion of its Motion to Strike is moot. (Mot. at 9 (moving because "[i]f the Bishop motion is granted in full or in part, the corresponding parts of Dr. van der Weide's report should also be struck because he relies on unreliable and struck evidence"). Moreover, if Mr. Bishop's declaration is only struck on timeliness grounds, then Dr. van der Weide can still rely on the testimony as reliable, even if deemed to be untimely.

However, regardless of the outcome of Cobblestone's separate motion against Mr. Bishop, Dr. van der Weide should still be permitted to testify about the public availability of prior art references because he separately undertook an analysis of their public availability. Contrary to Plaintiff's assertion, Dr. van der Weide does not rely *exclusively* on Mr. Bishop gathering evidence and Mr. Bishop's testimony about the evidence.

███████████████████████████████

Instead, the *unrebutted* testimony from Dr. van der Weide is that "[p]rior to the earliest alleged priority dates of the Asserted Patents a POSITA would have been familiar with the Third Generation Partnership Project (3GPP)." Dkt. 157-5 (van der Weide Op. Rpt.) at ¶ 43. Cobblestone does not disagree with this fact, and since Dr. van der Weide is (again *unrebutted*) a POSITA at the time of the Asserted Patents, he in fact, did know of the 3GPP standards body. *Id.* Therefore, facts such as "[w]ith respect to 3GPP Technical Specifications, it was widely known that Technical Specifications were publicly available on 3GPP's website" are known to Dr. van der Weide even without relying on Mr. Bishop and even without specifically participating in any meeting. Dkt. 157-5 (van der Weide Op. Rpt.) at ¶ 716. As a result, Dr. van der Weide as a POSITA is competent to testify about what a POSITA would have known. This would have included facts such as



Dkt. 157-5 (van der Weide Op. Rpt.) at ¶ 716; *see also* ¶ 717-18. The same is true of the remaining paragraphs cited in Cobblestone's motion.

The mere fact that Dr. van der Weide did not personally undertake this task at the time of the Asserted Patents does not mean a POSITA would not have known about it. But even so, an expert's personal "underlying level of knowledge on the issue at hand is best explored on cross-examination as it fundamentally goes to reliability." *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219, at *17 (E.D. Tex. 2024).

Finally, the fact Dr. van der Weide does not personally know about the facts at the time of the Asserted Patents does not make the facts themselves inherently unreliable. At best the facts stated on the website could be argued as hearsay (they are not), but that is irrelevant because it is black letter law Dr. van der Weide can rely on hearsay in reaching his opinions. *Smart Path*, 2024 U.S. Dist. LEXIS 44219, at *17 ("It is black-letter law that an expert may rely on hearsay testimony.").

Therefore, there is no justifiable basis to strike Dr. van der Weide's opinions on public availability.

## III.  CONCLUSION

For these reasons, Defendants and Intervenors respectfully request Cobblestone's motion be denied.

Dated: July 17, 2024                    Respectfully submitted,

                                        */s/ David S. Frist*
                                        David S. Frist (GA Bar No. 205611)
                                        John D. Haynes (GA Bar No. 340599)
                                        Emily C. Welch (GA Bar No. 606071)
                                        Michael C. Deane (GA Bar No. 497195)
                                        Sloane S. Kyrazis (GA Bar No. 878240)
                                        ALSTON & BIRD LLP
                                        1201 West Peachtree Street, Suite 4900
                                        Atlanta, GA 30309
                                        Phone: (404) 881-7000
                                        Fax:    (404) 881-7777
                                        Email:  david.frist@alston.com
                                        john.haynes@alston.com
                                        emily.welch@alston.com
                                        michael.deane@alston.com
                                        sloane.kyrazis@alston.com

                                        Ross R. Barton (NC Bar No. 37179)
                                        ALSTON & BIRD LLP
                                        101 South Tryon Street

11

Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: ross.barton@alston.com

Theodore Stevenson, III (TX Bar No.
19196650)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Fax:    (214) 922-3899
Email: ted.stevenson@alston.com

Katherine G. Rubschlager (CA Bar. No.
328100)
ALSTON & BIRD LLP
560 Mission St., Suite 2100
San Francisco, CA 94105
Phone: (415) 243-1000
Fax:    (415) 243-1001
Email: katherine.rubschlager@alston.com

Deron R. Dacus
THE DACUS FIRM
821 E SE Loop 323 Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903) 581-2543

*Attorneys for Defendants AT&T Services,
Inc., AT&T Mobility LLC, and AT&T
Corp.; Defendant T-Mobile USA, Inc.;
Defendant Cellco Partnership d/b/a
Verizon; Intervenor Ericsson Inc.; and
Intervenor Nokia of America Corporation*

Deron Dacus
ddacus@dacusfirm.com
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903)581-2543
Email: ddacus@dacusfirm.com

12

*Attorney for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

Melissa R. Smith
melissa@gillamsmithlaw.com
Tom Gorham
tom@gillamsmithlaw.com
Gillam & Smith Llp
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*



**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was served by e-mail on July 17, 2024 on all counsel who have consented to electronic service.

*/s/ David S. Frist*
David S. Frist