# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>T-MOBILE USA, INC.<br><br>*Defendant*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.,<br><br>*Defendants*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>JURY TRIAL DEMANDED |
| COBBLESTONE WIRELESS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>*Defendant*,<br><br>NOKIA OF AMERICA CORPORATION, ERICSSON INC.<br><br>*Intervenors*. | § § § § § § § § § § § § § § | CASE NO. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' AND INTERVENORS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF STEPHEN E. DELL UNDER FED. R. EVID. 702 AND *DAUBERT***

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................1

II.  ARGUMENT ..................................................................................................................1

    A.   Dell's Royalty Base is Unreliable ........................................................................1

    B.   Dell Improperly Relies on the EMVR and Does Not Apportion ..........................2

    C.   Dell's Disregards Market Valuations ...................................................................3

    D.   Dell Violates Federal Circuit Precedent Through Use of a 3% to 5% "Rule Of Thumb" ...........................................................................................................4

III. CONCLUSION ................................................................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Exafer Ltd. v. Microsoft Corp.*,
  No. 1:20-CV-131-RP, 2024 WL 1087374 (W.D. Tex. Mar. 7, 2024) ...... 4

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
  No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ...... 5

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ...... 3

*Odyssey Wireless, Inc. v. Apple Inc.*,
  No. 15-CV-01735-H-RBB, 2016 WL 7644790 (S.D. Cal. Sept. 14, 2016) ...... 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  904 F.3d 965 (Fed. Cir. 2018) ...... 2, 3

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
  No. CV 17-1734-RGA, 2021 WL 982729 (D. Del. Mar. 16, 2021) ...... 5

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983) ...... 1, 2

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...... 4

**RULES**

Local Rule CV-5(a)(7) ...... 8

Rule 702 ...... 4, 5

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| AT&T | AT&T Services, Inc., AT&T Corp., and AT&T Mobility LLC |
| Carrier Defendants | AT&T, T-Mobile, and Verizon |
| EMVR | Entire Market Value Rule |
| Intervenors | Ericsson Inc. and Nokia of America Corporation |
| Patents-in-Suit | '361, '347, and '888 Patents |
| T-Mobile | T-Mobile USA, Inc. |
| Verizon | Cellco Partnership d/b/a Verizon Wireless |

**Note:**

All quoted emphasis is added unless otherwise noted

I. **INTRODUCTION**

Cobblestone's opposition distorts both the law and facts related to Dell's opinions in arguing for their admission under *Daubert*. But a close review of Cobblestone's arguments makes clear that Dell's opinions are precisely the sort of unreliable opinions that the Court should use its gatekeeping function to exclude. For the following reasons, the Court should grant Defendants' and Intervenors' motion in full.

II. **ARGUMENT**

A. **Dell's Royalty Base is Unreliable**

Cobblestone argues that Dell's opinions do not run afoul of *Broadcom* because he conducted only a single hypothetical negotiation, not two. Opp. at 8-11. In doing so, Cobblestone ignores the Federal Circuit's holding in *Sitckle*. *Stickle* involved a hypothetical negotiation over taco-frying technology used in the food industry. *Stickle v. Hueblein, Inc.*, 716 F.2d 1550, 1553–54, 1561 (Fed. Cir. 1983). The plaintiff sought a per-use royalty from a user of the infringing machines based on the number of taco shells the user created, despite evidence showing "the food processing industry did not . . . utilize use royalties in connection with machines for producing food." *Id*. at 1561. In overturning the per-use royalty, the Federal Circuit held: "[s]ince there is no evidence that users in the food industry upon purchase of food processing equipment also expect to pay a use royalty . . ., a willing licensor could not have reasonably expected to secure a use royalty from either the maker or user." *Id*. at 1562. In doing so, the Federal Circuit rejected the very argument Cobblestone advances now—that it does not matter what royalty the manufacturers of the accused base stations would pay for a license to Cobblestone's patents:

> [I]n a suit against a user, we cannot simply hypothesize what a reasonable user would pay apart from considerations of what royalty a maker would pay and what rights would flow to the user if the maker had a license. Simply stated in terms of this case, the quantum of [plaintiff's] recovery for an infringing fryer does not depend on whether [the user] or [the manufacturer] is the defendant. Rather, it

1

> depends on what royalty reasonably would have resulted from negotiations where a willing licensor was aware that [the manufacturer] would make and [the user] would use the fryer.

