IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendants,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT REGARDING VALIDITY OF '361 PATENT**

**TABLE OF CONTENTS**

I. Introduction. .................................................................................................................. 1

II. Argument ...................................................................................................................... 1

    A. This Court Can Properly Consider the Board's Decision Denying Institution as Persuasive Authority and Grant Summary Judgment by the Same Reasoning. .......... 1

    B. The Evidence in the Prior Art Cited in the Opposition and in the Non-Conclusory Opinions of Dr. van der Weide Fails to Establish a Legally Permissible Mapping of the Prior Art onto the Challenged Claims. ................................................................. 1

        1. The prior art does not "in response to the determination that the first frequency spectrum resource is the sub-optimal resource, assign the first frequency spectrum resource to a shared resource pool" (limitations [10.d] and [17.d]) ... 2

        2. The prior art does not "determine, based on the quality status [of the first frequency spectrum resource], that the first frequency spectrum resource is a sub-optimal resource" (limitations [10.c] and [17.b]) ........................................ 5

        3. The prior art does not "determine . . . that the first frequency spectrum resource is a sub-optimal resource, for the uplink channel and the downlink channel" (limitations [10.c] and [17.b]) .............................................................................. 7

        4. Each of the Above Arguments Applies to the Combination of Gaal with TS 36.211, Even if Mr. Bishop's Opinions Are Considered, Which They Should Not Be. ........................................................................................................................ 7

III. Conclusion ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................... 4

*Medichem, S.A. v. Rolabo, S.L.*,
  437 F.3d 1157 (Fed. Cir. 2006) .................................................................................. 1

**I.      INTRODUCTION**

Defendants and Intervenors present a mapping of the prior art disclosures onto the challenged claims that fails to meet the plain limitations of the claims, as properly construed. The PTAB recognized this failure, and this Court can and should reach the same conclusion as the PTAB. There is no material dispute as to what the asserted prior art actually discloses. Defendants and Intervenors cannot defeat summary judgment with the conclusory statements of its expert or by simply citing to pages and pages of the prior art and the expert's report without offering a cogent argument. Summary judgment should be granted.

**II.     ARGUMENT**

**A.     This Court Can Properly Consider the Board's Decision Denying Institution as Persuasive Authority and Grant Summary Judgment by the Same Reasoning.**

As Cobblestone expressly stated in its opening brief, the PTAB's decision denying institution is not binding on this Court. Cobblestone does not rely in its motion on any theory of estoppel or contend that the PTAB's decision itself establishes a lack of a genuine material fact.

But nothing in the cases that Defendants and Intervenors cite or the arguments that they make changes the fact that this Court may—and should—consider the PTAB's decision as persuasive authority. It is entirely proper for Cobblestone to bring to the Court's attention a well-reasoned decision by a panel of specialist Administrative Patent Judges addressing the same and similar prior art grounds. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1163 (Fed. Cir. 2006) ("While appellant does not argue that the Board decision has a binding effect on this court, Board decisions nevertheless represent the views of a panel of specialists in the area of patent law.")

**B.     The Evidence in the Prior Art Cited in the Opposition and in the Non-Conclusory Opinions of Dr. van der Weide Fails to Establish a Legally Permissible Mapping of the Prior Art onto the Challenged Claims.**

This motion for summary judgment is not a matter of dueling or disputed facts, as

1

Defendants and Intervenors suggest. Rather, the question before the Court is whether Defendants and Intervenors have presented a mapping of the prior art onto the limitations of the claims that meets the plain requirements of the claim language and does so in a self-consistent way. The correct answer to that question is that they have failed to do so.

Limitations [10.c] and [10.d] are interrelated, in that [10.c] requires a "determin[ation]," and [10.d] requires "assign[ment]" "in response to the determination." Defendants and Intervenors must present a theory of invalidity that maps the prior art in a consistent way to both of these limitations. In particular, the "determination" must be the same for both limitations, and what it means for the first frequency spectrum resource to be "a sub-optimal resource" must be the same. This must also be true for limitations [17.b] and [17.d].

Defendants and Intervenors have failed to present such a consistent, legally valid mapping of the prior art onto limitations [10.c] and [10.d] (and correspondingly onto limitations [17.b] and [17.d]). This is most easily seen by considering the limitations in reverse order.

