IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00477-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; AT&T CORP.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00474-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |
| COBBLESTONE WIRELESS, LLC,<br>    Plaintiff,<br><br>v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS.<br>    Defendant,<br><br>NOKIA OF AMERICA CORPORATION,<br>ERICSSON INC.<br>    Intervenors. | Case No. 2:22-cv-00478-JRG-RSP<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY
OF '888 PATENT**

## TABLE OF CONTENTS

I.   ARGUMENT ................................................................................................................. 1

    A.   Defendants do not and cannot present any evidence showing obviousness of the specific "adaption manager" structure required under the Court's § 112(6) construction of Claim 20.................................................................................................................................. 1

    B.   Dr. van der Weide's conclusory, boilerplate "opinions" regarding enablement cannot establish lack of enablement. ................................................................................................ 5

    C.   Without Mr. Bishop's improper 3GPP public availability opinion, Defendants cannot assert TS 23.401 as prior art. ................................................................................................ 6

## TABLE OF AUTHORITIES

**Cases**

*Durel Corp. v. Osram Sylvania Inc.*,
   256 F.3d 1298 (Fed. Cir. 2001) ............................................................................................... 6

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
   No. 2:22-cv-125-JRG-RSP, 2023 WL 8535212 (E.D. Tex. Dec. 1, 2023) ................................ 4

*EVM Sys., LLC v. Rex Med., L.P.*,
   No. 6:13-CV-184, 2015 U.S. Dist. LEXIS 107736, 2015 WL 4911090 (E.D. Tex. Aug. 17, 2015) ........................................................................................................................................ 4

*Maxell Ltd. v. Apple, Inc.*,
   No. 5:19-cv-00036-RWS, 2020 U.S. Dist. LEXIS 248960 (E.D. Tex. Nov. 17, 2020) ............. 4

I. **ARGUMENT**

A. **Defendants do not and cannot present any evidence showing obviousness of the specific "adaption manager" structure required under the Court's § 112(6) construction of Claim 20.**

Defendants' Opposition presents an aspirational theory of obviousness, supported by Defendants' hopes and attorney arguments rather than by Dr. van der Weide's expert report or admissible evidence. It is undisputed that the Court's § 112(6) construction of "adaption manager" makes block 520 a necessary element of claim 20. Mot. at 4 ("8. ... [B]lock 520 'Adapt Coverage Area?' is a mandatory component of the corresponding structure."); Opp. at 3 (fact number 8 undisputed). Defendants cannot point to a single reference to block 520 in the invalidity report. At most, Defendants argue that Dr. van der Weide "opines on *aspects* of the 'adaption manager,'" Opp. at 4, and that he "did identify structure" in the Chitrapu reference, *id.* at 8. But opining on some "aspects" and unspecified "structure" is not enough; he needed to show disclosure or obviousness of the specific structure claimed under § 112(6), including block 520. But there is no such opinion. Defendants cannot survive summary judgment with no evidence on that limitation.

To be clear, the structure required under the Court's § 112(6) construction is not a black box that can be shown merely by talking about the claimed functions. As explained in Cobblestone's opening brief, block 520 is a "decision block" by which the adaption manager is "configured to determine *whether* to adapt the coverage area for wireless network 120." Mot. at 8 (quoting '888 Patent at 12:48-63).[1] Although not expressly recited in the functional language of Claim 20, it is undisputed that this is an essential aspect of the corresponding structure under § 112(6). Dr. van der Weide does not allege that anything in Chitrapu discloses or renders obvious this aspect of the "adaption manager" structure.

---

[1] All emphasis added unless otherwise noted.

1

As an initial matter, to clarify a mismatch of terminology in the '888 Patent and Chitrapu: the '888 Patent's "wireless network 120" corresponds to Chitrapu's "base station," not to Chitrapu's collective "network" including multiple base stations. In the '888 Patent, wireless network 120 is one of the plurality of wireless networks; specifically, it is the network that receives the handoff request from wireless network 110. *See, e.g.*, '888 Patent at 12:37-47. The adaption manager is only a part of wireless network 120, rather than being part of wireless network 110 or being a component that controls both wireless network 110 and wireless network 120. *Id.* at 12:38 ("adaption manager 122 of wireless network 120"), Figs. 1A-1C (showing "Adapt. Mgr. 122" within "Wireless Network 120").