*Id*. This is true even where, like here, the plaintiff sued only the user of the accused equipment and not the manufacturer. Further, Cobblestone confirms that each of Dell's licenses "were tied to Ericsson's economic benefit from sale of ***infrastructure equipment***" but applies that rate not to the sales of infrastructure equipment to the Defendants, but instead to the revenues generated by Defendants use of that equipment. Dell's improper royalty base is fatal to his entire methodology.

### B. Dell Improperly Relies on the EMVR and Does Not Apportion

Cobblestone's opposition both misstates Dell's actual methodology and fails to understand the contours of the EMVR. First, what Cobblestone and Dell call "apportionment" is instead Dell's attempt to remove unaccused products from the royalty base. What Cobblestone neglects to mention is that after attempting to remove unaccused revenues from his damages base, Dell went no further. The Federal Circuit requires more: "we have required that royalties be apportioned between the infringing and non-infringing ***features*** of the product." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). Dell made no attempt to remove any of the value associated with unaccused ***features*** such as the value of the core network, or value provided by the Defendants outside of communication services (such as customer support, free video streaming, etc.).

While Cobblestone claims Dell "*does* exclude subscriber value attributable to the core telephone network and other conventional or non-infringing 5G technologies," Opp. at 12, its attempt to paper over Dell's failures rings hollow. Nowhere in Dell's apportionment analysis does he even mention the core network. Cobblestone's opposition confirms this; when describing Dell's methodology, Cobblestone repeatedly emphasizes how Dell sought to remove unaccused 5G technology ***at the base station*** level. Opp. at 1-5. Cobblestone cannot point to any evidence of

2

Dell's consideration of the multitude of other features comprising the core network, nor does Cobblestone identify any other evidence of apportionment.

Second, in an attempt to avoid the application of the EMVR, Cobblestone incorrectly claims that Dell cannot have violated the EMVR because "Dell does *not* use all subscribers, or all subscriber revenue, as his royalty base." Opp. at 12. That is not the law. The EMVR prohibits "use of the entire market value of a multi-component product that includes a patented component." *Power Integrations, Inc.*, 904 F.3d at 977. "[O]ne way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). That Dell reduces the number of customers-months (*i.e.*, products) that he applies his rate to, does not change the fact that "the royalty was expressly calculated as a percentage of the entire market value of [the Defendants' network service] . . .. This, by definition, is an application of the entire market value rule." *Id.* The moment Dell chose to start his analysis with the Carrier Defendants' service revenue, he subjected his analysis to the strictures of the EMVR. Because Cobblestone does even try to defend the use of EMVR, Dell's opinions using carrier revenue should be excluded.

### C. Dell's Disregards Market Valuations

Cobblestone defends Dell's decision to ignore the only agreement involving the Patents-in-Suit by claiming it is not economically comparable and that Dell's opinion is not grounds to exclude his analysis. Opp. at 13. To the contrary, Dell's disregard of the purchase price of the Patents-in-Suit is strong evidence of the methodological flaws that pervade his report.[1]

---

[1] To be sure, as made clear in their motion, Defendants and Intervenors are not advancing the position that the purchase price represents a solid cap on damages, but instead is demonstrative of the unreliability of Dell's purported analysis.

3

Under the revised Rule 702, the Court must ensure not only that Dell's methodology is reliable, but that his conclusion reflects a reliable application of that methodology. *Exafer Ltd. v. Microsoft Corp.*, No. 1:20-CV-131-RP, 2024 WL 1087374, at *1 (W.D. Tex. Mar. 7, 2024).

### D. Dell Violates Federal Circuit Precedent Through Use of a 3% to 5% "Rule Of Thumb"

Federal Circuit law is clear, "[i]f the patentee fails to tie the theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). Like the 25% rule of thumb in *Uniloc*, Dell's 3% to 5% rule of thumb is not tied "to the facts of the case at issue," and is inadmissible under *Daubert*. *Id.* The most Cobblestone can muster to tie Ludlow's 3% to 5% statement to this case is that it relates to "electronics." Opp. at 14.