> **1. The prior art does not "in response to the determination that the first frequency spectrum resource is the sub-optimal resource, assign the first frequency spectrum resource to a shared resource pool" (limitations [10.d] and [17.d])**

In its opening brief, Cobblestone noted that Dr. van der Weide opined that "the flexible resources constitute the first frequency spectrum resource that is assigned to the shared resource pool." (Mot. at 16, citing Ex. A at ¶ 1175.) Cobblestone also quoted testimony from Dr. van der Weide's deposition confirming that in his opinion the shared resource pool "are the flexible subframes of Gaal." (Mot. at 16, citing Ex. E at 151:6–10.) Based upon these clear statements from Dr. van der Weide, Cobblestone argued that "[a]ccording to Dr. van der Weide, the flexible subframes are in the purported 'shared resource pool' simply because they are flexible, not because of some determination that they are sub-optimal." (Mot. at 16.)

2

Defendants and Intervenors call this argument "misleading." (Opp. at 15.) But this is plainly exactly what Dr. van der Weide says in his expert report. He argues that all flexible subframes satisfy the construction of "shared resource pool." (Ex. A at ¶ 1174.) He then argues that all flexible subframes "are 'sub-optimal' as compared to fixed subframes." (Ex. A at ¶ 1175.) Based on these facts, and not based upon any CSI/CQI or other interference measurement, he concludes that "the flexible resources constitute the first frequency spectrum resource that is assigned to the shared resource pool."

Nothing that Defendants and Intervenors point to in their four bulleted points on page 16 of their opposition brief demonstrates otherwise. The first bullet point refers to scheduling subframes that are already designated as flexible subframes to uplink or downlink "based on . . . interference considerations." (Opp. at 16.) But this scheduling of subframes that are already flexible subframes to uplink or to downlink does not assign resources *to a shared resource pool*. Hence, it is not evidence of an assignment that satisfies limitation [10.d] or [17.d].

The second and third bullet points cite to Dr. van der Weide's discussion of limitation [10.c] and at most suggests that measurements of interference using CSI/CQI would occur and that comparisons of CQI values could occur. (Opp. at 16.) The opposition provides no evidence that subframes would be assigned as flexible subframes—or otherwise assigned to the shared resource pool—*as a result of* such interference measurements or comparisons. It thus provides no evidence of an assignment that satisfies limitation [10.d] or [17.d].

Finally, the fourth bullet point cites again to Dr. van der Weide's discussion of limitation [10.c] and quotes his conclusion that Gaal "disclose[s]" a flexible subframe that "has been ranked accordingly based on the CSI reporting." (Opp. at 16.) Dr. van der Weide's conclusion that Gaal's flexible subframes are ranked based on CSI reporting is unsupported by any of the evidence that

3

he cites. The only direct support he cites is Gaal ¶[0076]. (Ex. A, ¶ 1169.) But while that paragraph of Gaal mentions the possibility of interference, it says nothing about measuring that interference, let alone about ranking subframes based upon such measurements. (Ex. C, ¶[0076].) Indeed, the only evidence he cites that even mentions ranking of resources are quotes from the '361 patent itself, describing its preferred embodiments. (Ex. A, ¶ 1168.) The fact that the *'361 patent* discloses ranking subcarriers based upon CQI measurements is not by itself evidence that the *Gaal* reference discloses ranking subframes based upon CSI reporting. Ultimately, Dr. van der Weide's opinion that Gaal "disclose[s]" a flexible subframe that "has been ranked accordingly based on the CSI reporting" is a conclusory opinion, unsupported by actual evidence concerning the prior art. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

More importantly, even if the Court accepts Dr. van der Weide's *ipse dixit* conclusion cited in the fourth bullet point, the opposition provides no evidence that subframes would be assigned as flexible subframes—or otherwise assigned to the shared resource pool—as a result of any purported ranking of flexible subframes. It thus provides no evidence of an assignment that satisfies limitation [10.d] or [17.d].

Defendants' and Intervenors' single-sentence "aside" that their invalidity theory "tracks how Cobblestone views this element" for infringement (Opp. at 16) is incorrect. First, the infringement case does not involve flexible subframes. Second, in the accused products discussed in the cited paragraph from Dr. Williams's report, there is an explicit determination that one bandwidth part is sub-optimal, and in Dr. Williams's mapping of the claims, the assignment to the shared resource pool occurs directly in response to that determination. Ex. 3, ¶ 865.

4

## 2. The prior art does not "determine, based on the quality status [of the first frequency spectrum resource], that the first frequency spectrum resource is a sub-optimal resource" (limitations [10.c] and [17.b])

The opposition brief likewise fails to provide evidence that the prior art satisfies this limitation, in a way that is consistent with its mapping to other claim limitations. Defendants and Intervenors point to Dr. van der Weide's paragraphs 1167 and 1169, but these paragraphs fail to show that the prior art discloses a comparison or ranking based upon CSI measurements or CQI values, as Defendants and Intervenors contend.