There is nothing in the van der Weide report addressing, even indirectly, an adaption manager capable of determining whether to adapt the coverage area of its associated wireless network. To the contrary, it is undisputed that Chitrapu discloses a different, collective model in which the individual wireless networks (which Chitrapu refers to as base stations) negotiate to form a mutually beneficial beam allocation—and then, once the beam allocation has been negotiated, the individual base stations implement the plan arranged by the collective (the "network" in Chitrapu's terminology). Defendants emphasize this fact: "Dr. van der Weide explicitly explains that Chitrapu discloses 'a *negotiation* process' of a smart handover," in which "UE location data... 'is used to determine [a beam forming plan] in a manner deemed appropriate and/or optimal *by the network*.'" Opp. at 9 (quoting Ex. 1 ¶¶ 816, 697-714, 761-779, 816). There is no suggestion that Chitrapu teaches an individual base station having any agency to make the determination claimed in the '888 Patent.

And Defendants go on to confirm that in Chitrapu's disclosure "the *network* determines to adapt the coverage area," rather than an individual base station, while in the same sentence

2

admitting that "the beam former and geolocation processor" that Dr. van der Weide points to as disclosing an adaption manager are structures "of the *base station* involved in these processes." Opp. at 9. Dr. van der Weide does not identify the "network" as a structure in Chitrapu that is equivalent to the '888 Patent's "adaption manager," nor in fact does he explain any theory under which Chitrapu's "network" renders obvious an individual adaption manager with decision block 520 as required by claim 20.

Put simply, Defendants' own argument illustrates the gulf between Chitrapu's disclosure and the adaption manager of Claim 20. Chitrapu teaches collective beam adaption negotiated among a plurality of base stations, but the adaption manager of the '888 Patent makes its own determination whether or not to adapt its own beam. Defendants failed to present any evidence that it would have been obvious to bridge that gap.

Defendants' insistence on the distinction between "disclose" and "render obvious" does not help their case. Opp. at 9-10. The van der Weide Report does distinguish between the two concepts, but the disclosed opinions about the adaption manager only address disclosure, not obviousness: "Chitrapu *discloses* an adaption manager that performs the [claimed] functions"; "Chitrapu *discloses* a 'beam former'"; "Chitrapu further *discloses* that the base stations... comprise a 'geolocation processor.'" Ex. A ¶ 811 (emphasis added). Although this paragraph contains a boilerplate, conclusory statement that the adaption manager would be obvious based on "this disclosure," there is no actual analysis that the adaption manager is obvious in view of Chitrapu's disclosure. *Id.* Paragraph 811 is the best Defendants can offer, and that paragraph will not support any testimony at trial that a POSITA would find an adaption manager *with block 520* obvious in view of Chitrapu—and thus does not create a genuine issue of material fact concerning that limitation.

Defendants invoke the "fact-finding role of the jury," which of course Cobblestone deeply respects. But the jury must hear *evidence*, including expert testimony addressing each limitation of the challenged claim. There is no such evidence here. Defendants ignore the lead case cited in the Motion, this Court's recent holding in *Entropic Communications*, which reiterates that expert testimony is generally required on each issue to show invalidity. *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-125-JRG-RSP, 2023 WL 8535212, at *1-*2 (E.D. Tex. Dec. 1, 2023), *report and recommendation adopted*, 2023 WL 8534481 (E.D. Tex. Dec. 8, 2023) (discussion under heading "EXPERT TESTIMONY IS GENERALLY NECESSARY TO SHOW INVALIDITY").

Instead, Defendants cite cases where an invalidity challenge went to the jury because it was supported by evidence. *EVM Sys., LLC v. Rex Med., L.P.*, No. 6:13-CV-184, 2015 U.S. Dist. LEXIS 107736 at *10-*11, 2015 WL 4911090 at *4 (E.D. Tex. Aug. 17, 2015) (defendant had presented evidence that prior art reference did meet the "sufficiently rigid" limitation, but plaintiff argued reference taught away); *Maxell Ltd. v. Apple, Inc.*, No. 5:19-cv-00036-RWS, 2020 U.S. Dist. LEXIS 248960, at *10 (E.D. Tex. Nov. 17, 2020) ("Maxell and Apple present conflicting evidence as to whether Schiffer discloses elements 1[b] and 16[b]—evidence that would permit a reasonable jury to find for either party."). These unremarkable holdings do not apply when a party simply skips a claim limitation, as Defendants do here.