As an initial matter, Ludlow's statement that "3% - 5% of patents in a large portfolio are valuable" says nothing to limit those patents to electronics. Dkt. 156-13. That is merely the *post hoc* rationalization of Cobblestone's counsel. Moreover, even if his proposed rule of thumb did relate to electronics, it is based on **no analysis whatsoever**. ***Nothing***. Instead, it is the sort of "abstract and largely theoretical construct" which "does not say anything about a particular hypothetical negotiation or reasonable royalty involving any particular technology, industry, or party," which the Federal Circuit prohibits. *Uniloc*, 632 F.3d at 1317. Worse yet, it is an abstract statement—free from any data or analysis—made by somebody without any qualifications to speak on the issue. Mr. Ludlow ran a reverse engineering company, Chipworks, that would disassemble and test electronics to assist in pre-filing diligence. Dkt. No. 156-13 (Ex. M) at 10-11. Without any expertise, any data, or any analysis, Mr. Ludlow's statement is a grossly unreliable basis for Dell's "3% - 5%" analysis.

4

None of Cobblestone's cited authority saves Dell's use of Ludlow's "rule of thumb." Each cited case addresses the use of Shankerman's skewed distribution analysis in determining the value of patents. *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982729, at *5 (D. Del. Mar. 16, 2021); *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-CV-01735-H-RBB, 2016 WL 7644790, at *11-12 (S.D. Cal. Sept. 14, 2016); *In re Innovatio IP Ventures, LLC Pat. Litig.*, No. 11 C 9308, 2013 WL 5593609, at *43 (N.D. Ill. Oct. 3, 2013). While Defendants and Intervenors dispute the reliability of Shankerman's methodology, the Shankerman article was not the basis for the that "3% - 5%" number that Dell uses to calculate the royalty. To the contrary, if Dell followed the Shankerman methodology, his calculated royalty would have been orders of magnitude smaller. Instead, the **only source** for Dell's "3% - 5%" rule of thumb analysis that he uses to drive up the calculated royalty owed is the Ludlow article.

Furthermore, Dell takes Ludlow's statement that only 3% to 5% of patents are **valuable** and then applies this rule of thumb to an entirely different issue: what percentage of declared patents are **actually essential** to a standard. Opp. at 14-15. While Cobblestone claims that "essentiality makes a patent more valuable," Opp. at 15, it does not follow that value is an appropriate proxy for determining the number of essential patents in a portfolio. Dell uses an arbitrary input and applies it in an arbitrary way. This must be excluded.[2]

### III. CONCLUSION

Cobblestone fails to meet its burden under Rule 702 and *Daubert* to show that both Dell's methodology, and his resulting conclusions, are reliable. Thus, Defendants and Intervenors respectfully request that the Court exclude Dell's damages opinions.

---

[2] Dell's use of the 3% to 5% rule of thumb infects his overall damages model and requires exclusion of both his use of the model, and his ultimate opinions derived therefrom.

Respectfully submitted: July 25, 2024

/s/ David S. Frist
David S. Frist
  David.Frist@alston.com
John Daniel Haynes
  John.Haynes@alston.com
Emily Welch
  Emily.Welch@alston.com
Michael Clayton Deane
  Michael.Deane@alston.com
Sloane Sueanne Kyrazis
  Sloane.Kyrazis@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
404-881-7000
Fax: 404-881-7777

Ross Ritter Barton
  Ross.Barton@alston.com
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
704-444-1287
Fax: 704-444-1111

Theodore Stevenson, III
  Ted.Stevenson@alston.com
Adam Ahnhut
  Adam.ahnhut@alston.com
ALSTON & BIRD LLP
2200 Ross Ave
Suite 2300
Dallas, TX 75201
214-922-3507
Fax: 214-922-3899

*Attorneys for AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, T-Mobile USA, Inc., and Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

6

**Deron Dacus**
ddacus@dacusfirm.com
**The Dacus Firm**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
903-705-1117
Fax: 903-581-2543

*Attorney* for *AT&T Services, Inc., AT&T Corp., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Ericsson Inc. and Nokia of America Corporation*

**Melissa R. Smith**
melissa@gillamsmithlaw.com
**Tom Gorham**
tom@gillamsmithlaw.com
**Gillam & Smith LLP**
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for T-Mobile USA, Inc.*

7



## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on July 25, 2024 on all counsel who have consented to electronic service.

*/s/ David S. Frist*
David S. Frist