As explained above, Dr. van der Weide's conclusion that Gaal's flexible subframes are ranked based on CSI reporting is unsupported by any of the evidence that he cites. While paragraph [0076] of Gaal that Dr. van der Weide cites mentions the possibility of interference, it says nothing about measuring that interference, let alone about ranking subframes based upon such measurements. (Ex. A, ¶ 1169; Ex. C, ¶[0076].) Defendants' and Intervenors' argument that the prior art discloses this comparison or ranking rests on the *ipse dixit* of Dr. van der Weide and should be rejected. *Joiner*, 522 U.S. at 146.

More fundamentally, the mapping of this purported ranking according to CSI reporting fails as a matter of law to establish obviousness because it points to something as the "determin[ation] . . . that the first frequency spectrum resource is a sub-optimal resource" in limitations [10.c] and [17.b] that is different from what Defendants and Intervenors point to as the "determination that the first frequency spectrum resource is the sub-optimal resource" in limitations [10.d] and [17.d]. As explained above, the assignment to the shared resource pool in Dr. van der Weide's mapping to limitations [10.d] and [17.d] occurs because the subframe is a flexible subframe. (*See* Ex. A at ¶ 1175; Ex. E at 151:6–10.) Defendants and Intervenors point to no evidence that a subframe is made a flexible subframe "based on" or "in response to" a ranking according to CSI reporting.

5

Indeed, Gaal and TS 36.211 do not explain how subframes are selected to be flexible subframes. As to Gaal, Defendants and Intervenors attempt to explain away their IPR petition statement that "Gaal does not provide specific details of how subframes are selected as fixed or flexible" by drawing a distinction between "specific details" and "any details." (Opp. at 3.) But they fail to show that Gaal provides "any details" of how subframes are selected as flexible subframes either. Dr. van der Weide's paragraphs 1164 and 1165 and the cited paragraphs [0071]–[0076] explain what flexible subframes are and that they can be dynamically switched between uplink and downlink. (Ex. A, ¶¶ 1164–1165; Ex. C, ¶¶[0071]–[0076].) But these paragraphs say nothing about how a subframe is selected to be flexible.

Defendants and Intervenors point to Dr. van der Weide's paragraph 1106 and its citations of Gaal's Abstract and ¶[0009]. (Opp. at 3.) But again this paragraph and the corresponding portions of Gaal say nothing about how a subframe is selected as flexible and certainly do not suggest it is based on or in response to a ranking according to CSI reporting. What Gaal ¶[0009] describes is user equipment identifying which subframes are *already* flexible, determining whether a "*current* flexible subframe" is being used for uplink or for downlink, and based upon that determination regarding a "*current* flexible subframe," performing measurement or reporting. Ex. C, ¶[0009]. This description of determinations and measurements performed regarding subframes that are already "current" flexible subframes does not explain how those subframes were selected to be flexible subframes in the first place. They certainly do not suggest that this selection is "based on" or "in response to" a ranking according to CSI reporting.

In sum, whatever "determin[ation] . . . that the first frequency spectrum resource is a sub-optimal resource" involving CSI reporting that Defendants and Intervenors might point to in limitations [10.c] and [17.b], it is not the same "determination that the first frequency spectrum

6

resource is the sub-optimal resource" that the assignment in limitations [10.d] and [17.d]—based simply on the fact that the subframe is a flexible subframe—occurs "in response to." Because Defendants' and Intervenors' mappings of the prior art to limitations [10.c] and [17.b] are inconsistent with their mappings for limitations [10.d] and [17.d], their obviousness theory fails as a matter of law.

### 3. The prior art does not "determine . . . that the first frequency spectrum resource is a sub-optimal resource, for the uplink channel and the downlink channel" (limitations [10.c] and [17.b])

While Defendants and Intervenors characterize the dispute for this limitation as one of the weight to be given to Dr. van der Weide's opinions, they fail to demonstrate any genuine dispute as to the Gaal reference's statement that making use of CQI based on CSI measurement "would be useless" if performed on an uplink subframe. (Ex. C, ¶[0085].) If anything, the opinions that they cite from Dr. van der Weide's report support this conclusion. Dr. van der Weide himself says that "CQI is primarily used for the downlink" and that a different kind of measurement "is primarily used for the uplink." (Ex. 1, ¶¶ 1060, 1067.) Accordingly, the opposition fails to present any evidence that a determination based on CSI measurement satisfies the claim requirement of determining a resource is "a suboptimal resource, *for the uplink channel* and the downlink channel."

### 4. Each of the Above Arguments Applies to the Combination of Gaal with TS 36.211, Even if Mr. Bishop's Opinions Are Considered, Which They Should Not Be.