In sum, Defendants needed to present evidence that the prior art disclosed or rendered obvious the entirety of claim 20, including block 520. They did not do so, and they provide no authority or argument why they should be permitted to substitute attorney argument for evidence, or why Dr. van der Weide should be permitted to present new opinions outside the scope of his

4

report to save their invalidity case. The Court should therefore grant summary judgment of no obviousness for claims 20, 21, and 23 of the '888 Patent.

### B. Dr. van der Weide's conclusory, boilerplate "opinions" regarding enablement cannot establish lack of enablement.

Defendants present nothing that could support a jury verdict of clear and convincing evidence of no enablement. Dr. van der Weide's parroting the legal standard about "detailed guidance, working examples," et cetera, provides a textbook illustration of conclusory statements that are entitled to no weight, much less clear and convincing weight. Opp. at 11-12. And Dr. Van der Weide's purported opinion that the specification fails to enable the invention "in the context of existing wireless communication systems and standards," which Defendant point to in their response, is just *ipse dixit* unsupported by analysis or explanation. Opp. at 12.

To be clear, Dr. van der Weide could not truthfully have opined that the '888 Patent lacks *any* disclosure of how to implement the invention "in the context of existing wireless communication systems and standards," because even a cursory inspection of the patent specification would have disproven that counterfactual opinion. *See, e.g.*, '888 Patent at 4:30-5:9 (discussing numerous contemporary standards and giving examples of possible implementations of the claimed invention using existing communication channels), 8:42-57 (discussing interfaces between the components of the inventio using communication channels from existing standards), 11:66-12:9 (explaining that "various industry standards may be followed to conduct the handoff" of the invention), 13:19-28 (same). His statement can be understood at most to suggest that the '888 Patent's disclosures are—for some unspecified reason—not *enabling* disclosures. But stating the conclusion is not enough; he must provide at least an explanation why that is the case. He does not.

And Defendants appear to concede, as they must, that because "enablement does not turn on whether the accused product is enabled," any opinions purportedly showing that the patent fails to enable the *accused instrumentalities* cannot establish invalidity. *Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001). But their creative interpretation of Dr. van der Weide's report in order to avoid that holding strains credibility. They say that Dr. van der Weide does not "reference" the accused instrumentalities in his enablement analysis, not even "once." Opp. at 12 (emphasis in original). But he *twice* opines that the specification fails to enable the adaptation manager "to the extent Cobblestone argues that" some specific functionality "meet[s] the adaption manager limitation." Br. at 10 (quoting Ex. A ¶¶ 1041, 1042). Cobblestone is only arguing that one group of things meets the adaption manager limitation: the accused instrumentalities. There is no plausible interpretation of Dr. van der Weide's statements as references to anything *but* the accused instrumentalities.

Nothing in Dr. van der Weide's report addresses, in anything but a conclusory or *ipse dixit* fashion, whether the specification enables the adaption manager of '888 Patent claim 20. His report thus cannot create any genuine issue of material fact concerning enablement, and summary judgment regarding enablement should be granted in Cobblestone's favor.

**C. Without Mr. Bishop's improper 3GPP public availability opinion, Defendants cannot assert TS 23.401[2] as prior art.**

Faced with prospect of exclusion of Craig Bishop's layperson speculation, Defendants now present the counterfactual argument that "Dr. van der Weide does *not* rely exclusively on Mr. Bishop gathering evidence and Mr. Bishop's testimony about the evidence." Opp. at 14. As addressed in Cobblestone's reply in support of its motion to strike this testimony of Dr. van der

---

[2] Defendants concede that their IPR stipulation precludes them from discussing TS 36.300. Dkt. 173 at 3.

Weide, this is not the case and Dr. van der Weide should not be permitted to opine on those subjects either. If Mr. Bishop's public availability "opinions" are excluded, summary judgment as to the combination of Chitrapu with TS 23.401 should be also granted. *See* Mot. at 12-14.

Dated: July 25, 2024                        Respectfully submitted,

/s/ *Christian W. Conkle*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Neil A. Rubin
CA State Bar No. 250761
Amy E. Hayden
CA State Bar No. 287026
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Jonathan Ma
CA State Bar No. 312773
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_cobblestone@raklaw.com

Andrea Fair
Ward Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,***
***Cobblestone Wireless, LLC***

7



*/s/ Christian W. Conkle*
Christian W. Conkle

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served on all counsel of record via the Court's CM/ECF system on July 25, 2024.

*/s/ Christian W. Conkle*
Christian W. Conkle