Defendants and Intervenors mischaracterize Cobblestone's arguments concerning the combination of Gaal with TS 36.211. It is true that Mr. Bishop's opinions concerning public availability of the TS 36.211 should be stricken and summary judgment as to the combination granted on that basis. Dr. van der Weide does not offer opinions that TS 36.211 was actually publicly available that stand independently from Mr. Bishop. For example, the purported facts that

7

"a POSITA would have been familiar with [3GPP]" or that "it was widely known" that 3GPP documents were publicly available on its website do not establish that TS 36.211 was actually publicly available as of a particular date. (Ex. 1, ¶¶ 43, 716.) Indeed, Dr. van der Weide's paragraphs 716–718, cited in the opposition brief say nothing about TS 36.211 at all, instead reciting information and conclusions from Mr. Bishop concerning a different 3GPP document, TS 36.300. (Opp. at 18; Ex. 1, ¶¶ 716–718.)

What is not true, however, is Defendants' and Intervenors' assertion that Cobblestone "fails to substantively address" the combination of Gaal with TS 36.211. First, Section C of Cobblestone's statement of undisputed material facts explains that TS 36.211 does not teach flexible subframes, which are at the core of the claim limitations that Dr. van der Weide's opinions fail to satisfy. (Mot. at 6–8.) While the opposition claims many of Cobblestone's facts are disputed, it does not actually cite to any evidence that TS 36.211 teaches flexible subframes. (Opp. at 3–5.) For SUMF 16–18, the opposition purports to dispute facts about TS 36.211 with statements about "Gaal in view of TS 36.211," rather than addressing the actual facts presented by Cobblestone concerning TS 36.211 itself. (Opp. at 4.)

The opposition cites to Dr. van der Weide's paragraphs 1278 and 1281, but these do not state that TS 36.211 teaches flexible subframes. Rather, they quote TS 36.211 as stating that the TDD "uplink-downlink configuration" may vary. Ex. A, ¶¶ 1278, 1281. But Dr. van der Weide acknowledges that the "uplink-downlink configurations" referred to in TS 36.211 are the configurations listed in Table 4.2-2 and also in Gaal Fig. 6. Ex. A, ¶¶ 1282–1283; Ex. C, Fig. 6. It is undisputed that the "uplink-downlink configurations" in these tables are *fixed* subframes, not *flexible* subframes. (SUMF 11, 12, 15; Mot. at 4–6; Opp. at 2–3.) Importantly, the opposition does not dispute that the "constraints" Dr. van der Weide points to in TS 36.211 are based upon a UE

8

not being able to simultaneously receive and transmit across aggregated cells. (SUMF 20; Mot. at 7–8; Opp. at 5.) This is not a teaching about flexible subframes or measurement of interference.

In short, the addition of TS 36.211 to Gaal does not materially change Dr. van der Weide's mapping of prior art disclosures onto limitations [10.c], [10.d], [17.b], and [17.d]. The addition of TS 36.211 does not change what the flexible subframes are, how they are designated, or the way by which they are assigned to the "shared resource pool" under Defendants' and Intervenors' obviousness theories. Accordingly, Cobblestone's arguments in Sections V.B through V.D of its opening brief expressly apply equally to the combination with TS 36.211 as they do to Gaal alone. The opening brief cites both to Dr. van der Weide's analysis of Gaal alone (ending at Gaal ¶ 1262) and to his analysis of the combination (beginning at Gaal ¶ 1263). (Mot. at 14–16; Ex. A.) The brief likewise expressly and repeatedly explains how Defendants and Intervenors fail to show that the limitations at issue are "disclosed or rendered obvious by Gall or by Gall in combination with TS 36.21." (Mot. at 14–16.)

Indeed, it is Defendants and Intervenors that fail to provide a substantive argument to defeat summary judgment that is particular to the combination of Gaal with TS 36.211. The opposition only cites TS 36.211 a single time, citing a 58-page portion of the document and not saying anything of substance about what the document contains. (SUMF 16, Opp. at 4.) The opposition does not point to any disclosures in TS 36.211 that give rise to a dispute of fact or otherwise provide any reason to deny summary judgment. (Opp. at 12–19.)

### III. <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in its opening brief, Cobblestone should be granted summary judgment on the '361 patent invalidity defenses and counterclaims.

|  |  |
|---|---|
| Dated: July 25, 2024 | Respectfully submitted, |
|  | */s/ Reza Mirzaie* |

                                                Marc Fenster
                                                CA State Bar No. 181067

Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
**WARD SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,
Cobblestone Wireless, LLC***

10

.

    */s/ Reza Mirzaie*
    Reza Mirzaie

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

    */s/ Reza Mirzaie*
    Reza Mirzaie

11